WILMER CUTLER PICKERING
HALE AND DORR LLP
Debo Adegbile (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800
debo.adegbile@wilmerhale.com

Felicia H. Ellsworth (admitted *pro hac vice*)
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
felicia.ellsworth@wilmerhale.com

Joshua A. Vittor (CA Bar No. 326221)
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300
joshua.vittor@wilmerhale.com

*Attorneys for Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DO NO HARM, et al., | Case No. 2:25-cv-04131-JWH-JDE |
| *Plaintiffs*, | |
| | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** |
| v. | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., | |
| *Defendants*. | Date:      October 17, 2025 |
| | Time:      9:00 a.m. |
| | Place:     Courtroom 9D |
| | Judge:     Hon. John W. Holcomb |

1

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................10

BACKGROUND ....................................................................................................12

LEGAL STANDARD.............................................................................................13

ARGUMENT .........................................................................................................14

I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK
      STANDING ...................................................................................................14

      A.    Neither SFFA Nor DNH Has Adequately Pleaded Standing..............14

            1.    SFFA and DNH fail to plausibly allege that they are genuine
                  membership organizations ........................................................15

            2.    Neither SFFA nor DNH has pleaded that any members have
                  standing to sue in their own right.............................................16

      B.    Mahoney Has Not Alleged Facts Sufficient To Show She Is "Able
            And Ready" To Apply.........................................................................18

II.   EVEN IF ANY PLAINTIFF HAD STANDING, THE CLAIMS AGAINST EACH
      DEFENDANT ARE BARRED BY SOVEREIGN IMMUNITY AND ARE DEFICIENT ON
      THE MERITS ................................................................................................19

      A.    The Section 1983, Section 1981, And Unruh Act Claims Against The
            University Must Be Dismissed..........................................................20

      B.    All Claims Against Chancellor Frenk Must Be Dismissed Because
            Plaintiffs Fail To Allege That He Was Personally Involved In The
            Challenged Conduct .........................................................................21

      C.    The Claims Against The Individual Defendants Must Be Dismissed
            For Other Reasons .........................................................................25

            1.    The Individual Defendants enjoy Eleventh Amendment
                  immunity .................................................................................25

            2.    Neither Individual Defendant is a recipient of federal funding
                  .................................................................................................26

            3.    The Individual Defendants are entitled to qualified immunity
                  from claims for damages under federal law..............................26

            4.    The Individual Defendants enjoy immunity to the Unruh Act
                  claim, which in any event does not apply to the University.....28

III.  THE COURT SHOULD DISMISS PLAINTIFFS' REQUESTED REMEDIES OF
      PUNITIVE DAMAGES, DISGORGEMENT, AND STATUTORY DAMAGES UNDER
      THE UNRUH ACT, AND STRIKE PLAINTIFFS' CLASS ALLEGATIONS ...............30

2

A.    Punitive Damages Are Unavailable .........................................................31

B.    Plaintiffs Are Not Entitled To "Disgorgement" Of Previously
      Awarded Federal Funds ......................................................................32

C.    Plaintiffs' Request For An Injunction Against The School's
      Limitations On Transfers And Multiple Applications Must Be
      Dismissed ............................................................................................33

D.    Plaintiffs' Class Allegations Must Be Stricken.................................33

CONCLUSION .......................................................................................................34

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 2:25-cv-04131-JWH-JDE

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*A.A.P. v. Sierra Plumas Joint Unified Sch. Dist.*,
  2021 WL 847812 (E.D. Cal. Mar. 5, 2021)...................................................26

*Agua Caliente Band of Cahuilla Indians v. Hardin*,
  223 F.3d 1041 (9th Cir. 2000) .....................................................................21

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*,
  938 F.3d 1147 (9th Cir. 2019) ...............................................................13, 17

*Am. Unites for Kids v. Rousseau*,
  985 F.3d 1075 (9th Cir. 2021) .....................................................................15

*Am. W. Door & Trim v. Arch Specialty Ins.*
  2015 WL 1266787 (C.D. Cal. Mar. 18, 2015)........................................31, 33

*Ashmore v. Regents of the Univ. of Cal.*,
  2011 WL 6258460 (C.D. Cal. Dec. 15, 2011)..............................................20

*Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
  729 F.3d 937 (9th Cir. 2013) ..................................................................23, 24

*Barnes v. Gorman*,
  536 U.S. 181 (2002)......................................................................................31

*Barry v. Yosemite Cmty. Coll. Dist.*,
  2017 WL 896307 (E.D. Cal. Mar. 7, 2017)..................................................26

*Brust v. Regents of the Univ. of Cal.*,
  2007 WL 4365521 (E.D. Cal. Dec. 12, 2007)..........................................28, 29

*BV Eng'g v. Univ. of Cal., L.A.*,
  858 F.2d 1394 (9th Cir. 1988) .....................................................................19

*Cannon v. Univ. of Chicago*,
  441 U.S. 677 (1979)......................................................................................32

*Carmen v. S.F. Unified Sch. Dist.*,
  982 F. Supp. 1396 (N.D. Cal. 1997).............................................................20

*Carney v. Adams*,
   592 U.S. 53 (2020)..................................................................18

*Castillo v. Prime Hydration LLC*,
   748 F. Supp. 3d 757 (N.D. Cal. 2024)....................................30

*In re Century Aluminum Co. Sec. Litig.*,
   729 F.3d 1104 (9th Cir. 2013) ...............................................13

*Cholla Ready Mix, Inc. v. Civish*,
   382 F.3d 969 (9th Cir. 2004) .................................................20

*Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*,
   771 F. Supp. 2d 1195 (N.D. Cal. 2011)..................................26

*Coal. to Def. Affirmative Action v. Brown*,
   674 F.3d 1128 (9th Cir. 2012) ...............................................20

*Cook v. Torres*,
   2013 WL 5946072 (C.D. Cal. Nov. 5, 2013) .........................31

*United States v. County of Maricopa*,
   889 F.3d 648 (9th Cir. 2018) ...........................................22, 23

*Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*,
   533 F.3d 780 (9th Cir. 2008) .................................................26

*District of Columbia v. Wesby*,
   583 U.S. 48 (2018)....................................................26, 27, 28

*Dittman v. California*,
   191 F.3d 1020 (9th Cir. 1999) ...............................................20

*Do No Harm v. Gianforte*,
   2025 WL 756742 (D. Mont. Jan. 10, 2025) ...........................17

*Doe v. L.A. Unified Sch. Dist*,
   2016 WL 4238636 (C.D. Cal. Aug. 8, 2016) .........................24

*Doe v. Regents of the Univ. of Cal.*,
   891 F.3d 1147 (9th Cir. 2018) .......................................*passim*

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
   751 F.3d 990 (9th Cir. 2014) .................................................13

*Food & Drug Admin. v. All. for Hippocratic Med.*,
  602 U.S. 367 (2024)................................................................15

*Frankel v. Regents of the Univ. of Cal.*,
  No. 24-cv-04702, slip op. (C.D. Cal. May 21, 2025).......................26

*Gay-Straight All. Network v. Visalia Unified Sch. Dist.*,
  262 F. Supp. 2d 1088 (E.D. Cal. 2001) ...............................31

*Gratz v. Bollinger*,
  539 U.S. 244 (2003)....................................................14, 17, 18

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
  742 F.3d 414 (9th Cir. 2014) .......................................23, 24

*Grutter v. Bollinger*,
  539 U.S. 306 (2003).......................................................27

*Gutzalenko v. City of Richmond*,
  723 F. Supp. 3d 748 (N.D. Cal. 2024)...............................30, 32

*Heard v. Cnty. of San Bernardino*,
  2021 WL 5083336 (C.D. Cal. Oct. 12, 2021) ..................24

*Hunt v. Wash. State Apple Advert. Comm'n*,
  432 U.S. 333 (1977)....................................................14, 15, 17

*Hunter v. Chatman*,
  2018 WL 10076846 (C.D. Cal. Nov. 20, 2018) ..................22

*Imagineering, Inc. v. Kiewit Pac. Co.*,
  976 F.2d 1303 (9th Cir. 1992) .......................................24

*Int'l Longshore & Warehouse Union v. Nelson*,
  599 F. App'x 701 (9th Cir. 2015)......................................16

*Jackson v. Hayakawa*,
  682 F.2d 1344 (9th Cir. 1982) .......................................19

*Katie A., ex rel. Ludin v. Los Angeles Cnty.*,
  481 F.3d 1150 (9th Cir. 2007) .......................................33

*Loffman v. Cal. Dep't of Educ.*,
  119 F.4th 1147 (9th Cir. 2024) ................................*passim*

6

*M/V Am. Queen v. San Diego Marine Const. Corp.*,
　　708 F.2d 1483 (9th Cir. 1983) ...................................................................16

*Meister v. City of Hawthorne*,
　　2014 WL 3040175 (C.D. Cal. May 13, 2014) ...................................16

*Or. Advoc. Ctr. v. Mink*,
　　322 F.3d 1101 (9th Cir. 2003) ...................................................................15

*Perez v. Nidek Co.*,
　　711 F.3d 1109 (9th Cir. 2013) ...................................................................15

*Pittman v. Oregon*,
　　509 F.3d 1065 (9th Cir. 2007) ...................................................................21

*Radke v. Univ. Of Illinois at Urbana-Champaign*,
　　263 F.R.D. 498 (N.D. Ill. 2009) ...............................................................34

*Ralon v. Kaiser Found. Health Plan, Inc.*,
　　2024 WL 4933330 (N.D. Cal. Dec. 2, 2024) ...................................26

*Randall v. United Network for Organ Sharing*,
　　720 F. Supp. 3d 864 (C.D. Cal. 2024) ...................................................22

*Rico v. Ducart*,
　　980 F.3d 1292 (9th Cir. 2020) ...................................................................12

*Romes v. Garrison Prop. & Cas. Ins. Co.*,
　　2024 WL 4452781 (D. Ariz. Oct. 9, 2024) ...................................34

*Silverband v. Woodford*,
　　2010 WL 3635780 (C.D. Cal. Aug. 18, 2010) ...........................22, 23

*Spokeo, Inc. v. Robins*,
　　578 U.S. 330 (2016) ...................................................................................13

*Stanley v. Trs. of Cal. State Univ.*,
　　433 F.3d 1129 (9th Cir. 2006) ...................................................................20

*Stanley v. Univ. of S. California*,
　　13 F.3d 1313 (9th Cir. 1994) ...................................................................33

*Students for a Conservative Am. v. Greenwood*,
　　378 F.3d 1129 (9th Cir. 2004) ...................................................................19

7

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
  600 U.S. 181 (2023) ................................................................15, 16, 27

*Suever v. Connell*,
  579 F.3d 1047 (9th Cir. 2009) ................................................................23

*Tan v. Univ. of Cal. S.F.*,
  2007 WL 963223 (N.D. Cal. Mar. 29, 2007) ................................................31

*Tietsworth v. Sears*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010) ................................................34

*Topadzhikyan v. City of Glendale*,
  2012 WL 12878680 (C.D. Cal. June 21, 2012) ................................22, 23

*Trump v. CASA, Inc.*,
  2025 WL 1773631 (U.S. June 27, 2025) ................................................15

*United Nat'l Maint., Inc. v. S.D. Convention Ctr., Inc.*,
  766 F.3d 1002 (9th Cir. 2014) ................................................................31

*Wal-Mart v. Dukes*,
  564 U.S. 338 (2011) ................................................................34

*Warth v. Seldin*,
  422 U.S. 490 (1975) ................................................................16

*Will v. Mich. Dep't of State Police*,
  491 U.S. 58 (1989) ................................................................21

*Wooden v. Bd. of Regents of Univ. Sys. of Georgia*,
  247 F.3d 1262 (11th Cir. 2001) ................................................................19

*Yoshikawa v. Seguirant*,
  74 F.4th 1042 (9th Cir. 2023) (en banc) ................................................21

**State Cases**

*Brennon B. v. Superior Ct.*,
  513 P.3d 971 (Cal. 2022) ................................................................30

*Caldwell v. Montoya*,
  897 P.2d 1320 (Cal. 1995) ................................................................28, 29

*Curran v. Mount Diablo Council of the Boy Scouts*,
    952 P.2d 218 (Cal. 1998) ........................................................................30

*Regents of the Univ. of Cal. v. Superior Court*,
    413 P.3d 656 (Cal. 2018) ........................................................................31

**State Statutes**

Cal. Civ. Code, § 51(b) ..............................................................................29

California Government Code Section 818 ....................................................31

California Government Code Section 820.2 ...........................................28, 29

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ..........................................................11, 12, 13, 30

Fed. R. Civ. P. 12(b)(1) ..............................................................................13

Fed. R. Civ. P. 23 ...............................................................................31, 33

Fed. R. Civ. P. 23(a) ...................................................................................34

Fed. R. Civ. P. 23(b)(3) ..............................................................................34

L.R. 11-6.1 .................................................................................................36

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard*
    *Coll.*, Case No. 14-cv-14176-ADB (D. Mass), Dkt. 1-1 ...................16

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 2:25-cv-04131-JWH-JDE

# INTRODUCTION

Each year, thousands of aspiring doctors submit applications to the University of California's David Geffen School of Medicine at UCLA ("the School of Medicine" or "the School").  Due to the School's highly competitive admissions standards and limited class size, it must turn away the vast majority of applicants.  But before such decisions are made, the School analyzes each application holistically and objectively.  The School of Medicine has consistently done so using race-neutral means, including the analysis of academic performance and extracurricular achievement, since Proposition 209 took effect in California—over 25 years ago.[1]

Plaintiffs allege that the School of Medicine has nevertheless been engaging in race-based discrimination in the admissions process and that Defendants—the Regents of the University of California ("the University"); UCLA Chancellor Julio Frenk; and Jennifer Lucero, the School's Associate Dean of Admissions[2]—should be held liable under Section 1983, Title VI, Section 1981, and the Unruh Civil Rights Act.  Because these claims suffer from a combination of jurisdictional and pleading defects, they must be dismissed.

*First*, Plaintiffs lack standing.  Organizational plaintiffs Students For Fair Admissions ("SFFA") and Do No Harm ("DNH") have not plausibly alleged that they are genuine membership organizations entitled to associational standing.  Further, SFFA and DNH may not seek damages on behalf of their members, and they lack associational standing to seek any other form of relief, because the Complaint fails to identify any specific members with standing to sue in their own right.  The conclusory and speculative assertions that the individual members they

---

[1] In 1996, Proposition 209 amended the California Constitution to prohibit state entities (like the School of Medicine) from considering race in admissions.

[2] All other defendants named in the Complaint have been voluntarily dismissed.  *See* Dkt. 27.

Defendants' Mem. ISO Motion to Dismiss
CASE NO. 2:25-cv-04131-JWH-JDE

each identify are able and ready to apply to the School of Medicine, despite an evident lack of requisite credentials, are inadequate to confer standing. Finally, the School of Medicine's race-neutral transfer application bar prevents Plaintiff Kelly Mahoney, the putative class representative, from being ready and able to apply. As no Plaintiff has standing, the Court lacks jurisdiction and must dismiss the case.

*Second*, even if the Court concludes that at least one Plaintiff has standing, the claims suffer from significant deficiencies warranting dismissal under Fed. R. Civ. P. 12(b)(6).

With respect to the University, the Section 1983, Section 1981, and Unruh Act claims all must be dismissed. The Eleventh Amendment immunizes the University from damages under those claims, and, as an arm of the State, the University cannot be sued for prospective injunctive relief under *Ex parte Young*. The University also is not a "person" under Sections 1983 or 1981 or a "business establishment" under the Unruh Act.

All claims against UCLA's Chancellor, Defendant Julio Frenk, must be dismissed because the Complaint fails to plausibly allege he was personally involved in the School of Medicine's admissions process at all, let alone personally involved in the enforcement of allegedly discriminatory admissions policies at the School.

Even if such allegations could be plausibly made, the claims against both Chancellor Frenk and the School of Medicine's Associate Dean, Defendant Jennifer Lucero (collectively, the "Individual Defendants") are subject to dismissal on various other grounds. The Eleventh Amendment immunizes both from the Unruh Act claim as well as from the Section 1983 and Section 1981 claims to the extent such claims seek retrospective relief and are brought against the Individual Defendants in their official capacities. To the extent those claims are brought against the Individual Defendants in their individual capacities, qualified

immunity, state-law immunity, and the inapplicability of the Unruh Act require dismissal.  And the Title VI claim may not be brought against the Individual Defendants, neither of whom are recipients of federal funding.

*Finally*, to the extent any claims are not dismissed, the Court should dismiss Plaintiffs' requested remedies of punitive damages, disgorgement, and an injunction lifting the School's limits on reapplications and transfer applications, and the Court should strike Plaintiffs' facially deficient class allegations.

## BACKGROUND[3]

As Plaintiffs themselves concede, UCLA's School of Medicine is "highly selective," receiving over ten thousand applications each year for roughly 175 seats.  Compl. ¶ 30.  According to the Complaint, the School's "matriculants have an average GPA of 3.8 and average MCAT score of 514."  Compl. ¶ 31.  The School does not accept transfer students and does not allow prospective students to apply for admission more than three times.  Compl. ¶ 32.  The School's Admissions Committee reviews the thousands of applications it receives every year holistically, *see* Compl. ¶ 47, considering numerous factors but not granting preferential treatment to any applicant based on race.  Indeed, applicants' self-identified race and ethnicity are not visible to the individuals who review applications to the School.  *Cf.* Compl. ¶ 67.

Plaintiffs are two self-described membership organizations as well as one individual who allegedly applied to the School and was rejected.  Compl. ¶¶ 12-16. They allege that the School's admissions officers "openly discuss race" and "use race as a factor to make admissions decisions."  Compl. ¶ 8.  In support of that contention, Plaintiffs primarily allege that Associate Dean Lucero "is an outspoken advocate for using race as a factor in admissions" and allegedly believes it is

---

[3] As required by Rule 12(b)(6), Defendants assume the truth of Plaintiffs' allegations for the purpose of this motion to dismiss only.  *See, e.g.*, *Rico v. Ducart*, 980 F.3d 1292, 1295 n.5 (9th Cir. 2020).

"important to racially diversify medical-school admissions."  Compl. ¶ 57-58. They also provide a list of alleged demographic statistics of the School's applicants and enrollees.  *See* Compl. ¶¶ 70-82.

Plaintiffs allege violations of the Equal Protection Clause, pursuant to Section 1983 (Count I); Title VI (Count II); Section 1981 (Count III); and the Unruh Act (Count IV); and seek declaratory, injunctive, and monetary relief, *see* Compl. at 37, purportedly on a class-wide basis, *see* Compl. ¶¶ 111-123.

## LEGAL STANDARD

Standing is jurisdictional and therefore properly raised under Rule 12(b)(1) as a motion to dismiss for lack of subject-matter jurisdiction.  *See Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1151 (9th Cir. 2019).  The plaintiff has the burden of "clearly" alleging "facts demonstrating" each element to establish standing.  *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts with sufficient support to render them plausible, not just possible.  *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014). A court must assume the truth of well-pleaded factual allegations, but discount the validity of allegations that are mere legal conclusions.  *Id*. at 996.  "[P]laintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation."  *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013).  Instead, factual allegations make legal claims plausible only when they "tend[] to exclude the possibility that the [defendant's theory of non-liability] is true."  *Id*.

**ARGUMENT**

## I.    THE COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK STANDING

For an associational plaintiff like SFFA or DNH to have standing to sue on behalf of its members, (1) its members must have standing to sue in their own right, (2) the interests the association seeks to protect must be germane to its purpose, and (3) neither the claims asserted nor the relief requested can require individual members to participate in the suit.  *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977).  Additionally, its constituents must be actual members of the organization or must possess "indicia of membership" that make them the functional equivalent of members.  *Id.* at 344-345.

Plaintiffs alleging that a discriminatory barrier prevents them from pursuing an opportunity must allege "concrete fact[s]" sufficient to show that they are "'able and ready' to pursue the opportunity at issue."  *Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1159, 1160-1161 (9th Cir. 2024).  The rejection of an applicant is insufficient to confer standing on its own, as a rejected applicant "still need[s] to allege an intent to apply again in order to seek prospective relief."  *Gratz v. Bollinger*, 539 U.S. 244, 261 (2003).

Here, SFFA and DNH lack standing because they fail to plausibly allege that their purported members are actual members or have indicia of membership.  And all Plaintiffs—including Mahoney—lack standing because they fail to plead facts sufficient to show that they (or their members) are "able and ready" to apply to the School.  The Complaint must therefore be dismissed in its entirety.

### A. Neither SFFA Nor DNH Has Adequately Pleaded Standing

SFFA and DNH are associations that must meet the requirements of associational standing, and neither has alleged facts sufficient to do so.  The associational standing requirements are particularly important in a case like this, where SFFA and DNH allege no injuries of their own yet seek relief that would

14

benefit their members.  *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 398 (2024) (Thomas, J., concurring) (warning against the "expansion of Article III standing" through the invocation of associational standing).  In fact, the relief that SFFA and DNH seek is not limited to their members: it would apply to applicants other than their members, and therefore risks being impermissibly broad.  *See Trump v. CASA, Inc.*, 2025 WL 1773631, at *6-7 (U.S. June 27, 2025) (courts' equitable authority extends only to remedies "traditionally accorded by courts of equity" and not to relief that "extend[s] beyond the parties" (quoting *Grupo Mexicano de Desarrollo, S. A. v. Alliance Bond Fund*, Inc., 527 U.S. 308, 319 (1999))).

### 1.  *SFFA and DNH fail to plausibly allege that they are genuine membership organizations*

SFFA and DNH fail to plausibly allege that they are bona fide membership organizations with actual, identifiable members.  Plaintiffs' allegations that DNH is a "nationwide membership organization" with members, Compl. ¶ 12, and that SFFA is a "voluntary membership organization" and "nonprofit membership group" with members, Compl. ¶ 14, are conclusory allegations lacking any further factual support.  *See Perez v. Nidek Co.*, 711 F.3d 1109, 1113 (9th Cir. 2013) ("conclusory and bare bones words and phrases" are insufficient to plead standing).  Nor do Plaintiffs allege SFFA and DNH have any "indicia of membership," as is required for groups that are not "traditional voluntary membership organization[s]."  *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 200 (2023).  The Complaint contains no allegations that the supposed members influence the organizations' activities, finance the organizations, or serve a specialized segment of the community.  *See Hunt*, 432 U.S. at 344-345*; Or. Advoc. Ctr. v. Mink*, 322 F.3d 1101, 1111-1112 (9th Cir. 2003); *Am. Unites for Kids v. Rousseau*, 985 F.3d 1075, 1096-1097 (9th Cir. 2021).  SFFA and DNH have therefore failed to plausibly allege standing.

*See, e.g.*, *Meister v. City of Hawthorne*, 2014 WL 3040175, at *8 (C.D. Cal. May 13, 2014) (no standing where complaint only included "perfunctory" and "conclusory" statements regarding accountability to supposed constituents).[4]

### 2. Neither SFFA nor DNH has pleaded that any members have standing to sue in their own right

Even if SFFA and DNH had plausibly alleged that they are genuine membership organizations, they have not adequately pleaded standing to sue on behalf of their members in this case. As an initial matter, associational plaintiffs cannot seek damages on behalf of their members because damages claims "require the participation of individual members." *Int'l Longshore & Warehouse Union v. Nelson*, 599 F. App'x 701, 702 (9th Cir. 2015); *see also Warth v. Seldin*, 422 U.S. 490, 515-516 (1975). At minimum, therefore, SFFA's and DNH's claims for damages on behalf of their members, Compl. at 37, must be dismissed.

SFFA and DNH also lack associational standing to seek the other forms of relief outlined in the Complaint. For an associational plaintiff to have standing to seek such relief on behalf of its members, it must demonstrate that its members

---

[4] Defendants recognize that the Supreme Court has previously found SFFA to be a genuine membership organization, *Students for Fair Admissions*, 600 U.S. at 198-201, and includes this argument as to SFFA to preserve its challenge to SFFA's standing for future stages of this proceeding. Moreover, SFFA averred its membership organization status in that case in connection with its initial pleading. *See Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, Case No. 14-cv-14176-ADB (D. Mass), Dkt. 1-1. Here, SFFA is also required to establish its standing at the pleading stage, and has failed to do so: this case involves different purported members, a different school, and a different time period, and the Complaint fails to plausibly allege facts demonstrating that those individuals are genuine members or have indicia of membership. And Plaintiffs may not rely on the Supreme Court's holding regarding SFFA's organizational status to support standing in this case. *M/V Am. Queen v. San Diego Marine Const. Corp.*, 708 F.2d 1483, 1491 (9th Cir. 1983) ("[A] court may not take judicial notice of proceedings or records in another cause so as to supply, without formal introduction of evidence, facts essential to support a contention in a cause then before it.").

have standing to sue in their own right. *See Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *Am. Diabetes Ass'n*, 938 F.3d at 1155 (applying *Hunt*). An association lacks standing to challenge an alleged discriminatory barrier, even where the association has asserted that members are "qualified, willing, and able" to apply, if it fails to allege any "indication that the [m]embers are likely to apply, have taken any actual steps to apply, or have anything more than a hypothetical interest in doing so." *Do No Harm v. Gianforte*, 2025 WL 756742, at *7 (D. Mont. Jan. 10, 2025), *report & recommendation adopted*, 2025 WL 399753 (D. Mont. Feb. 5, 2025). That failure is evident here.

SFFA alleges associational standing based on a single anonymous member, Compl. ¶¶ 96-100, but the Complaint does not plausibly demonstrate that SFFA Member 1 is "able and ready" to apply, *Loffman*, 119 F.4th at 1161-1162. The Complaint alleges that the School of Medicine's "matriculants have an average GPA of 3.8 and average MCAT score of 514," and that the School receives 11,000 to 14,000 applicants for just 175 spots. Compl. ¶¶ 30-31. But SFFA Member 1 has a GPA of 3.4 and has not even taken the MCAT. Compl. ¶ 98. The Complaint's speculative assertions that SFFA Member 1 will someday satisfy the application prerequisites and apply to the School do not plausibly suggest that she is able and ready to do so now.

DNH's allegations fare no better. It asserts that it has a single member who applied to the School once, in 2024, and was rejected. Compl. ¶¶ 91-95. The alleged rejection of this member is not sufficient to confer standing, as a rejected applicant "still need[s] to allege an intent to apply again in order to seek prospective relief." *Gratz v. Bollinger*, 539 U.S. 244, 261 (2003). And the allegation that this member "is able and ready to reapply," Compl. ¶ 95, is not plausibly pleaded. As the Complaint acknowledges, the School does not accept transfer applications, Compl. ¶ 32, yet the Complaint alleges that DNH Member A

17

will be "able and ready" to reapply if the School decides to accept transfer students. *See* Compl. ¶ 95. As DNH Member A *cannot* reapply, Plaintiffs' claim that this member is "able and ready" to do so defies logic.

Even if Plaintiffs were seeking to enjoin the School's decision not to accept transfer students, *see* Compl. ¶ 112, they would have to plausibly allege they are able and ready to apply *but for* allegedly discriminatory or otherwise unlawful practices. *See Carney v. Adams*, 592 U.S. 53, 60-61 (2020). That the School's application policy related to transfers—which Plaintiffs do not contend violates any of the statutes or constitutional provisions under which they seek relief—prevent them from applying is insufficient to confer standing. *See Gratz*, 539 U.S. at 262 (standing requires that a party "demonstrate that it is able and ready to [pursue an opportunity] and that a *discriminatory policy* prevents it from doing so on an equal basis" (emphasis added) (quoting *Northeastern Fla. Chapter, Associated Gen. Contractors of America v. Jacksonville*, 508 U.S. 656, 666 (1993))).

### B. Mahoney Has Not Alleged Facts Sufficient To Show She Is "Able And Ready" To Apply

Mahoney likewise lacks standing because the Complaint does not plausibly allege that she is "able and ready" to apply to the School of Medicine. *See Loffman*, 119 F.4th 1147 at 1159-1161. She asserts only that her ability to re-apply is contingent on the Court "*undo[ing] the effects* of [Defendants'] prior discrimination." Compl. ¶ 110 (emphasis added). That qualifying language refers to the School's bar on transfer applications. *See* Compl. ¶ 112 (asking the Court to "order relief that fully stops the school from considering race in admissions *and undoes the effect of the school's prior discrimination, including by enjoining the school's limitations on transfers and multiple applications*" (emphasis added)). Yet the Complaint nowhere alleges that the School's non-acceptance of transfers is unlawful in any way. Mahoney has therefore failed to allege that Defendants'

allegedly discriminatory conduct caused her injury, or that prevailing in this case would redress it. *See Loffman*, 119 F.4th 1147 at 1159 n.6 (standing requires that a "discriminatory barrier" prevents plaintiff from pursuing opportunity). For the same reasons DNH Member A lacks standing, so too does Mahoney.[5]

Because no Plaintiff has established standing, the Court lacks jurisdiction and the Complaint must be dismissed in its entirety.

## II.     EVEN IF ANY PLAINTIFF HAD STANDING, THE CLAIMS AGAINST EACH DEFENDANT ARE BARRED BY SOVEREIGN IMMUNITY AND ARE DEFICIENT ON THE MERITS

"The Eleventh Amendment protects states and state instrumentalities, such as The Regents, from suit in federal court." *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018). State officials (such as the Individual Defendants) sued in their official capacities are likewise immune. *Students for a Conservative Am. v. Greenwood*, 378 F.3d 1129, 1130 (9th Cir. 2004) ("It is undisputed that because the defendants were all sued in their official capacities as officers of the University of California, they are entitled to Eleventh Amendment immunity."). The Eleventh Amendment bars any damages claims against an arm of the State except where that immunity has been waived by the State or abrogated by Congress. *See BV Eng'g v. Univ. of Cal., L.A.*, 858 F.2d 1394, 1395-1396 (9th Cir. 1988); *Jackson v. Hayakawa*, 682 F.2d 1344, 1349 (9th Cir. 1982). Congress has not abrogated, and California has not waived, the State's immunity from suit under Section 1983,

---

[5] Plaintiffs also seek to certify a class and "injunctive subclass" with Mahoney as sole representative. Compl. ¶¶ 111-112. Mahoney's lack of standing is fatal to Plaintiffs' proposed class and subclass. *See Wooden v. Bd. of Regents of Univ. Sys. of Georgia*, 247 F.3d 1262, 1287-1288 (11th Cir. 2001) ("[A]s a prerequisite to certification, it must be established that the proposed class representatives have standing to pursue the claims as to which classwide relief is sought."). This is to say nothing of the numerous other problems with Plaintiffs' class allegations. *See infra* pp. 32-33. Therefore, the class allegations must be dismissed.

Section 1981, or the Unruh Act. *See Dittman v. California*, 191 F.3d 1020, 1025-1026 (9th Cir. 1999) (Section 1983); *Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1403 (N.D. Cal. 1997) (Section 1981); *Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006) (Unruh Act).[6]    Accordingly, the Eleventh Amendment bars all such claims brought against the University as well as the claims against the Individual Defendants in their official capacities.

*Ex parte Young*—a narrow exception to Eleventh Amendment immunity—permits plaintiffs to seek injunctive relief by bringing suit against state officers in their official capacities, but only if those officers are sufficiently connected to the enforcement of a challenged action and only where plaintiffs seek prospective declaratory or injunctive relief based on violations of federal law. *See Coal. to Def. Affirmative Action v. Brown*, 674 F.3d 1128, 1133-1134 (9th Cir. 2012). *Ex parte Young* is therefore inapplicable to the extent Plaintiffs' claims (1) are directed toward an arm of the State rather than a state officer, (2) are directed toward a state officer who lacks a sufficient enforcement connection to the challenged action, (3) seek monetary or other retrospective relief, or (4) allege violations of state law. *See id.*[7]

### A. The Section 1983, Section 1981, And Unruh Act Claims Against The University Must Be Dismissed

The Eleventh Amendment prevents suit against the University in federal court, and that immunity has not been abrogated or waived with respect to Section 1983, Section 1981, or the Unruh Act. Because the University is an arm of the State, not a state officer, it also cannot be sued for prospective injunctive relief under *Ex parte Young*. *See, e.g.*, *Ashmore v. Regents of the Univ. of Cal.*, 2011

---

[6] By contrast, Congress has abrogated immunity for Title VI claims. *See Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969 (9th Cir. 2004).

[7] Thus, to the extent that Plaintiffs' Unruh Act claim is brought against the Individual Defendants in their official capacities, *but see* Compl. ¶ 162, that claim must be dismissed because *Ex parte Young* "does not apply when a suit seeks relief under state law." *See Doe*, 891 F.3d at 1153.

WL 6258460, at *8 (C.D. Cal. Dec. 15, 2011) (because *Ex parte Young* relies on the "fiction that [the] suit is not an action against a 'State,'" a "suit explicitly naming a state or state agency as a defendant" is "barred by the Eleventh Amendment, even if the only relief sought is prospective declaratory or injunctive relief" (quoting *Agua Caliente Band of Cahuilla Indians v. Hardin*, 223 F.3d 1041, 1045 (9th Cir. 2000))).  The Section 1983, Section 1981, and Unruh Act claims against the University therefore must be dismissed.[8]

The Section 1983 and Section 1981 claims must also be dismissed as to the University on the independent basis that it is not a "person" suable under Section 1983 or Section 1981.  *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 64 (1989) (states are not persons subject to suit under Section 1983); *Pittman v. Oregon*, 509 F.3d 1065, 1074 (9th Cir. 2007) (same as to Section 1981); *see also Yoshikawa v. Seguirant*, 74 F.4th 1042, 1044 (9th Cir. 2023) (en banc) (same as to Section 1981 claims brought under Section 1983).  And the Unruh Act claim against the University must be dismissed on the independent bases that (1) even if *Ex parte Young* applied to the University, *Ex parte Young* is inapplicable to state-law claims, *see, e.g.*, *Doe*, 891 F.3d at 1153; and (2) the University is not a business establishment subject to liability under the Unruh Act, *see infra* pp. 27-29.

Accordingly, Counts I, III, and IV should be dismissed with prejudice as to the University.

### B. All Claims Against Chancellor Frenk Must Be Dismissed Because Plaintiffs Fail To Allege That He Was Personally Involved In The Challenged Conduct

UCLA Chancellor Frenk took office in January 2025 and oversees the entire UCLA campus (not just its School of Medicine), supporting tens of thousands of

---

[8] It is unclear whether the Complaint advances an Unruh Act claim against the University.  *Compare* Compl. ¶¶ 162-164 (not listing the University), *with* Compl. at 37 (purporting to advance Unruh Act claim against all Defendants).

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 2:25-cv-04131-JWH-JDE

students, faculty, and staff.  The Complaint's failure to allege any connection—let alone a plausible one—between Chancellor Frenk and allegedly discriminatory admissions practices at UCLA's School of Medicine requires dismissal of both the individual capacity and official capacity claims brought against him.

To bring a claim under Section 1983, Section 1981, and the Unruh Act against a defendant in their individual capacity, a plaintiff must plausibly allege that the defendant personally participated in the challenged conduct.  *See, e.g.*, *Silverband v. Woodford*, 2010 WL 3635780, at *6 (C.D. Cal. Aug. 18, 2010) (dismissing Section 1983 claim for failure to allege that defendant "personally caused a civil rights violation"); *Topadzhikyan v. City of Glendale*, 2012 WL 12878680, at *5 (C.D. Cal. June 21, 2012) (Section 1981 only applies where the "'individual [is] personally involved in the discrimination'" (citation omitted)); *Hunter v. Chatman*, 2018 WL 10076846, at *9 (C.D. Cal. Nov. 20, 2018) (noting that plaintiffs must allege "willful, affirmative misconduct" by individual defendants to survive motion to dismiss Unruh Act claim (citing *Wilkins-Jones v. County of Alameda*, 859 F. Supp. 2d 1039, 1050-1051 (N.D. Cal. 2012))). Similarly, Title VI claims require plausible allegations of "direct discrimination by the defendant," "'deliberate[] indifferen[ce] to known acts of discrimination,'" or "acts of discrimination that result from the defendant's policies."  *Randall v. United Network for Organ Sharing*, 720 F. Supp. 3d 864, 880 (C.D. Cal. 2024) (quoting *United States v. County of Maricopa*, 889 F.3d 648, 652 (9th Cir. 2018)).

Plaintiffs have alleged none of this with respect to Chancellor Frenk, whom the Complaint mentions only twice: first, alleging that "Frenk is responsible for administration and operation of the UCLA campus, including [David] Geffen [School of Medicine], and oversees all UCLA faculty personnel and staff, including Geffen faculty and staff," Compl. ¶ 23; and second, alleging that the Dean of the School of Medicine "reports to Frenk," Compl. ¶ 24.  These

allegations fall woefully short of establishing a personal connection between Chancellor Frenk and any claimed statutory violations, let alone his direct involvement, as is required under Section 1983.  *See, e.g.*, *Suever v. Connell*, 579 F.3d 1047, 1062 (9th Cir. 2009) (affirming dismissal of Section 1983 claim brought against individual defendant where complaint "fail[ed] to tie any particular harm that any particular plaintiff allegedly suffered to any discrete action taken by" that defendant ); *see also Silverband*, 2010 WL 3635780, at *6-7 (dismissing Section 1983 claim against "supervisory defendants" because plaintiff did not allege that defendants were "directly involved" in or "personally participated in, directed, or knew of" alleged misconduct).  Plaintiffs similarly fail to allege that Chancellor Frenk "was personally involved in the discrimination and intentionally caused the infringement of rights protected by [Section] 1981." *Topadzhikyan*, 2012 WL 12878680, at *5.   Nor does the Complaint plead "'willful, affirmative misconduct on [Chancellor Frenk's] part,'" as is required to state an Unruh Act claim.  *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) (citation omitted).  And with respect to its Title VI claim, the Complaint fails to allege that Chancellor Frenk directly discriminated, was deliberately indifferent to discrimination, or created an "'official policy'" that resulted in discrimination.  *County of Maricopa*, 889 F.3d at 652 (citation omitted).

For similar reasons, Plaintiffs fail to plausibly allege Section 1983 or Section 1981 claims against Chancellor Frenk in his official capacity.  The Eleventh Amendment immunizes state officials from official-capacity claims except to the extent that *Ex parte Young* permits "prospective injunctive relief" for violations of federal law.  *Doe*, 891 F.3d at 1153.  For the *Ex parte Young* doctrine to apply to Plaintiffs' federal claims, "[t]he state official 'must have some connection with the enforcement'" of the challenged policy.  *Association des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013).  "That connection

'must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.'" *Id.*

The official-capacity claims against Chancellor Frenk must be dismissed for failure to plausibly allege he had a "'fairly direct'" connection with the enforcement of any challenged admissions policies. *Association des Eleveurs*, 729 F.3d at 943 (citation omitted). The Complaint's two passing references to Chancellor Frenk say nothing about any connection between him and the allegedly discriminatory admissions practices—or between Chancellor Frenk and the School's admissions practices at all. At most, the Complaint alleges in conclusory fashion that Chancellor Frenk had a "general supervisory power" over admissions personnel, which is insufficient to invoke the *Ex parte Young* doctrine. *Association des Eleveurs*, 729 F.3d at 943.

To the extent the Complaint alleges *any* involvement by Chancellor Frenk in alleged discrimination, it certainly does not plausibly allege that he engaged in *intentional* discrimination, as is required to state all four claims brought by Plaintiffs. *See Heard v. Cnty. of San Bernardino*, 2021 WL 5083336, at *4-5 (C.D. Cal. Oct. 12, 2021) (dismissing Section 1983 claim alleging Equal Protection violations because plaintiff failed to plausibly allege that defendants "acted with an intent or purpose to discriminate"); *Doe v. L.A. Unified Sch. Dist*, 2016 WL 4238636, at *4-5 (C.D. Cal. Aug. 8, 2016) (dismissing Title VI claim for failure to plausibly allege "intentional discrimination"); *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1313 (9th Cir. 1992) (affirming dismissal of Section 1981 claim and noting that plaintiffs must plausibly allege that "defendants intentionally and purposefully discriminated against them"), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (en banc); *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014)

(dismissing Unruh Act claim and noting that because the "Unruh Act contemplates willful, affirmative misconduct on the part of those who violate [it], plaintiffs must plausibly allege "more than the disparate impact of a facially neutral policy" (internal quotation marks omitted).

Consequently, all claims against Chancellor Frenk must be dismissed with prejudice.

## C. The Claims Against The Individual Defendants Must Be Dismissed For Other Reasons

The Eleventh Amendment immunizes the Individual Defendants from claims against them in their official capacities where those claims arise under state law or seek retrospective relief, including damages. Similarly, neither individual is a recipient of federal funds, requiring dismissal of the Title VI claim against them. Finally, the Section 1983, Section 1981, and Unruh Act claims against the Individual Defendants in their individual capacities must be dismissed because they enjoy qualified immunity, state-law immunity, and because the Unruh Act is inapplicable.

### *1. The Individual Defendants enjoy Eleventh Amendment immunity*

The Eleventh Amendment immunizes state officials from official-capacity claims except to the extent that the *Ex parte Young* doctrine applies. *Doe*, 891 F.3d at 1153. Because *Ex parte Young* provides an exception only for "prospective injunctive relief," the Section 1983 and Section 1981 claims against the Individual Defendants in their official capacities must be dismissed to the extent they seek retrospective relief. *Id.* The impermissible retrospective relief requested by Plaintiffs include requests for compensatory, statutory, punitive, and nominal damages, as well Plaintiffs' request for "[d]isgorgement of federal financial assistance" received by the School of Medicine, Compl. at 37, because

disgorgement is "a form of retrospective equitable relief." *Coal. for ICANN Transparency Inc. v. VeriSign, Inc.*, 771 F. Supp. 2d 1195, 1202 (N.D. Cal. 2011).[9]

### 2. Neither Individual Defendant is a recipient of federal funding

"[I]ndividuals may not be held liable under Title VI." *A.A.P. v. Sierra Plumas Joint Unified Sch. Dist.*, 2021 WL 847812, at *7 (E.D. Cal. Mar. 5, 2021); *see also Ralon v. Kaiser Found. Health Plan, Inc.*, 2024 WL 4933330, at *3 (N.D. Cal. Dec. 2, 2024) (recognizing that "[n]umerous courts in the Ninth Circuit" have reached this conclusion); *Frankel v. Regents of the Univ. of Cal.*, No. 24-cv-04702, slip op. at 11-13 (C.D. Cal. May 21, 2025) (reaching same conclusion). Therefore, to the extent Plaintiffs bring a Title VI claim against the Individual Defendants at all, that claim must be dismissed. To the extent Plaintiffs bring a Title VI claim against the Individual Defendants in their official capacities, the claim should similarly be dismissed as redundant of Plaintiffs' Title VI claims against the University. *See Ctr. for Bio-Ethical Reform, Inc. v. L.A. Cnty. Sheriff Dep't*, 533 F.3d 780, 799 (9th Cir. 2008) (where both a government officer and a government entity are named defendants, "and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant"); *Barry v. Yosemite Cmty. Coll. Dist.*, 2017 WL 896307, at *6 (E.D. Cal. Mar. 7, 2017) (dismissing Title VI claims against government officials as "redundant" of Title VI claims against government entity).

### 3. The Individual Defendants are entitled to qualified immunity from claims for damages under federal law

State officers sued in their individual capacities are entitled to qualified immunity against damages claims under federal law unless "(1) they violated a federal statutory or constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48,

---

[9] And in any event, disgorgement is not a form of relief available to private plaintiffs. *See infra* p. 31.

62-63 (2018). To be "clearly established," the unlawfulness of the alleged conduct must have been "sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Id.* at 63 (cleaned up) (citation omitted).

Even if the Complaint adequately alleges any federal statutory or constitutional violations, which it does not, the Individual Defendants are entitled to qualified immunity to the extent the alleged violations of federal law involved conduct that took place before the Supreme Court's decision in *Students for Fair Admissions, Inc.*, 600 U.S. at 181.[10] Prior to that decision, under federal law, an applicant's race or ethnicity could permissibly be considered as a non-dispositive "'plus' factor" in admissions decisions to serve a compelling interest in maintaining a diverse student body. *Grutter v. Bollinger*, 539 U.S. 306, 334 (2003).[11] Before June 29, 2023, therefore, there was no "sufficiently clear foundation in then-existing precedent," *Wesby*, 583 U.S. at 63, for the principle that under federal law, state officials may not "use[] race as a factor to make admissions decisions," Compl. ¶ 48. The Individual Defendants are therefore

---

[10] This is particularly true for Chancellor Frenk, who did not take office until January 2025, well over a year *after* the Supreme Court's decision in *Students for Fair Admissions*.

[11] For the avoidance of doubt, the Individual Defendants' invocation of qualified immunity should not be construed to concede that race was, in fact, considered in admissions to the School of Medicine in any way that would have been permissible under federal law prior to *Students for Fair Admissions*, but not permissible under California law.

immune in their individual capacities to damages claims under federal law based on allegations before June 29, 2023.[12]

### 4. The Individual Defendants enjoy immunity to the Unruh Act claim, which in any event does not apply to the University

California Government Code Section 820.2 provides that "a public employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." This immunity applies even when a public employee is sued for alleged violations of a California statute, *see Caldwell v. Montoya*, 897 P.2d 1320, 1328-1329 (Cal. 1995), and it extends to University of California employees, *see Brust v. Regents of the Univ. of Cal.*, 2007 WL 4365521, at *9, *1 (E.D. Cal. Dec. 12, 2007). The immunity covers "deliberate and considered policy decisions in which a conscious balancing of risks and advantages took place." *Brust*, 2007 WL 4365521, at *8.

The Complaint seeks to hold the Individual Defendants, both public employees, liable for exercising policy- and decision-making authority over admissions at UCLA's School of Medicine in an allegedly discriminatory manner. *See, e.g.*, Compl. ¶¶ 25, 56-69. Thus, the Unruh Act claim depends on allegations of discrimination through "'actual, conscious, and considered' collective policy decisions" made in their capacities as state officials, meaning they are "entitled to immunity pursuant to [Section] 820.2." *Brust*, 2007 WL 4365521, at *9; *see also*

---

[12] The qualified immunity inquiry concerns only alleged violations of "*federal* statutory or constitutional rights," *Wesby*, 583 U.S. at 62-63 (emphasis added). Thus, the fact that Proposition 209 prohibited consideration of race or ethnicity in admissions under California law is irrelevant to the qualified immunity analysis. Even if the Complaint alleged violations of Proposition 209—which it does not—the Individual Defendants are still entitled to qualified immunity with respect to Plaintiffs' federal claims.

28

*id.* at *9 n.9 (Section 820.2 applies to Unruh Act claims).[13]  For example, the Complaint alleges that Associate Dean Lucero set admissions office policy based on her alleged belief that "it's important to racially diversify medical-school admissions, residencies, and leadership positions in medicine."  Compl. ¶ 58.  A "fair reading" of the Complaint thus "admits of no theory that [Associate Dean Lucero] acted unconsciously or failed to weigh pros and cons"; rather, it asserts that she "did purposefully employ standards [she] deemed relevant, but that the standards employed were wrong and impermissible."  *Caldwell*, 897 P.2d at 1328; *see also Brust*, 2007 WL 4365521, at *9.  Accordingly, the Individual Defendants are entitled to immunity from the Unruh Act claim pursuant to Section 820.2.[14]

Additionally, the Unruh Act claim must be dismissed because the statute covers only discrimination by "business establishments."  Cal. Civ. Code, § 51(b).  Neither the Individual Defendants nor the University (including its UCLA campus and that campus' School of Medicine) is a business establishment under the Unruh Act, which does not apply to public educational institutions "acting in their core

---

[13] The Complaint fails to allege *any* facts purporting to show Chancellor Frenk was personally involved in the alleged discrimination at all.  *Supra* pp. 21-24.  But even if the Court were to find that any of the allegedly discriminatory conduct has been plausibly alleged to be attributable to Chancellor Frenk, he is nevertheless protected by Section 820.2.

[14] Plaintiffs assert that the Individual Defendants "can be sued under the Unruh Act in their personal capacit[y]," citing two cases for support.  Compl. ¶ 162.  Those cases are inapposite.  The first, *Fruciano v. Regents of the University of California*, discusses whether state officials are immune under the Eleventh Amendment for claims brought against them in their personal capacities under Section 1983.  2018 WL 4219232, at *4 (N.D. Cal. Sept. 5).  It only discusses the Unruh Act to hold that plaintiffs' claims under the Act were barred by the statute of limitations.  *Id.* at *6.  It does not address the applicability of the Unruh Act to state officials, nor does it address state officials' immunity from suit under Section 820.2.  The second case, *K.S. v. Fremont United School District*, likewise focuses on immunity under the Eleventh Amendment and does not address the applicability of Section 820.2.  2007 WL 4287522, at *6 (N.D. Cal. Dec. 6, 2007).

educational capacity." *Brennon B. v. Superior Ct.*, 513 P.3d 971, 982 (Cal. 2022). While Plaintiffs allege that the School "effectively operates as a business or a commercial enterprise" because it advertises to "enhance its economic value," collects application fees, enters into contractual relationships, and solicits and operates with non-state funds, Compl. ¶ 163, the fact that an organization engages in some commercial transactions does not make it a "business establishment," *see Curran v. Mount Diablo Council of the Boy Scouts*, 952 P.2d 218, 238 (Cal. 1998) (Boy Scouts organization is not a business establishment despite "engag[ing] in business transactions" on regular basis). "The task of educating students does not involve regularly conducting business transactions with the public, or receiving 'financial benefits from regular business transactions'; nor does it involve 'operating in a capacity that is the functional equivalent of a commercial enterprise.'" *Brennon*, 513 P.3d at 982. Because the University (including the UCLA campus and its School of Medicine) is not a business establishment, neither of the Individual Defendants can be liable under the Unruh Act for actions taken while employed by the University.

### III. THE COURT SHOULD DISMISS PLAINTIFFS' REQUESTED REMEDIES OF PUNITIVE DAMAGES, DISGORGEMENT, AND STATUTORY DAMAGES UNDER THE UNRUH ACT, AND STRIKE PLAINTIFFS' CLASS ALLEGATIONS

To the extent the Court does not grant the Motion in full, many of the remedies sought in the Complaint must still be dismissed because they are not plausibly alleged and are unavailable as a matter of law. These include punitive damages, "disgorgement" of previously awarded federal funds, and an injunction lifting the School of Medicine's "no-transfer" policy. *See Gutzalenko v. City of Richmond*, 723 F. Supp. 3d 748, 762 (N.D. Cal. 2024) (dismissing claim for punitive damages under Rule 12(b)(6)); *Castillo v. Prime Hydration LLC*, 748 F. Supp. 3d 757, 774 (N.D. Cal. 2024) (dismissing claims for injunctive and other

equitable relief).  Additionally, Plaintiffs' class allegations are facially insufficient to satisfy the requirements of Rule 23 and should be stricken as well.  *See Am. W. Door & Trim v. Arch Specialty Ins.*, 2015 WL 1266787, at *8 (C.D. Cal. Mar. 18, 2015) (striking deficient class allegations).

### A. Punitive Damages Are Unavailable

Plaintiffs cannot recover punitive damages on any of their claims.

*First*, punitive damages are unavailable against any Defendant under Title VI as a matter of law.  *See Barnes v. Gorman*, 536 U.S. 181, 189 (2002).

*Second*, punitive damages are also not recoverable for the Section 1983, Section 1981, and Unruh Act claims against the University or against the Individual Defendants in their official capacities.  California Government Code Section 818 bars recovery of punitive damages against "public entit[ies]" such as the University.  *United Nat'l Maint., Inc. v. S.D. Convention Ctr., Inc.*, 766 F.3d 1002, 1012 (9th Cir. 2014); *Regents of the Univ. of Cal. v. Superior Court*, 413 P.3d 656, 663 (Cal. 2018) (the University of California is a public entity).  This precludes punitive damages against the University for plaintiffs' Unruh Act claims. *See Gay-Straight All. Network v. Visalia Unified Sch. Dist.*, 262 F. Supp. 2d 1088, 1111 (E.D. Cal. 2001).  Punitive damages are likewise unavailable against the University for Plaintiffs' federal claims under Sections 1983 and 1981.  *See id.* at 1110-1111 (punitive damages unavailable against public entities under Section 1983); *Tan v. Univ. of Cal. S.F.*, 2007 WL 963223, at *1 (N.D. Cal. Mar. 29, 2007) (same under Section 1981).  For the same reasons, Plaintiffs' claims against the Individual Defendants in their official capacities cannot give rise to punitive damages.  *See Cook v. Torres*, 2013 WL 5946072, at *11 (C.D. Cal. Nov. 5, 2013) (striking punitive damages claims against individual defendants in their official capacities).

*Third*, Plaintiffs fail to plausibly allege entitlement to punitive damages against the Individual Defendants in their individual capacities, as entitlement to such damages would require plausibly pleading that their conduct was "'motivated by evil motive or intent'" or involved "'reckless or callous indifference'" to Plaintiffs' rights. *Gutzalenko*, 723 F. Supp. 3d at 762. Despite Plaintiffs' bare assertion that Defendants' alleged use of race in the admissions process "shows callous disregard of applicants' right to equal treatment," Compl. ¶ 142, the facts alleged, even if true, do not rise to the level of "evil motive or intent" or "reckless or callous indifference." Accordingly, Plaintiffs' punitive damages claims against the Individual Defendants must be dismissed.

## B. Plaintiffs Are Not Entitled To "Disgorgement" Of Previously Awarded Federal Funds

Plaintiffs cite no legal basis for requesting the extraordinary remedy of "[d]isgorgement of federal financial assistance received by [UCLA's School of Medicine] during the period in which it did not comply with federal law." Compl. at 37. Only Plaintiffs' Title VI claims have any nexus to alleged receipt of federal funds, but "disgorgement" of such funds is not a not a permissible remedy in a private Title VI suit.

Defendants are not aware of any cases in which a federal court has recognized the availability of disgorgement of federal funds to a plaintiff suing a federal funding recipient over alleged statutory violations, and Plaintiffs' Complaint cites none. Termination of federal funding under Title VI is a "last resort" that may only be taken by a federal agency, provided Title VI's extensive statutory process has been followed. *See Cannon v. Univ. of Chicago*, 441 U.S. 677, 705 & n.38 (1979). A private suit under Title VI, by contrast, offers a private remedy for "individual relief to a private litigant" separate and apart from the "public remedy" of termination of funding. *See id.* at 704-707. Because Plaintiffs

seek relief that is categorically unavailable under Title VI—or under any other authority they cite—that claim must be dismissed.

## C. Plaintiffs' Request For An Injunction Against The School's Limitations On Transfers And Multiple Applications Must Be Dismissed

Plaintiffs seek an injunction requiring the School to lift its limitations on acceptance of transfer students and multiple applications through the creation of an "injunctive subclass," Compl. ¶ 112, but such an injunction would be improper. Plaintiffs do not allege that the School's no-transfer policy or reapplication limits are unlawful, and therefore Mahoney and the "injunctive subclass" she seeks to represent cannot show they are ready to apply to transfer to the School of Medicine but for an allegedly discriminatory practice. *See Loffman*, 119 F.4th 1147 at 1159 n.6. Thus, Plaintiffs lack standing to seek an injunction lifting the no-transfer policy and reapplication limits. Moreover, because this relief would require the School to change its admissions policies, Plaintiffs must meet the "heightened standard that applies to mandatory injunctive relief"—i.e., the "facts and law [must] clearly favor" Plaintiffs. *Katie A., ex rel. Ludin v. Los Angeles Cnty.*, 481 F.3d 1150, 1156 (9th Cir. 2007) (citing *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994)). Plaintiffs cannot meet that burden, and their request for this relief must be dismissed.

## D. Plaintiffs' Class Allegations Must Be Stricken

Plaintiffs seek to certify a class and subclass with Mahoney as its sole representative. Compl. ¶¶ 111-112. But Plaintiffs' class allegations "make it obvious that classwide relief is not available" under Rule 23, so they must be stricken. *See Am. W. Door & Trim,* 2015 WL 1266787, at *8 (granting motion to strike deficient class allegations). Mahoney lacks Article III standing and therefore plaintiffs' proposed class and subclass lack a representative. *Supra* pp. 17-18.

Additionally, Plaintiffs' proposed class cannot satisfy Rule 23(a)'s requirement that Plaintiffs' claims "touch and concern all members of the class." *Wal-Mart v. Dukes*, 564 U.S. 338, 359 n.10 (2011).  Indeed, Plaintiffs define the class to include *all* applicants within the statute of limitations period who paid a fee, were denied admission, and "do not identify as black," Compl. ¶ 112, while nonetheless alleging that certain members of this putative class *benefitted* from the challenged admissions practices and policies, *see*, *e.g.*, Compl. ¶ 66 (alleging preferential consideration for Native American applicants).  Thus, Plaintiffs' claims on their face do not raise a question of law or fact that touches and concerns each putative class member, and they are not suitable for classwide resolution. Likewise, insofar as Plaintiffs seek to certify their class under Rule 23(b)(3), *see* Compl. ¶ 123, they are precluded from doing so by the clear predominance of individualized issues of fact over their allegedly common claims.  *See, e.g.*, *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1148 (N.D. Cal. 2010) (striking class allegations due to predominance of individual issues); *Romes v. Garrison Prop. & Cas. Ins. Co.*, 2024 WL 4452781, at *7 (D. Ariz. Oct. 9, 2024) (same); *see also Radke v. Univ. Of Illinois at Urbana-Champaign*, 263 F.R.D. 498, 499 (N.D. Ill. 2009) (dismissing class allegations related to university admissions where adjudication would require "individualized hearings ... to evaluate each applicant to determine whether he or she would or would not have been admitted on the merits—a decision that always legitimately involves subjective criteria, even when impermissible political considerations are taken out of the picture").

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint with prejudice.

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 2:25-cv-04131-JWH-JDE

DATED: July 29, 2025

Respectfully submitted,

/s/ Felicia Ellsworth
Felicia H. Ellsworth
(admitted *pro hac vice*)

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Felicia H. Ellsworth (admitted *pro hac vice*)
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
felicia.ellsworth@wilmerhale.com

Debo Adegbile (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800
debo.adegbile@wilmerhale.com

Joshua A. Vittor (CA Bar No. 326221)
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300
joshua.vittor@wilmerhale.com

*Attorneys for Defendants the Regents of the University of California, Julio Frenk, and Jennifer Lucero*

# <u>CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1 AND STANDING ORDER OF HON. JOHN W. HOLCOMB</u>

The undersigned, counsel of record for Defendants, certifies that this brief contains 25 pages or fewer, which complies with the page limit set by the Court's Standing Order revised February 24, 2023.

Dated: July 29, 2025                                   /s/ Felicia Ellsworth

                                                         Felicia H. Ellsworth

Defendants' Mem. ISO Motion to Dismiss
CASE NO. 2:25-cv-04131-JWH-JDE