WILMER CUTLER PICKERING
HALE AND DORR LLP
Debo Adegbile (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800
debo.adegbile@wilmerhale.com

Felicia H. Ellsworth (admitted *pro hac vice*)
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
felicia.ellsworth@wilmerhale.com

Joshua A. Vittor (CA Bar No. 326221)
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300
joshua.vittor@wilmerhale.com

*Attorneys for Defendants*

## UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DO NO HARM, et al., | Case No. 2:25-cv-04131-JWH-JDE |
| *Plaintiffs*, | **DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS** |
| v. | |
| THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., | Date:      October 17, 2025<br>Time:      9:00 a.m.<br>Place:     Courtroom 9D<br>Judge:    Hon. John W. Holcomb |
| *Defendants*. | |

1

# TABLE OF CONTENTS

2  INTRODUCTION ...................................................................................8

3  BACKGROUND .................................................................................10

4  LEGAL STANDARD...........................................................................11

5  ARGUMENT .......................................................................................12

6  I.  THE ASSOCIATIONAL PLAINTIFFS LACK STANDING .......................12

7  II.  THE INDIVIDUAL DEFENDANTS ARE IMMUNE FROM PLAINTIFFS'
      CLAIMS, WHICH ARE ALSO DEFICIENT ON THE MERITS ................15

8      A.  All Claims Against Chancellor Frenk Must Be Dismissed Due
           To Sovereign Immunity And Because Plaintiffs Fail To Allege
9          That He Was Personally Involved In The Challenged Conduct .........15

10     B.  All Claims Against Former Chancellor Block Must Be
           Dismissed For Failure To Plausibly Allege Individual
11         Involvement In The Alleged Misconduct, Let Alone Intentional
12         Discrimination ...................................................................................18

13     C.  Former Chancellor Block And Associate Dean Lucero Are
           Entitled To Qualified Immunity From The Federal Damages
14         Claims................................................................................................21

15     D.  State-Law Immunity Shields Former Chancellor Block and
           Associate Dean Lucero From The Unruh Act Claim, Which In
16         Any Event Does Not Apply To The University Or Its
17         Employees .........................................................................................23

18  III.  THE COURT SHOULD DISMISS CERTAIN REQUESTED REMEDIES AND
19        SHOULD STRIKE PLAINTIFFS' CLASS ALLEGATIONS .....................26

20     A.  Punitive Damages Are Unavailable ....................................................27

21     B.  Plaintiffs' Request For An Injunction Against The School's
           Limitations On Transfers And Multiple Applications Must Be
22         Dismissed .........................................................................................28

23     C.  Plaintiffs' Class Allegations Must Be Stricken...................................29

24  CONCLUSION ...................................................................................30

25

26

27

28

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. Diabetes Ass'n v. U.S. Dep't of the Army*,
938 F.3d 1147 (9th Cir. 2019) ...................................................................11, 12

*Am. W. Door & Trim v. Arch Specialty Ins.*,
2015 WL 1266787 (C.D. Cal. Mar. 18, 2015)............................................27, 29

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009)............................................................................................10

*Ass'n of Christian Sch. Int'l v. Stearns*,
678 F. Supp. 2d 980 (C.D. Cal. 2008) ...............................................................12

*Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*,
729 F.3d 937 (9th Cir. 2013) .......................................................................17, 18

*Barry v. Yosemite Cmty. Coll. Dist.*,
2017 WL 896307 (E.D. Cal. Mar. 7, 2017)........................................................16

*Brust v. Regents of the Univ. of Cal.*,
2007 WL 4365521 (E.D. Cal. Dec. 12, 2007) ..............................................24, 25

*Carmen v. S.F. Unified Sch. Dist.*,
982 F. Supp. 1396 (N.D. Cal. 1997)...................................................................16

*Carney v. Adams*,
592 U.S. 53 (2020)..............................................................................................14

*Castillo v. Prime Hydration LLC*,
748 F. Supp. 3d 757 (N.D. Cal. 2024)................................................................26

*In re Century Aluminum Co. Sec. Litig.*,
729 F.3d 1104 (9th Cir. 2013) ...........................................................................11

*Dittman v. California*,
191 F.3d 1020 (9th Cir. 1999) ...........................................................................16

*Do No Harm v. Gianforte*,
2025 WL 756742 (D. Mont. Jan. 10, 2025) .......................................................13

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 2:25-cv-04131-JWH-JDE

*Doe v. Regents of the Univ. of Cal.*,
    891 F.3d 1147 (9th Cir. 2018) ........................................................................16

*Eclectic Properties E., LLC v. Marcus & Millichap Co.*,
    751 F.3d 990 (9th Cir. 2014) ..........................................................................11

*Endurance Am. Specialty Ins. Co. v. Lance-Kashian & Co.*,
    2010 WL 3619476 (E.D. Cal. Sept. 13, 2010) ...............................................28

*Fisher v. Univ. of Tex.*,
    570 U.S. 297 (2013).........................................................................................23

*Food & Drug Admin. v. All. for Hippocratic Med.*,
    602 U.S. 367 (2024).........................................................................................12

*Fruciano v. Regents of the University of California*,
    2018 WL 4219232 (N.D. Cal. Sept. 5) ...........................................................25

*Kentucky v. Graham*,
    473 U.S. 159 (1985).........................................................................................16

*Gratz v. Bollinger*,
    539 U.S. 244 (2003).................................................................................13, 14

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
    742 F.3d 414 (9th Cir. 2014) ..........................................................................21

*Grimberg v. United Airlines, Inc.*,
    2023 WL 2628708, at *3 (C.D. Cal. Jan. 10, 2023) .......................................27

*Grutter v. Bollinger*,
    539 U.S. 306 (2003).................................................................................22, 23

*Gutzalenko v. City of Richmond*,
    723 F. Supp. 3d 748 (N.D. Cal. 2024)..............................................26, 27, 28

*Heard v. Cnty. of San Bernardino*,
    2021 WL 5083336 (C.D. Cal. Oct. 12, 2021) .................................................21

*Hunt v. Wash. State Apple Advert. Comm'n*,
    432 U.S. 333 (1977).........................................................................................12

*Hunter v. Chatman*,
    2018 WL 10076846 (C.D. Cal. Nov. 20, 2018) .......................................19, 20

*Imagineering, Inc. v. Kiewit Pac. Co.*,
  976 F.2d 1303 (9th Cir. 1992) ........................................................................21

*Int'l Longshore & Warehouse Union v. Nelson*,
  599 F. App'x 701 (9th Cir. 2015) ..................................................................12

*K.S. v. Fremont United School District*,
  2007 WL 4287522 (N.D. Cal. Dec. 6, 2007).................................................25

*Laird v. United Tchrs. Los Angeles*,
  615 F. Supp. 3d 1171 (C.D. Cal. 2022) .........................................................16

*Loffman v. Cal. Dep't of Educ.*,
  119 F.4th 1147 (9th Cir. 2024) ...............................................................13, 28

*Katie A., ex rel. Ludin v. Los Angeles Cnty.*,
  481 F.3d 1150 (9th Cir. 2007) .......................................................................28

*Radke v. Univ. Of Illinois at Urbana-Champaign*,
  263 F.R.D. 498 (N.D. Ill. 2009).....................................................................29

*Ralon v. Kaiser Found. Health Plan, Inc.*,
  2024 WL 4933330 (N.D. Cal. Dec. 2, 2024)..................................................16

*Romes v. Garrison Prop. & Cas. Ins. Co.*,
  2024 WL 4452781 (D. Ariz. Oct. 9, 2024)....................................................29

*Silverbrand v. Woodford*,
  2010 WL 3635780 (C.D. Cal. Aug. 18, 2010) ........................................18, 20

*Spokeo, Inc. v. Robins*,
  578 U.S. 330 (2016).......................................................................................11

*Stanley v. Trs. of Cal. State Univ.*,
  433 F.3d 1129 (9th Cir. 2006) .......................................................................16

*Students for a Conservative Am. v. Greenwood*,
  378 F.3d 1129 (9th Cir. 2004) .......................................................................16

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*,
  600 U.S. 181 (2023).......................................................................................22

*Tietsworth v. Sears*,
  720 F. Supp. 2d 1123 (N.D. Cal. 2010).........................................................29

*Topadzhikyan v. City of Glendale*,
 2012 WL 12878680 (C.D. Cal. June 21, 2012) ............................................. 19, 20

*Trump v. CASA, Inc.*,
 145 S. Ct. 2540 (2025) ...................................................................................... 12

*Wal-Mart v. Dukes*,
 564 U.S. 338 (2011) ........................................................................................... 29

*Ward v. Crow Vote LLC*,
 343 F.R.D. 133 (C.D. Cal. 2022) ...................................................................... 30

*Warth v. Seldin*,
 422 U.S. 490 (1975) ........................................................................................... 12

*District of Columbia v. Wesby*,
 583 U.S. 48 (2018) ........................................................................................ 22, 23

*Yoshikawa v. Seguirant*,
 74 F.4th 1042 (9th Cir. 2023) ........................................................................... 16

*Ex parte Young*,
 209 U.S. 123 (1908) ..................................................................................... 17, 18

**State Cases**

*Brennon B. v. Superior Ct.*,
 513 P.3d 971 (Cal. 2022) .............................................................................. 25, 26

*Caldwell v. Montoya*,
 897 P.2d 1320 (Cal. 1995) ............................................................................ 24, 25

*Curran v. Mount Diablo Council of the Boy Scouts*,
 952 P.2d 218 (Cal. 1998) .................................................................................. 26

**Federal Rules**

Fed. R. Civ. P. 12(b)(6) ............................................................................. 9, 11, 26

Fed. R. Civ. P. 12(b)(1) ..................................................................................... 11

Fed. R. Civ. P. 23 .................................................................................. 27, 29, 30

Fed. R. Civ. P. 23(a)(3) ...................................................................................... 30

Fed. R. Civ. P. 23(b)(3) ...................................................................................... 29

**State Statutes**

Cal. Civ. Code § 51(b) ........................................................................25

Cal. Gov't Code § 820.2 ..........................................................23, 24, 25

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 2:25-cv-04131-JWH-JDE

1

**INTRODUCTION**

2       Each year, thousands of aspiring doctors submit applications to the

3  University of California's David Geffen School of Medicine at UCLA ("the School

4  of Medicine" or "the School").  Due to the School's highly competitive admissions

5  standards and limited class size, it must turn away the vast majority of applicants.

6  But before such decisions are made, the School analyzes each application

7  holistically, which it has consistently done using race-neutral means, including the

8  analysis of academic performance and extracurricular achievement, since

9  Proposition 209 took effect in California—over 25 years ago.[1]

10      Plaintiffs allege that the School of Medicine has nevertheless been engaging

11  in race-based discrimination in the admissions process and that Defendants—the

12  Regents of the University of California ("the University"); UCLA Chancellor Julio

13  Frenk; former UCLA Chancellor Gene Block; and Jennifer Lucero, the School's

14  Associate Dean of Admissions (collectively, with the University, "Defendants")[2]—

15  should be held liable under Section 1983, Title VI, Section 1981, and the Unruh

16  Civil Rights Act.  Because these claims suffer from a combination of jurisdictional

17  and pleading defects, they must be dismissed.

18      *First*, Plaintiff organizations Students for Fair Admissions ("SFFA") and Do

19  No Harm ("DNH") lack standing because they fail to plausibly allege that they

20  have any members with standing to sue in their own right.  The member identified

21  by SFFA lacks the requisite credentials and therefore cannot plausibly allege that

22  she is ready and able apply to the School of Medicine.  The member identified by

23  DNH cannot apply to the School of Medicine because he is attending another

24

25       [1] In 1996, Proposition 209 amended the California Constitution to prohibit

26  state entities (like the School of Medicine) from considering race in admissions.

      [2] The Amended Complaint (Dkt. 53) names former Chancellor Block as a

27  defendant for the first time; the other three Defendants were named in the original

    complaint.  All other defendants named in the original complaint have been

28  voluntarily dismissed.  *See* Dkt. 27.

    DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 2:25-cv-04131-JWH-JDE

medical school and the School of Medicine does not accept transfer applications. Because SFFA and DNH lack standing, they must be dismissed as Plaintiffs.

*Second*, Plaintiffs' claims suffer from significant deficiencies warranting dismissal under Fed. R. Civ. P. 12(b)(6).

All claims against UCLA's current Chancellor, Defendant Julio Frenk, must be dismissed because he is sued only in his official capacity and enjoys sovereign immunity from suit. Additionally, the Amended Complaint fails to plausibly allege he is directly connected with the enforcement of allegedly discriminatory admissions policies at the School of Medicine. All claims against UCLA's former Chancellor, Defendant Gene Block, who is sued only in his individual capacity, must likewise be dismissed because Plaintiffs fail to plausibly allege he was personally involved in any allegedly discriminatory admissions practices at UCLA, let alone at the School of Medicine.

Even if Plaintiffs' claims against Chancellor Frenk, former Chancellor Block, and the School of Medicine's Associate Dean, Defendant Jennifer Lucero (collectively, the "Individual Defendants") were plausibly alleged, they are subject to dismissal on other grounds. Qualified immunity prevents Plaintiffs from seeking damages via their Section 1983 and Section 1981 claims to the extent those claims are brought against the Individual Defendants in their individual capacities. And state-law immunity insulates the Individual Defendants from liability under the Unruh Act claim, which in any event must be dismissed because the Unruh Act does not apply to the University or its employees.

*Finally*, to the extent any claims are not dismissed, the Court should dismiss Plaintiffs' requested remedies of punitive damages and an injunction lifting the School's limits on reapplications and transfer applications, and the Court should strike Plaintiffs' facially deficient class allegations.

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 2:25-cv-04131-JWH-JDE

### BACKGROUND[3]

UCLA's School of Medicine is "highly selective," receiving over ten thousand applications each year for roughly 175 seats.  Am. Compl. ¶ 26.  The School does not accept transfer students and does not allow prospective students to apply for admission more than three times.  Am. Compl. ¶ 29.  The School's Admissions Committee reviews the thousands of applications it receives every year holistically, *see* Am. Compl. ¶ 44, considering numerous factors but not granting preferential treatment to any applicant based on race.  Indeed, applicants' self-identified race and ethnicity are not provided to the individuals who review applications to the School.  *Cf.* Am. Compl. ¶ 66.

Plaintiffs are two self-described membership organizations as well as one individual who allegedly applied to the School and was not admitted.  Am. Compl. ¶¶ 13-19.  They allege that the School's admissions officers "openly discuss race" and "use race as a factor to make admissions decisions."  Am. Compl. ¶ 8.  Plaintiffs primary support for that allegation is their contention that Associate Dean Lucero "is an outspoken advocate for using race as a factor in admissions" and allegedly believes it is "important to racially diversify medical-school admissions."  Am. Compl. ¶¶ 57-58.  Plaintiffs also provide a list of alleged demographic statistics of the School's applicants and enrollees.  *See* Am. Compl. ¶¶ 69-81.

Plaintiffs allege violations of the Equal Protection Clause, pursuant to Section 1983 (Count I); Title VI (Count II); Section 1981 (Count III); and the Unruh Act (Count IV); and seek declaratory, injunctive, and monetary relief, *see* Am. Compl. at 43-44, purportedly on a class-wide basis, *see* Am. Compl. ¶¶ 115-127.  Specifically, the Amended Complaint asserts the Section 1983 and Section 1981 claims against the Individual Defendants, Am. Compl. at 32, 39; the Title VI claim against the University, Am. Compl. at 38; and the Unruh Act claim against

---

[3] Defendants assume the truth of Plaintiffs' factual allegations only for the purpose of this Motion.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

former Chancellor Block and Associate Dean Lucero in their individual capacities, Am. Compl. at 41.

Defendants filed a motion to dismiss the original complaint on July 29, 2025. Dkt. 46. Plaintiffs then filed the Amended Complaint, which, in many ways, reflects an attempt to cure the various pleading defects highlighted by the prior motion. For example, Defendants previously argued that the University was immune from all claims other than under Title VI, that the Individual Defendants could not be sued under Title VI, and that the Unruh Act claim could not be brought against the Individual Defendants in their official capacities. *See generally* Dkt. 46-1. Plaintiffs appear to have conceded these points, among others. The Amended Complaint also attempts to bolster Plaintiffs' allegations in an apparent effort to cure defects previewed by Defendants original motion. But as explained herein, Plaintiffs' amended allegations do not save their claims from dismissal.

## LEGAL STANDARD

Standing is jurisdictional and therefore properly raised in a Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction. *See Am. Diabetes Ass'n v. U.S. Dep't of the Army*, 938 F.3d 1147, 1151 (9th Cir. 2019). The plaintiff has the burden of "clearly" alleging "facts demonstrating" each element of standing. *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016) (quotation marks omitted).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff must allege facts with sufficient support to render them plausible, not just possible. *Eclectic Properties E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014). A court must assume the truth of well-pleaded factual allegations but discount the validity of allegations that are mere legal conclusions. *Id.* at 996. "[P]laintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013). Instead, factual allegations

make legal claims plausible only when they "tend[] to exclude the possibility that the [defendant's theory of non-liability] is true." *Id.*

## ARGUMENT

### I. THE ASSOCIATIONAL PLAINTIFFS LACK STANDING

SFFA and DNH are associations that must meet the requirements of associational standing, and neither has alleged facts sufficient to do so. The associational standing requirements are particularly important in a case like this, where SFFA and DNH allege no injuries of their own yet seek relief that would benefit their members. *See Food & Drug Admin. v. All. for Hippocratic Med.*, 602 U.S. 367, 398 (2024) (Thomas, J., concurring) (warning against the "expansion of Article III standing" through the invocation of associational standing).[4] Indeed, the relief SFFA and DNH seek would apply even to applicants other than their members and therefore risks being impermissibly broad. *See Trump v. CASA, Inc.*, 145 S. Ct. 2540, 2552 (2025) (courts' equitable authority does not encompass granting "requests for relief that extend[s] beyond the parties").

For an associational plaintiff like SFFA or DNH to have standing to sue on behalf of its members, its members must have "standing to sue in their own right," among other requirements. *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977); *see Am. Diabetes*, 938 F.3d at 1155 (applying *Hunt*). In cases

---

[4] SFFA and DNH do not allege that they have suffered any injury of their own. *See All. for Hippocratic Med.*, 602 U.S. at 393-394. Nor do SFFA and DNH seek to recover damages on behalf of their members: the Amended Complaint clarifies that damages are sought only by individual Plaintiff Mahoney, not by SFFA or DNH. *See* Am. Compl. at 43-44. That revision from the original complaint reflects, as explained in Defendants' original motion to dismiss, that associational plaintiffs cannot seek damages on behalf of their members. *See* Dkt. 46-1 at 16; *see also Warth v. Seldin*, 422 U.S. 490, 515-516 (1975); *Int'l Longshore & Warehouse Union v. Nelson*, 599 F. App'x 701, 702 (9th Cir. 2015); *Ass'n of Christian Sch. Int'l v. Stearns*, 678 F. Supp. 2d 980, 985 (C.D. Cal. 2008), *aff'd*, 362 F. App'x 640 (9th Cir. 2010). SFFA and DNH also lack standing to seek declaratory and injunctive relief, as explained below.

where an allegedly discriminatory barrier prevents its members from pursuing an opportunity, the association must allege "concrete fact[s]" sufficient to show that its members are "'able and ready' to pursue the opportunity at issue." *Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1159, 1160-1161 (9th Cir. 2024).  The rejection of an applicant is insufficient to confer standing on its own, as a rejected applicant "still need[s] to allege an intent to apply again in order to seek prospective relief." *Gratz v. Bollinger*, 539 U.S. 244, 261 (2003).  Further, an association lacks standing to challenge an alleged discriminatory barrier, even where the association has asserted that members are "qualified, willing, and able" to apply, if it fails to allege any "indication that the [m]embers are likely to apply, have taken any actual steps to apply, or have anything more than a hypothetical interest in doing so." *Do No Harm v. Gianforte*, 2025 WL 756742, at \*7 (D. Mont. Jan. 10, 2025), *report & recommendation adopted*, 2025 WL 399753 (D. Mont. Feb. 5, 2025).  Both SFFA and DNH lack standing because they fail to plausibly allege that their purported members are able and ready to apply to the School.

SFFA alleges associational standing based on a single anonymous member (SFFA-Member 1), Am. Compl. ¶¶ 96-102, but the Amended Complaint does not plausibly demonstrate that SFFA-Member 1 is "able and ready" to apply, *Loffman*, 119 F.4th at 1161-1162.  SFFA-Member 1 will not graduate college until May 2026, Am. Compl. ¶ 97, and will not take the MCAT until June 2026, Am. Compl. ¶ 102.  Both of those milestones are prerequisites to applying to the School of Medicine.  Her theoretical aspiration to apply therefore may not actualize if any of various potential events occur—for example, SFFA-Member 1 might not graduate college, might not take the MCAT, or might decide to delay applying until she achieves a satisfactory MCAT score (despite Plaintiffs' speculative allegation that "no matter what her best score is, she will apply to Geffen in the next admissions cycle," Am. Compl. ¶ 102).  The Amended Complaint's speculative assertions that SFFA Member 1 will someday satisfy the application prerequisites and apply to

the School do not plausibly suggest that she is able and ready to do so now.

DNH's allegations fare no better. DNH asserts that it has a single member (DNH-Member A) who applied to the School once, in 2024, and was rejected. Am. Compl. ¶¶ 89-95. The alleged rejection of this member is not sufficient to confer standing, as a rejected applicant "still need[s] to allege an intent to apply again in order to seek prospective relief." *Gratz*, 539 U.S. at 261. And the allegation that DNH-Member A "is able and ready to reapply," Am. Compl. ¶ 95, is not plausibly pleaded. As the Amended Complaint acknowledges, DNH-Member A "is attending another medical school," Am. Compl. ¶ 94, and the School does not accept transfer applications, Am. Compl. ¶ 29. Thus, because DNH-Member A *cannot* reapply, Plaintiffs' claim that this member is "able and ready" to do so defies logic. There is no basis in law for Plaintiffs to seek to enjoin the School's decision not to accept transfer students in order to enable DNH-Member A to apply, *see* Am. Compl. ¶ 116. This is because there is no allegation that his present inability to do so is due to *discriminatory or otherwise unlawful* practices. *See Carney v. Adams*, 592 U.S. 53, 60-61 (2020). The Amended Complaint nowhere contends that the School's policy not to accept transfer applications violates any of the statutes or constitutional provisions under which Plaintiffs seek relief. That this policy—which is not itself alleged to be discriminatory in any way—prevents DNH-Member A from applying is insufficient to confer standing. *See Gratz*, 539 U.S. at 262 (standing requires that a party "demonstrate that it is able and ready to [pursue an opportunity] and that a *discriminatory policy* prevents it from doing so on an equal basis" (emphasis added) (quoting *Ne. Fla. Chapter, Associated Gen. Contractors v. Jacksonville*, 508 U.S. 656, 666 (1993))).

Because the Amended Complaint does not plausibly allege that either SFFA-Member 1 or DNH-Member A has standing to sue in their own right, SFFA and DNH lack standing.

## II.   THE INDIVIDUAL DEFENDANTS ARE IMMUNE FROM PLAINTIFFS' CLAIMS, WHICH ARE ALSO DEFICIENT ON THE MERITS

The Amended Complaint asserts claims under Section 1983 and Section 1981 against all three Individual Defendants, and under the Unruh Act against former Chancellor Block and Associate Dean Lucero.  *See* Am. Compl. ¶¶ 128-175.  Various defects warrant dismissal of these claims.

*First*, because Chancellor Frenk is sued in his official capacity and Plaintiffs fail to plausibly allege that he is connected to the enforcement of the challenged admissions policies, the claims against Chancellor Frenk are barred by sovereign immunity.  *Second*, the claims against former Chancellor Block must be dismissed because he is not plausibly alleged to have personally engaged in discriminatory acts.  *Third*, former Chancellor Block and Associate Dean Lucero enjoy qualified immunity from claims for damages under federal law.  *Finally*, state-law immunity shields former Chancellor Block and Associate Dean Lucero from liability under the Unruh Act, which in any event does not apply to them as UCLA employees.

### A. All Claims Against Chancellor Frenk Must Be Dismissed Due To Sovereign Immunity And Because Plaintiffs Fail To Allege That He Was Personally Involved In The Challenged Conduct

UCLA Chancellor Frenk took office in January 2025 and oversees the entire UCLA campus (not just its School of Medicine), supporting tens of thousands of students, faculty, and staff.  Plaintiffs' failure to plausibly allege a direct connection between Chancellor Frenk and allegedly discriminatory admissions practices at UCLA's School of Medicine requires dismissal of all claims against Chancellor Frenk—i.e., the Section 1983 and Section 1981 claims against him in his official capacity.  *See* Am. Compl. ¶¶ 21, 128-175.

Under the Eleventh Amendment, state officials sued in their official capacities—such as Chancellor Frenk[5]—are immune from suit in federal court.

---

[5] Former Chancellor Block is sued only in his individual capacity.  Am. Compl. ¶ 22.

*See Students for a Conservative Am. v. Greenwood*, 378 F.3d 1129, 1130 (9th Cir. 2004) ("It is undisputed that because the defendants were all sued in their official capacities as officers of the University of California, they are entitled to Eleventh Amendment immunity.").  The Eleventh Amendment bars any damages claims, including nominal damages, against an arm of the State except where that immunity has been waived by the State or abrogated by Congress.  *See Kentucky v. Graham*, 473 U.S. 159, 169 (1985); *Laird v. United Tchrs. Los Angeles,* 615 F. Supp. 3d 1171, 1181-1182 (C.D. Cal. 2022), *aff'd*, 2023 WL 6970171 (9th Cir. Oct. 23, 2023).  Congress has not abrogated, and California has not waived, the State's immunity from suit under Section 1983 or Section 1981.  *See Dittman v. California*, 191 F.3d 1020, 1025-1026 (9th Cir. 1999) (Section 1983); *Carmen v. S.F. Unified Sch. Dist.*, 982 F. Supp. 1396, 1403 (N.D. Cal. 1997) (Section 1981); *see also Yoshikawa v. Seguirant*, 74 F.4th 1042, 1047 (9th Cir. 2023) (en banc) (Section 1981 claims brought under Section 1983).[6]  Consequently, Plaintiffs cannot recover damages from the Individual Defendants in their official capacities under those claims.[7]

---

[6] Plaintiffs have revised the Amended Complaint to make clear that they do not assert an Unruh Act claim against the Individual Defendants in their official capacities, *see* Am. Compl. at 41, because such a claim could not proceed, *see Stanley v. Trs. of Cal. State Univ.*, 433 F.3d 1129, 1134 (9th Cir. 2006) (Unruh Act does not waive immunity); *Doe v. Regents of the Univ. of Cal.*, 891 F.3d 1147, 1153 (9th Cir. 2018) (*Ex parte Young* exception does not apply "when a suit seeks relief under state law").  The Amended Complaint also now specifies that the Title VI claim is not asserted against the Individual Defendants, *see* Am. Compl. at 38, in apparent recognition of the fact that a Title VI claim could not have been brought against the Individual Defendants, *see Ralon v. Kaiser Found. Health Plan, Inc.*, 2024 WL 4933330, at *3 (N.D. Cal. Dec. 2, 2024), and because the claim would be redundant of the one against the University, *see Barry v. Yosemite Cmty. Coll. Dist.*, 2017 WL 896307, at *6 (E.D. Cal. Mar. 7, 2017).

[7] Plaintiffs apparently now recognize this fact, specifying in their Amended Complaint that they seek damages only against the Individual Defendants in their *individual* capacities.  *See* Am. Compl. at 43-44.  However, Plaintiffs have not so narrowed their request for nominal damages. *Id.* at 44.

Nor can Plaintiffs obtain declaratory or injunctive relief against Chancellor Frenk. *Ex parte Young*, 209 U.S. 123 (1908)—a narrow exception to Eleventh Amendment immunity—permits plaintiffs to seek prospective declaratory or injunctive relief by suing state officers in their official capacities for violations of federal law. *See Ass'n des Eleveurs de Canards et d'Oies du Quebec v. Harris*, 729 F.3d 937, 943 (9th Cir. 2013). Importantly, however, for *Ex parte Young* to apply, "[t]he state official 'must have some connection with the enforcement'" of the challenged policy. *Id.* "That connection 'must be fairly direct; a generalized duty to enforce state law or general supervisory power over the persons responsible for enforcing the challenged provision will not subject an official to suit.'" *Id.*

Plaintiffs fail to plausibly allege that Chancellor Frenk has any connection, let alone a "fairly direct" one, with the enforcement of the challenged admissions practices. *Id.* The Amended Complaint's description of Chancellor Frenk's enforcement role is limited to a single paragraph in which Plaintiffs draw conclusory and tenuous connections between the University's bylaws and Chancellor Frenk's purported role in admissions. *See* Am. Compl. ¶ 21. Plaintiffs allege that the bylaws provide that Chancellor Frenk is the executive head of UCLA, sets UCLA's policies, is responsible for the administration and operation of UCLA, and oversees UCLA's employees. *See* Am. Compl. ¶ 21. However, Plaintiffs' conclusory allegations that Chancellor Frenk "has the power to change … Geffen's admissions policies and practices" and "monitor[s] how Geffen conducts admissions and oversee[s] its compliance with federal and state laws banning the use of race in admissions" are not reflected in the bylaw quotations that the Amended Complaint lists. Am. Compl. ¶ 21. Indeed, the bylaw the Amended Complaint quotes—Bylaw 31—nowhere even mentions the word "admissions." *See* Univ. of Cal. Bd. of Regents, *Bylaw 31. Chancellors*, https://regents.universityofcalifornia.edu/governance/bylaws/bl31.html (last visited Aug. 27, 2025).

Accordingly, these allegations do not plausibly suggest that Chancellor Frenk's connection to the enforcement of admissions policies is "fairly direct." *Ass'n des Eleveurs*, 729 F.3d at 943. At most, the Amended Complaint alleges in conclusory fashion that Chancellor Frenk has a "general supervisory power" over admissions personnel and all other staff across UCLA as a whole, which is insufficient to invoke the *Ex parte Young* doctrine. *Ass'n des Eleveurs*, 729 F.3d at 943; *see* Am. Compl. ¶ 21 (alleging that Chancellor Frenk "oversee[s] … [Associate Dean] Lucero and everyone who administers admissions at Geffen"). Because *Ex parte Young* does not apply, Plaintiffs cannot seek prospective declaratory or injunctive relief against Chancellor Frenk, and the claims against him must be dismissed in full.

### B. All Claims Against Former Chancellor Block Must Be Dismissed For Failure To Plausibly Allege Individual Involvement In The Alleged Misconduct, Let Alone Intentional Discrimination

The Amended Complaint adds former Chancellor Block as a defendant, asserting claims against him in his individual capacity under Section 1983, Section 1981, and the Unruh Act. *See* Am. Compl. ¶¶ 22, 128-175. Like Chancellor Frenk does now, former Chancellor Block previously oversaw the entire UCLA campus, not just its School of Medicine. He, likewise, had no role whatsoever in admissions. In view of this, the claims against him must be dismissed in full because Plaintiffs do not, and cannot, plausibly allege that former Chancellor Block was personally involved in discriminatory admissions practices at the School of Medicine, let alone that he intentionally discriminated against Plaintiffs or their members.

To bring a claim under Section 1983, Section 1981, or the Unruh Act against an individual defendant, a plaintiff must plausibly allege that the defendant personally participated in the challenged conduct. *See, e.g.*, *Silverbrand v. Woodford*, 2010 WL 3635780, at *6 (C.D. Cal. Aug. 18, 2010) (dismissing Section

1983 claim for failure to allege that defendant "personally caused a civil rights violation"); *Topadzhikyan v. City of Glendale*, 2012 WL 12878680, at *5 (C.D. Cal. June 21, 2012) (Section 1981 only applies where the "'individual [is] personally involved in the discrimination'"); *Hunter v. Chatman*, 2018 WL 10076846, at *9 (C.D. Cal. Nov. 20, 2018) (noting that plaintiffs must allege "willful, affirmative misconduct" by individual defendants to survive motion to dismiss Unruh Act claim (citing *Wilkins-Jones v. County of Alameda*, 859 F. Supp. 2d 1039, 1050-1051 (N.D. Cal. 2012))).

Plaintiffs do not plausibly allege that former Chancellor Block was personally involved in any of the Amended Complaint's allegedly discriminatory acts. Indeed, Plaintiffs do not allege that former Chancellor Block was specifically involved in any School of Medicine operations, including admissions. Rather, the allegations concern the UCLA campus as a whole, and even those allegations are far flung and non-specific. *See* Am. Compl. ¶¶ 9, 22, 46, 49-52. For example, Plaintiffs allege that former Chancellor Block "did not order an investigation or any changes" in response to a report by Robert Mare into UCLA's *undergraduate* admissions. Am. Compl. ¶ 50 (emphasis added). Even if that study from more than a decade ago, which involved undergraduate admissions—not medical school admissions—demonstrated anything about the School of Medicine's current admissions practices—which it does not—it has nothing whatsoever to do with former Chancellor Block, let alone that he personally committed any discriminatory acts. Similarly, Plaintiffs allege that former Chancellor Block "oversaw UCLA's efforts to achieve 'diversity' in admissions," Am. Compl. ¶ 51, but do not identify any actions taken by former Chancellor Block to do so at the School of Medicine.

Indeed, many of the allegations regarding former Chancellor Block do not plausibly relate to admissions at all, let alone to the challenged admissions practices at the School of Medicine. Plaintiffs allege that former Chancellor Block

"created and oversaw the implementation of UCLA's 'efforts … to increase representation of African American' students," Am. Compl. ¶ 22, but do not explain what these alleged "efforts" were or how they related to admissions as opposed to, for example, recruitment, outreach, or enrollment.  Similarly, Plaintiffs allege that former Chancellor Block stated the "goal of public universities" is to "represent the demographics of the community" those universities serve, but Plaintiffs do not plausibly allege that this purported "goal" is sought through discriminatory admissions practices.  Am. Comp. ¶ 49.  Plaintiffs further allege that former Chancellor Block created a new position related to "equity, diversity, and inclusion" and hired new "diversity officers" with the "specific mandate to 'strengthen campus diversity and equity,'" Am. Compl. ¶ 52, but Plaintiffs draw no plausible connection between these hiring decisions and admissions procedures, nor do they allege a single fact suggesting former Chancellor Block was personally involved in any admissions decisions at all.

The Amended Complaint's sole attempt to connect former Chancellor Block to admissions practices at UCLA's Medical School is a conclusory assertion that because former Chancellor Block "was chancellor" of UCLA during the relevant time period, he must be held liable *ipso facto*.  Am. Compl. ¶ 22; *see also* Am. Compl. ¶ 9 (alleging that former Chancellor Block "had the power to hire, fire, discipline, investigate and oversee [Associate Dean] Lucero," but "announced no action or reform").  That falls woefully short of demonstrating with any particularity that former Chancellor Block "personally caused a civil rights violation," *Silverbrand*, 2010 WL 3635780, at *6; was "personally involved in the discrimination," *Topadzhikyan*, 2012 WL 12878680, at *5; or committed "willful, affirmative misconduct," *Hunter*, 2018 WL 10076846, at *9.  Plaintiffs' cherry-picked and unsourced quotations—apparently designed to allege that former Chancellor Block opposed Proposition 209 as a policy matter, *see* Am. Compl. ¶¶ 22, 46—do not plausibly suggest that former Chancellor Block acted in any

unlawfully discriminatory way.  On the contrary, Plaintiffs concede that former Chancellor Block has consistently maintained that UCLA considers applicants "purely on their merits" and "neither discriminates nor grants preference to prospective students based on race."  Am. Compl. ¶ 22.

The claims against former Chancellor Block must also be dismissed for an independent reason.  Even if the Amended Complaint's scattered and speculative allegations regarding former Chancellor Block suffice to plausibly allege that he had *any* involvement in the allegedly discriminatory admissions practices—which they do not—they certainly do not plausibly establish that he engaged in *intentional* discrimination, as is required to state Section 1983, Section 1981, and Unruh Act claims.  *See Heard v. Cnty. of San Bernardino*, 2021 WL 5083336, at *4-5 (C.D. Cal. Oct. 12, 2021) (dismissing Section 1983 claim alleging Equal Protection violations because plaintiff failed to plausibly allege that defendants "acted with an intent or purpose to discriminate"); *Imagineering, Inc. v. Kiewit Pac. Co.*, 976 F.2d 1303, 1313 (9th Cir. 1992) (affirming dismissal of Section 1981 claim and noting that plaintiffs must plausibly allege that "defendants intentionally and purposefully discriminated against them"), *abrogated on other grounds by Diaz v. Gates*, 420 F.3d 897 (9th Cir. 2005) (en banc); *Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 425 (9th Cir. 2014) (dismissing Unruh Act claim and noting that because the "Unruh Act contemplates 'willful, affirmative misconduct on the part of those who violate [it],'" plaintiffs must plausibly allege "more than the disparate impact of a facially neutral policy").

## C. Former Chancellor Block And Associate Dean Lucero Are Entitled To Qualified Immunity From The Federal Damages Claims

State officers sued in their individual capacities—such as former Chancellor Block and Associate Dean Lucero[8]—are entitled to qualified immunity against damages claims under federal law unless "(1) they violated a federal statutory or

---

[8] Chancellor Frenk is sued only in his official capacity.  Am. Compl. ¶ 21.

constitutional right, and (2) the unlawfulness of their conduct was 'clearly established at the time.'" *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018).  To be "clearly established," the unlawfulness of the alleged conduct must have been "sufficiently clear that every reasonable official would understand that what he is doing is unlawful.  In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *Id.* at 63 (cleaned up) (citation omitted).

Even if the Amended Complaint adequately alleges any federal statutory or constitutional violations, former Chancellor Block and Associate Dean Lucero are entitled to qualified immunity to the extent the alleged violations of federal law involved conduct that took place before the Supreme Court's decision in *Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181 (2023).  Prior to that decision, under federal law, an applicant's race or ethnicity could permissibly be considered as a non-dispositive "'plus' factor" in admissions decisions to serve a compelling interest in maintaining a diverse student body. *Grutter v. Bollinger*, 539 U.S. 306, 334 (2003).[9]  Before June 29, 2023, therefore, there was no "sufficiently clear foundation in then-existing precedent," *Wesby*, 583 U.S. at 63, to support the conclusion that the School of Medicine's holistic review was unlawful.

Plaintiffs fail in their attempt to bolster their allegations and to evade qualified immunity in response to Defendants' original motion to dismiss.  They allege, baselessly, that "[s]ince at least 2013, it was clear that [the School]'s use of race in admissions was illegal under federal law." Am. Compl. ¶ 146.  In particular, Plaintiffs assert that the allegedly discriminatory acts would have

---

[9] Defendants' invocation of qualified immunity should not be construed as a concession that race was, in fact, considered in admissions at the School of Medicine in any way that would have been permissible under federal law prior to *Students for Fair Admissions*, but not permissible under California law.

violated *Fisher v. Univ. of Tex.*, 570 U.S. 297 (2013), because those acts would not have satisfied the strict scrutiny mandated by *Fisher*. *See* Am. Compl. ¶¶ 146-149. But nowhere do Plaintiffs plausibly allege that the School's admissions practices at that time advanced some ulterior purpose other than the then-recognized compelling interest in the "'attainment of a diverse student body,'" *Fisher*, 670 U.S. at 310. And even if Plaintiffs did plausibly allege a constitutional violation under *Fisher*, they certainly do not plausibly allege—or develop any argument— that *Fisher* "placed the constitutionality of the officer's conduct *beyond debate*," which is required to overcome qualified immunity. *Wesby*, 583 U.S. at 63 (emphasis added). That is particularly true with respect to former Chancellor Block, for whom the Amended Complaint does not even plead direct or individual involvement in allegedly discriminatory actions, *see supra* pp. 18-21, but also is true for Associate Dean Lucero, who is not plausibly alleged to have engaged in "racial balancing" to achieve a "specified percentage" of any racial group, contrary to Plaintiffs' conclusory assertion otherwise, *see* Am. Compl. ¶ 149 (quoting *Grutter v. Bollinger*, 539 U.S. 306, 330 (2003)).

Former Chancellor Block and Associate Dean Lucero therefore are immune in their individual capacities to damages claims under federal law based on allegations before June 29, 2023.[10]

### D. State-Law Immunity Shields Former Chancellor Block and Associate Dean Lucero From The Unruh Act Claim, Which In Any Event Does Not Apply To The University Or Its Employees

California Government Code Section 820.2 provides that "a public

---

[10] The qualified immunity inquiry concerns only alleged violations of "*federal* statutory or constitutional right[s]." *Wesby*, 583 U.S. at 62-63 (emphasis added). Thus, the fact that Proposition 209 prohibited consideration of race or ethnicity in admissions under California law is irrelevant to the qualified immunity analysis. Even if the Amended Complaint alleged violations of Proposition 209— which it does not—former Chancellor Block and Associate Dean Lucero are still entitled to qualified immunity with respect to Plaintiffs' federal damages claims.

employee is not liable for an injury resulting from his act or omission where the act or omission was the result of the exercise of the discretion vested in him, whether or not such discretion be abused." This immunity applies even when a public employee is sued for alleged violations of a California statute, *see Caldwell v. Montoya*, 897 P.2d 1320, 1325 (Cal. 1995), and it extends to University of California employees, *see Brust v. Regents of the Univ. of Cal.*, 2007 WL 4365521, at *9, *1 (E.D. Cal. Dec. 12, 2007). The immunity covers "deliberate and considered policy decisions in which a conscious balancing of risks and advantages took place." *Brust*, 2007 WL 4365521, at *8.

The Amended Complaint seeks to hold former Chancellor Block and Associate Dean Lucero, both public employees, liable for exercising policy- and decision-making authority over admissions at UCLA's School of Medicine in an allegedly discriminatory manner. *See, e.g.*, Am. Compl. ¶¶ 22, 25, 46, 49-52, 56-68. Thus, the Unruh Act claim depends on allegations of discrimination through "'actual, conscious, and considered' collective policy decisions" made in their capacities as state officials, meaning they are "entitled to immunity pursuant to [Section] 820.2." *Brust*, 2007 WL 4365521, at *9; *see also id.* at *9 n.9 (Section 820.2 applies to Unruh Act claims).[11] For example, Plaintiffs allege that former Chancellor Block believed that the "goal of public universities" was to "represent the demographics of the community," Am. Compl. ¶ 49, and that Associate Dean Lucero set admissions office policy based on her alleged belief that "it's important to racially diversify medical-school admissions, residencies, and leadership positions in medicine," Am. Compl. ¶ 58. A "fair reading" of the Amended Complaint thus "admits of no theory that [former Chancellor Block or Associate

---

[11] The Amended Complaint fails to plausibly allege *any* facts purporting to show that former Chancellor Block was personally involved in the alleged discrimination at all. *See supra* pp. 18-21. But even if any of the allegedly discriminatory conduct had been plausibly alleged to be attributable to former Chancellor Block, he is nevertheless protected by Section 820.2.

Dean Lucero] acted unconsciously or failed to weigh pros and cons"; rather, it asserts that they "did purposefully employ standards [they] deemed relevant, but that the standards employed were wrong and impermissible." *Caldwell*, 897 P.2d at 1328; *see also Brust*, 2007 WL 4365521, at *9.[12]  Accordingly, former Chancellor Block and Associate Dean Lucero are entitled to immunity from the Unruh Act claim pursuant to Section 820.2.[13]

Additionally, the Unruh Act claim must be dismissed because the statute covers only discrimination by "business establishments."  Cal. Civ. Code, § 51(b). None of former Chancellor Block, Associate Dean Lucero, or the University (including its UCLA campus and that campus' School of Medicine) is a business establishment.  In fact, the California Supreme Court has concluded that the Unruh Act does not apply to public educational institutions "acting in their core

---

[12] In an attempt to avoid state-law immunity, the Amended Complaint now includes a conclusory allegation that "[u]nder Proposition 209" and other laws and policies, "no one at [the School] had discretion to consider or let race be considered as a factor in admissions."  Am. Compl. ¶ 174.  But Plaintiffs conflate unlawfulness with lack of discretion.  Section 820.2 provides immunity even where defendants are alleged to have committed unlawful acts.  *See Caldwell*, 897 P.2d at 1328-1329 (immunity applies even when public employee is alleged to have committed California statutory violation).  Indeed, holding otherwise would undermine the "very purpose" of Section 820.2, which is "to afford categories of immunity where, but for its provisions, public agencies or employees would otherwise by liable under general principles of law."  *Id.* at 1328.

[13] Plaintiffs assert that former Chancellor Block and Associate Dean Lucero "can be sued under the Unruh Act in their personal capacities," relying on two inapposite cases.  Am. Compl. ¶ 171.  The first, *Fruciano v. Regents of the University of California*, discusses whether state officials are immune under the Eleventh Amendment for claims brought against them in their personal capacities under Section 1983.  2018 WL 4219232, at *4 (N.D. Cal. Sept. 5).  It only discusses the Unruh Act to hold that plaintiffs' claims under the Act were barred by the statute of limitations.  *Id.* at *6.  It does not address the applicability of the Unruh Act to state officials, nor does it address state officials' immunity from suit under Section 820.2.  The second, *K.S. v. Fremont United School District*, likewise focuses on immunity under the Eleventh Amendment and does not address the applicability of Section 820.2.  2007 WL 4287522, at *6 (N.D. Cal. Dec. 6, 2007).

educational capacity." *Brennon B. v. Superior Ct.*, 513 P.3d 971, 982 (Cal. 2022). While Plaintiffs allege that the School "engages in "advertising and marketing," collects application fees, enters into contractual relationships, and solicits and operates with non-state funds, *see* Am. Compl. ¶ 172, the fact that an organization engages in some commercial transactions does not make it a "business establishment," *see Curran v. Mount Diablo Council of the Boy Scouts*, 952 P.2d 218, 238 (Cal. 1998) (Boy Scouts organization is not a business establishment despite "engag[ing] in business transactions" on regular basis). "The task of educating students does not involve regularly conducting business transactions with the public, or receiving 'financial benefits from regular business transactions'; nor does it involve 'operating in a capacity that is the functional equivalent of a commercial enterprise.'" *Brennon*, 513 P.3d at 982. Because the University (including the UCLA campus and its School of Medicine) is not a business establishment, neither former Chancellor Block nor Associate Dean Lucero can be liable under the Unruh Act for actions taken while employed by the University.

## III. THE COURT SHOULD DISMISS CERTAIN REQUESTED REMEDIES AND SHOULD STRIKE PLAINTIFFS' CLASS ALLEGATIONS

Plaintiffs rightly dropped the original complaint's request for "disgorgement" of previously awarded federal funds, effectively conceding that the requested remedy was ill-conceived. Yet the Amended Complaint still contains similarly untenable requests for punitive damages, *see* Am. Compl. at 44, and for injunctive relief related to the School's limitations on transfers and multiple applications, *see* Am. Compl. ¶ 116. Despite Plaintiffs' addition of more conclusory allegations, the Amended Complaint still fails to plausibly establish that Plaintiffs are entitled to these forms of relief. Therefore, the requests for these remedies must be dismissed. *See Gutzalenko v. City of Richmond*, 723 F. Supp. 3d 748, 762 (N.D. Cal. 2024) (dismissing claim for punitive damages under Rule 12(b)(6)); *Castillo v. Prime Hydration LLC*, 748 F. Supp. 3d 757, 774 (N.D. Cal.

2024) (dismissing claims for injunctive and other equitable relief).  Additionally, Plaintiffs' class allegations remain facially insufficient to satisfy the requirements of Rule 23 and should be stricken.  *See Am. W. Door & Trim v. Arch Specialty Ins.*, 2015 WL 1266787, at *8 (C.D. Cal. Mar. 18, 2015) (striking deficient class allegations).

### A. Punitive Damages Are Unavailable

Although the Amended Complaint clarifies that Plaintiffs request punitive damages only from former Chancellor Block and Associate Dean Lucero in their individual capacities, *see* Am. Compl. at 44, this concession is insufficient to save the remedy from dismissal.  Entitlement to such damages would require plausibly pleading that those Defendants' conduct was "'motivated by evil motive or intent'" or involved "'reckless or callous indifference'" to Plaintiffs' rights.  *Gutzalenko*, 723 F. Supp. 3d at 762.  Plaintiffs' original complaint did not meet this burden, and the Amended Complaint does not do so either.

Plaintiffs attempt to cure the original complaint's defective request for punitive damages by adding a single paragraph containing the conclusory assertion that Defendants' conduct was "motivated by evil intent and shows callous disregard of applicants' right to equal treatment." Am. Compl. ¶ 151.  But a "bare characterization of [a] [d]efendant's motives as evil" is not enough to plausibly plead entitlement to punitive damages.  *Grimberg v. United Airlines*, Inc., 2023 WL 2628708, at *3 (C.D. Cal. Jan. 10, 2023) (collecting cases).  Rather, Plaintiffs must allege "specific facts" sufficient to support this request, which they have not done.  *See id.*  The Amended Complaint contains only vague allegations about, for example, purported misrepresentations by unspecified "Defendants" concerning admissions practices, Am. Compl. ¶ 151, without any information linking these allegations to the two Individual Defendants against whom punitive damages are sought.  Indeed, Plaintiffs make virtually no allegations about former Chancellor Block's involvement in allegedly discriminatory admissions practices in the entire

Amended Complaint, *see supra* 18-21, and the handful of allegations concerning Associate Dean Lucero, even if true, do not rise to the level of alleging "'evil motive or intent'" or "'reckless or callous indifference.'" *Gutzalenko*, 723 F. Supp. 3d at 762; *see Endurance Am. Specialty Ins. Co. v. Lance-Kashian & Co.*, 2010 WL 3619476, at *18 (E.D. Cal. Sept. 13, 2010) ("Punitive damages are never awarded as a matter of right, are disfavored by the law, and should be granted with the greatest of caution and only in the clearest of cases.").

### B. Plaintiffs' Request For An Injunction Against The School's Limitations On Transfers And Multiple Applications Must Be Dismissed

Plaintiffs seek an injunction requiring the School to lift its limitations on acceptance of transfer students and multiple applications through the creation of an "[i]njunctive [s]ubclass," Am. Compl. ¶ 116, but such an injunction would be improper. Plaintiffs do not allege that the School's no-transfer policy or reapplication limits are unlawful, and therefore Mahoney and the "[i]njunctive [s]ubclass" she seeks to represent cannot show they are ready to apply to transfer to the School of Medicine but for an allegedly discriminatory practice. *See Loffman*, 119 F.4th 1147 at 1159 n.6. Indeed, the Amended Complaint no longer alleges that these policies prevent Mahoney—the sole class representative—from applying at all. Am. Compl. ¶ 113. Thus, Plaintiffs lack standing to seek an injunction lifting the no-transfer policy and reapplication limits. Moreover, because this relief would require the School to change its admissions policies, Plaintiffs must meet the "heightened standard that applies to mandatory injunctive relief"—i.e., the "facts and law [must] clearly favor" Plaintiffs. *Katie A., ex rel. Ludin v. Los Angeles Cnty.*, 481 F.3d 1150, 1156 (9th Cir. 2007) (citing *Stanley v. Univ. of S. California*, 13 F.3d 1313, 1320 (9th Cir. 1994)). Plaintiffs cannot meet that burden, and their request for this relief must be dismissed.

### C. Plaintiffs' Class Allegations Must Be Stricken

Plaintiffs seek to certify a class and subclass with Mahoney as its sole representative.  Am. Compl. ¶¶ 115-116.  But Plaintiffs' class allegations "make it obvious that class-wide relief is not available" under Rule 23, so they must be stricken.  *See Am. W. Door & Trim,* 2015 WL 1266787, at *8 (granting motion to strike deficient class allegations).

Plaintiffs' proposed class cannot satisfy Rule 23(a)'s requirement that Plaintiffs' claims "touch and concern all members of the class."  *Wal-Mart v. Dukes*, 564 U.S. 338, 359 n.10 (2011).  Indeed, Plaintiffs define the class to include *all* applicants within the statute of limitations period who paid a fee, were denied admission, and "do not identify as black," Am. Compl. ¶ 116, while nonetheless alleging that certain members of this putative class *benefitted* from the challenged admissions practices and policies, *see* Am. Compl. ¶ 135 (alleging preferential consideration for Hispanic and Native American applicants).  Thus, Plaintiffs' claims on their face do not raise a question of law or fact that touches and concerns each putative class member, and they are not suitable for class-wide resolution.  Likewise, insofar as Plaintiffs seek to certify their class under Rule 23(b)(3), *see* Am. Compl. ¶ 127, they are precluded from doing so by the clear predominance of individualized issues of fact over their allegedly common claims.  *See, e.g.*, *Tietsworth v. Sears*, 720 F. Supp. 2d 1123, 1148 (N.D. Cal. 2010) (striking class allegations due to predominance of individual issues); *Romes v. Garrison Prop. & Cas. Ins. Co.*, 2024 WL 4452781, at *7 (D. Ariz. Oct. 9, 2024) (same); *see also Radke v. Univ. Of Illinois at Urbana-Champaign*, 263 F.R.D. 498, 499 (N.D. Ill. 2009) (dismissing class allegations related to university admissions where adjudication would require "individualized hearings ... to evaluate each applicant to determine whether he or she would or would not have been admitted on the merits—a decision that always legitimately involves subjective criteria, even when impermissible political considerations are taken out of the picture").

Additionally, Plaintiffs' request for an "injunctive subclass" seeking, among other relief, an injunction lifting "the school's limitations on transfers and multiple applications," Am. Compl. ¶ 116, must be stricken. The Amended Complaint alleges that Mahoney—the sole representative of the "injunctive subclass"—"will complete all the steps and meet all the deadlines to apply to Geffen this year." Am. Compl. ¶ 113. Nowhere does it indicate that she is prevented from applying as a result of Geffen's limits on transfers and re-applications. Accordingly, Plaintiffs have not plausibly pleaded that Mahoney's claims are "typical of the claims or defenses of the [sub]class," and thus the class allegations fail to satisfy Rule 23's "typicality" requirement. *Ward v. Crow Vote LLC*, 343 F.R.D. 133, 145 (C.D. Cal. 2022) (quoting Fed. R. Civ. P. 23(a)(3)), *aff'd*, 2024 WL 2239010 (9th Cir. May 17, 2024)

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion to dismiss.

DATED: August 27, 2025                    Respectfully submitted,


                                          /s/ *Felicia H. Ellsworth*
                                          Felicia H. Ellsworth
                                          (admitted *pro hac vice*)


                                          **WILMER CUTLER PICKERING HALE AND DORR LLP**
                                          Felicia H. Ellsworth (admitted *pro hac vice*)
                                          60 State Street
                                          Boston, MA 02109
                                          Telephone: 617-526-6000
                                          felicia.ellsworth@wilmerhale.com

Debo Adegbile (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800
debo.adegbile@wilmerhale.com

Joshua A. Vittor (CA Bar No. 326221)
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300
joshua.vittor@wilmerhale.com

*Attorneys for Defendants the Regents of the University of California, Julio Frenk, Gene Block, and Jennifer Lucero*

DEFENDANTS' MEM. ISO MOTION TO DISMISS
CASE NO. 2:25-cv-04131-JWH-JDE

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1 AND STANDING ORDER OF HON. JOHN W. HOLCOMB</u>

The undersigned, counsel of record for Defendants, certifies that this brief contains 25 pages or fewer, which complies with the page limit set by the Court's Standing Order revised February 24, 2023.

Dated: August 27, 2025

/s/ *Felicia H. Ellsworth*
Felicia H. Ellsworth