**CONSOVOY MCCARTHY PLLC**
Thomas R. McCarthy (PHV)
Cameron T. Norris (PHV)
cam@consovoymccarthy.com
Frank H. Chang (PHV)
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423

Patrick Strawbridge (PHV)
patrick@consovoymccarthy.com
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109

**LAWFAIR LLC**
Adam K. Mortara (PHV)
adam@mortaralaw.com
40 Burton Hills Blvd., Suite 200
Nashville, TN 37215
(773) 750-7154

**ALTVIEW LAW GROUP LLP**
John M. Begakis (SBN 278681)
john@altviewlawgroup.com
9454 Wilshire Blvd., Suite 825
Beverly Hills, CA 90212
(310) 230-5580

*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DO NO HARM, et al., *Plaintiffs*, <br><br> v. <br><br> REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al., *Defendants*. | Case No. 2:25-cv-4131 <br><br> **Opposition to Motion to Dismiss Amended Complaint** |

# **Table of Contents**

Table of Authorities ..................................................................................3

Introduction & Summary of Argument ..................................................... 13

Argument ............................................................................................... 14

    I.    Plaintiffs plausibly alleged standing......................................... 15

        A.    Do No Harm ................................................................ 15

        B.    SFFA ......................................................................... 17

    II.    Plaintiffs can seek their remedies and class certification. ........... 19

        A.    Injunctions and declarations........................................ 20

        B.    Damages ..................................................................... 22

        C.    Class action................................................................ 26

    III.    Plaintiffs did not sue improper defendants. ............................. 29

        A.    Chancellor Frenk ........................................................ 29

        B.    Former chancellor Block.............................................. 30

    IV.    Plaintiffs stated a claim under Unruh. ..................................... 32

        A.    Discretionary-acts immunity ....................................... 32

        B.    "Business establishment"............................................. 35

Conclusion............................................................................................. 37

Certificate of Compliance with L.R. 11-6.1 and Standing Order of Hon. John W. Holcomb ............................................................................................. 38

# Table of Authorities

**Cases**

*AAER v. Fearless Fund Mgmt.*,
    103 F.4th 765 (11th Cir. 2024) ........................................................ 18

*AAER v. Sw. Airlines*,
    2024 WL 5012055 (N.D. Tex. Dec. 6) ............................................. 17

*AE ex rel. Hernandez v. Tulare*,
    666 F.3d 631 (9th Cir. 2012) .......................................................... 32

*Amchem Prods. v. Windsor*,
    521 U.S. 591 (1997) ....................................................................... 27

*Amin v. Quad/Graphics*,
    929 F. Supp. 73 (N.D.N.Y. 1996) .................................................. 31

*Anderson v. Edward D. Jones & Co.*,
    990 F.3d 692 (9th Cir. 2021) .......................................................... 14

*Ariz. Dream Act Coal. v. Brewer*,
    757 F.3d 1053 (9th Cir. 2014) ........................................................ 22

*Arlington Heights v. Metro. Hous. Dev. Corp.*,
    429 U.S. 252 (1977) ....................................................................... 19

*Bacon v. Woodward*,
    104 F.4th 744 (9th Cir. 2024) ......................................................... 20

*Bakos v. Roach*,
    108 Cal. App. 5th 390 (2025) ......................................................... 32

*Barbour v. Merrill*,
    48 F.3d 1270 (D.C. Cir. 1995) ....................................................... 23

*Barbour v. State*,
    2023 WL 6369787 (C.D. Cal. Aug. 1) ................................. 32, 34, 35

*Bell v. Hood*,
    327 U.S. 678 (1946) ....................................................................... 16

*BNR of Wash. v. Brown*,
    992 F.2d 937 (9th Cir. 1993) .......................................................... 17

*Botosan v. Paul McNally Realty*,
    216 F.3d 827 (9th Cir. 2000) .......................................................... 28

*Bowen v. Energizer Holdings*,
    118 F.4th 1134 (9th Cir. 2024) ....................................................... 14

*Bras v. Calif. Pub. Utilities Comm'n,*
  59 F.3d 869 (9th Cir. 1995) ................................................................. 18

*Brennon B. v. Super. Ct.,*
  13 Cal. 5th 662 (2022) ........................................................... 35, 36, 37

*Brennon B. v. Super. Ct.,*
  57 Cal. App. 5th 367, (2020) .............................................................. 35

*Brinkley v. Calif. State Univ.,*
  2022 WL 16627781 (Cal. Ct. App. Nov. 2) ....................................... 35

*Bromfield v. McBurney,*
  2008 WL 163663 (W.D. Wash. Jan. 14) ............................................ 16

*Brown v. Board,*
  349 U.S. 294 (1955) ............................................................................ 20

*Burks v. Poppy Const. Co.,*
  57 Cal. 2d 463 (1962) ......................................................................... 36

*Butcher v. Marysville,*
  398 F. Supp. 3d 715 (E.D. Cal. 2019) ................................................ 26

*Byrne v. Terrill,*
  2005 WL 2043011 (D. Vt. Aug. 1) ..................................................... 21

*Caldwell v. Montoya,*
  10 Cal. 4th 972 (1995) ........................................................................ 34

*Camreta v. Greene,*
  563 U.S. 692 (2011) ............................................................................ 24

*CDAA v. Brown,*
  674 F.3d 1128 (9th Cir. 2012) ............................................................ 29

*Chakejian v. Equifax Info. Servs.,*
  256 F.R.D. 492 (E.D. Pa. 2009) ......................................................... 29

*Chew v. Hybl,*
  1997 WL 33644581 (N.D. Cal. Dec. 9) .............................................. 31

*Chicago v. Barr,*
  961 F.3d 882 (7th Cir. 2020) .............................................................. 16

*Cholakyan v. Mercedes-Benz,*
  796 F. Supp. 2d 1220 (C.D. Cal. 2011) .............................................. 26

*Christian Legal Soc'y Ch. v. Kane,*
  2005 WL 850864 (N.D. Cal. Apr. 12) ................................................ 30

*Cleveland Branch, NAACP v. Parma,*
  263 F.3d 513 (6th Cir. 2001) ................................................................ 17

*Cobell v. Babbitt,*
  52 F. Supp. 2d 11 (D.D.C. 1999) ......................................................... 21

*Curran v. Mt. Diablo Council of Boy Scouts,*
  17 Cal. 4th 670 (1998) .......................................................................... 35

*Davis v. Lab'y Corp. of Am. Holdings,*
  2022 WL 22855520 (C.D. Cal. June 13) ......................................... 28, 29

*Davis v. Lab'y Corp. of Am. Holdings,*
  2024 WL 489288 (9th Cir. Feb. 8) ....................................................... 28

*Doe 1 v. Trump,*
  275 F. Supp. 3d 167 (D.D.C. 2017) ..................................................... 19

*Doe 1 v. Trump,*
  755 F. App'x 19 (D.C. Cir. 2019) ......................................................... 19

*Donadio v. Hyundai Motor Am.,*
  751 F. Supp. 3d 1013 (C.D. Cal. 2024) ................................................ 17

*Doran v. 7-Eleven,*
  524 F.3d 1034 (9th Cir. 2008) .............................................................. 19

*Durbal v. AAMC,*
  No. 1:25-cv-2537 (D.D.C. Aug. 4, 2025) ............................................ 36

*Ellis v. Costco Wholesale,*
  285 F.R.D. 492 (N.D. Cal. 2012) ......................................................... 28

*Fenton v. Groveland Cmty. Servs. Dist.,*
  135 Cal. App. 3d 797 (Ct. App. 1982) ................................................. 34

*Fisher v. Univ. of Tex. at Austin,*
  758 F.3d 633 (5th Cir. 2014) ................................................................ 15

*Fisher v. Univ. of Texas,*
  2008 WL 7318510 (W.D. Tex. Aug. 13) ............................................. 30

*Frasco v. Flo Health,*
  349 F.R.D. 557 (N.D. Cal. 2025) ......................................................... 28

*Frazier v. Fresno,*
  2023 WL 4108322 (E.D. Cal. June 21) ................................................ 35

*Garcia v. L.A.,*
  611 F. Supp. 3d 941 (C.D. Cal. 2020) ............................................ 17, 34

*Gene Pool Techs. v. Coastal Harvest*,
   2021 WL 9181588 (C.D. Cal. Dec. 27) ........................................ 14

*Gratz v. Bollinger*,
   539 U.S. 244 (2003) ................................................................. passim

*Gregory v. Preferred Fin. Sols.*,
   2013 WL 6632322 (M.D. Ga. Dec. 17) ..................................... 28

*Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*,
   377 U.S. 218 (1964) ................................................................. 20

*Grutter v. Bollinger*,
   539 U.S. 306 (2003) ................................................................. 25

*Guillory v. Orange Cnty.*,
   731 F.2d 1379 (9th Cir. 1984) ................................................. 32

*Gurrola v. Jervis*,
   2009 WL 9548218 (C.D. Cal. Apr. 2) ...................................... 31

*Gutzalenko v. Richmond*,
   723 F. Supp. 3d 748 (N.D. Cal. 2024) ...................................... 23

*Hall v. San Francisco*,
   2017 WL 5569829 (N.D. Cal. Nov. 20) ..................................... 17

*Hanson v. Oregon*,
   2024 WL 1328408 (D. Or. Mar. 28) .......................................... 30

*Harmston v. San Francisco*,
   2007 WL 2814596 (N.D. Cal. Sept. 25) .................................... 33

*Hassan v. Iowa*,
   2012 WL 12974068 (S.D. Iowa Apr. 26) ................................... 17

*Hawkins v. Kroger*,
   337 F.R.D. 518 (S.D. Cal. 2020) .............................................. 25

*Hemmings v. Tidyman's*,
   285 F.3d 1174 (9th Cir. 2002) ................................................. 23

*Hernandez v. Sessions*,
   872 F.3d 976 (9th Cir. 2017) ................................................... 22

*Hodes v. Van's Int'l Foods*,
   2009 WL 10674102 (C.D. Cal. June 23) ................................... 26

*Howe v. Akron*,
   801 F.3d 718 (6th Cir. 2015) ................................................... 20

6

*Hunter v. Chapman*,
 2018 WL 10076846 (C.D. Cal. Nov. 20) ................................................... 31

*Int'l Bhd. of Teamsters v. United States*,
 431 U.S. 324 (1977) ................................................................................... 20

*J.E.L. v. S.F. Unified Sch. Dist.*,
 185 F. Supp. 3d 1196 (N.D. Cal. 2016) ..................................................... 23

*Jamgotchian v. Slender*,
 170 Cal. App. 4th 1384 (2009) .................................................................. 34

*Jones v. Lee Way Motor Freight*,
 431 F.2d 245 (10th Cir. 1970) ................................................................... 21

*Jones v. Wells Fargo Bank*,
 2015 WL 661757 (Cal. Ct. App. Feb. 17) ................................................. 28

*Kamar v. Radio Shack*,
 254 F.R.D. 387 (C.D. Cal. 2008) ............................................................... 25

*Kohn v. State Bar of Calif.*,
 2024 WL 4533446 (9th Cir. Oct. 21) .................................................. 35, 37

*Kolstad v. American Dental Ass'n*,
 527 U.S. 526 (1999) ................................................................................... 24

*Koons v. Platkin*,
 673 F. Supp. 3d 515 (D.N.J. 2023) ............................................................ 19

*Krueger v. Wyeth*,
 310 F.R.D. 468 (S.D. Cal. 2015) ............................................................... 27

*L.A. v. Barr*,
 929 F.3d 1163 (9th Cir. 2019) ................................................................... 27

*Larsen v. U.S. Navy*,
 486 F. Supp. 2d 11 (D.D.C. 2007) ............................................................. 19

*Leite v. Crane Co.*,
 749 F.3d 1117 (9th Cir. 2014) ................................................................... 18

*Lema v. Bd. of Trs. of Calif. State Univ. Sys.*,
 2023 WL 3572882 (S.D. Cal. May 17) ................................... 32, 33, 34, 35

*Liberal v. Estrada*,
 632 F.3d 1064 (9th Cir. 2011) ................................................................... 34

*Lucero v. Pennella*,
 2019 WL 3387094 (E.D. Cal. July 26) ...................................................... 21

*Martin v. FBI*,
 145 F.4th 1345 (D.C. Cir. 2025) ........................................................... 24

*Massey v. Banning*,
 256 F. Supp. 2d 1090 (C.D. Cal. 2003) ................................................. 33

*Matsumoto v. Labrador*,
 122 F.4th 787 (9th Cir. 2024) ............................................................... 29

*Mead v. Holder*,
 766 F. Supp. 2d 16 (D.D.C. 2011) ........................................................ 19

*Mecinas v. Hobbs*,
 30 F.4th 890 (9th Cir. 2022) ................................................................. 18

*Melendres v. Arpaio*,
 695 F.3d 990 (9th Cir. 2012) ................................................................ 16

*Michelle M. v. Dunsmuir Joint Union Sch. Dist.*,
 2005 WL 8176750 (E.D. Cal. Apr. 12) .................................................. 34

*Mizutani v. Calif. State Univ. Long Beach*,
 2002 WL 31117258 (Cal. Ct. App. Sept. 25) ........................................ 34

*Myers v. Starbucks Corp.*,
 2024 WL 3102800 (9th Cir. June 24) .................................................... 26

*Myers v. Starbucks Corp.*,
 536 F. Supp. 3d 657 (C.D. Cal. 2021) ................................................... 26

*Nartey v. Regents of Univ. of Calif.*,
 2024 WL 566882 (Cal. Ct. App. Feb. 13) ............................................. 35

*Nat'l Council of La Raza v. Cegavske*,
 800 F.3d 1032 (9th Cir. 2015) .............................................................. 17

*Nayab v. Cap. One Bank*,
 942 F.3d 480 (9th Cir. 2019) ................................................................ 14

*Nevarez v. Forty Niners Football*,
 326 F.R.D. 562 (N.D. Cal. 2018) .......................................................... 25

*O'Connor v. Vill. Green Owners Assn.*,
 33 Cal. 3d 790 (1983) ..................................................................... 35, 36

*Painters & Allied Trades Dist. v. Takeda Pharm.*,
 520 F. Supp. 3d 1258 (C.D. Cal. 2021) ................................................. 26

*Parents Involved v. Seattle Sch. Dist.*,
 551 U.S. 701 (2007) ........................................................................ 19, 25

*Parsons v. Ryan,*
    754 F.3d 657 (9th Cir. 2014) ............................................................... 28

*Passantino v. Johnson & Johnson Consumer Prods.,*
    212 F.3d 493 (9th Cir. 2000) ............................................................... 23

*Perez v. Bath & Body Works,*
    2023 WL 3467207 (N.D. Cal. May 15) ................................................ 21

*Phiffer v. Proud Parrot Motor Hotel,*
    648 F.2d 548 (9th Cir. 1980) .......................................................... 24, 30

*R.W. v. Columbia Basin Coll.,*
    77 F.4th 1214 (9th Cir. 2023) ............................................................... 29

*Ramos v. Madera,*
    4 Cal. 3d 685 (1971) ............................................................................ 33

*Randall v. UNOS,*
    720 F. Supp. 3d 864 (C.D. Cal. 2024) ................................................ 37

*Raya v. Barka,*
    2022 WL 901557 (S.D. Cal. Mar. 28) ................................................. 21

*Retail Indus. Leaders v. Fielder,*
    435 F. Supp. 2d 481 (D. Md. 2006) .................................................... 17

*Richie v. Blue Shield of Calif.,*
    2014 WL 6982943 (N.D. Cal. Dec. 9) ................................................ 27

*Rilley v. MoneyMutual,*
    329 F.R.D. 211 (D. Minn. 2019) ......................................................... 28

*Roman Cath. Archdiocese of N.Y. v. Sebelius,*
    907 F. Supp. 2d 310 (E.D.N.Y. 2012) ................................................ 18

*Rothman v. Equinox Holdings,*
    2021 WL 1627490 (C.D. Cal. Apr. 27) ............................................... 21

*Rumsfeld v. FAIR,*
    547 U.S. 47 (2006) ............................................................................... 15

*Ruvalcaba v. L.A.,*
    167 F.3d 514 (9th Cir. 1999) ............................................................... 24

*Safari v. Whole Foods Mkt.,*
    2023 WL 5506014 (C.D. Cal. July 24) ................................................ 17

*SFFA v. Harvard,*
    397 F. Supp. 3d 126 (D. Mass. 2019) ................................................. 27

*SFFA v. Harvard,*
   600 U.S. 181 (2023) ................................................................................ 23

*SFFA v. UNC,*
   567 F. Supp. 3d 580 (M.D.N.C. 2021) ................................................... 30

*SFFA v. USNA,*
   2024 WL 4057002 (D. Md. Sept. 5) ...................................................... 15

*Shahroz v. State Farm Gen. Ins.,*
   2024 WL 5410447 (C.D. Cal. July 30) .................................................. 22

*Sherman v. Regents of Univ. of Calif.,*
   2022 WL 1137090 (N.D. Cal. Apr. 18) .................................................. 36

*Smith v. Univ. of Wash. L. Sch.,*
   2 F. Supp. 2d 1324 (W.D. Wash. 1998) ........................................26, 27, 28

*Smith v. Wade,*
   461 U.S. 30 (1983) .................................................................................. 22

*Somaysoy v. Ow,*
   536 F. Supp. 3d 634 (C.D. Cal. 2021) ................................................... 14

*Starr v. Baca,*
   652 F.3d 1202 (9th Cir. 2011) ..........................................................31, 32

*Stevens v. Optimum Health Inst.,*
   2010 WL 1838252 (S.D. Cal. May 5) .................................................... 37

*Stevens v. Optimum Health Inst.,*
   810 F. Supp. 2d 1074 (S.D. Cal. 2011) ................................................. 36

*Stewart v. Tex. Tech Univ. Health Scis. Ctr.,*
   741 F. Supp. 3d 528 (N.D. Tex. 2024) ............................................15, 23, 24

*Swann v. Charlotte-Mecklenburg Bd. of Ed.,*
   402 U.S. 1 (1971) .................................................................................... 20

*Swinton v. Potomac Corp.,*
   270 F.3d 794 (9th Cir. 2001) .................................................................. 24

*Syed v. M-I,*
   853 F.3d 492 (9th Cir. 2017) .................................................................. 14

*Taylor v. L.A. Dep't of Water & Power,*
   144 Cal. App. 4th 1216 (2006) ............................................................... 34

*Tiano v. Santa Clara,*
   1994 WL 618467 (N.D. Cal. Oct. 19) ................................................... 34

*Trump v. CASA,*
    145 S.Ct. 2540 (2025) ........................................................................ 15

*United Food v. Brown Grp.,*
    517 U.S. 544 (1996) .......................................................................... 17

*Wal-Mart v. Dukes,*
    564 U.S. 338 (2011) .......................................................................... 26

*Warfield v. Peninsula Golf & Country Club,*
    10 Cal. 4th 594 (1995) .................................................................. 35, 36

*Wiesenbach v. Old Dominion Freight Line,*
    2025 WL 2369244 (C.D. Cal. Feb. 19) ............................................ 26

*Wolin v. Jaguar Land Rover,*
    617 F.3d 1168 (9th Cir. 2010) ......................................................... 28

*Women's Recovery Ctr. v. Anthem Blue Cross Life & Health Ins.,*
    2022 WL 757315 (C.D. Cal. Feb. 2) ................................................ 32

*Woods v. Mo. Dep't of Mental Health,*
    581 F. Supp. 437 (W.D. Mo. 1984) ................................................. 30

*Zhang v. Am. Gem Seafoods,*
    339 F.3d 1020 (9th Cir. 2003) ..................................................... 22, 23

**Statutes**

Cal. Civ. Code §51(b) ............................................................................ 32, 35

Cal. Civ. Code §52(a)-(b) ............................................................................ 32

Cal. Gov't Code §820.2 ..................................................................... 32, 33, 34

**Other Authorities**

*Application Transfer Policies* (2026),
    AAMC, tinyurl.com/57aa75bk ......................................................... 22

*Medical School Application Timeline,*
    Geffen, perma.cc/F8DH-3Q2T (archived Sept. 8, 2025) ................. 25

*Visiting Student Learning Opportunities,*
    Geffen, perma.cc/M6TU-M47T (archived Sept. 8, 2025) ................ 22

**Rules**

Fed. R. Civ. P. 23(a)(2) ................................................................................ 26

Fed. R. Civ. P. 23(a)(3) ................................................................................ 27

Fed. R. Civ. P. 23(b)(3) ................................................................................ 28

Fed. R. Civ. P. 54(c) .................................................................................... 21

**Constitutional Provisions**

Cal. Const. art. I, § 31(f), (a)..............................................................................33, 34

# Introduction & Summary of Argument

Lost in Geffen's web of perfunctory defenses is an important concession: Geffen moves to dismiss only "portions" of the amended complaint, meaning this case *will* go to discovery. Doc.57 at 2 (cover motion); *accord* Doc.57-2 (proposed order). Even Geffen thinks the individual plaintiff can sue the medical school for equitable relief and damages and that she states a claim for intentional racial discrimination under the Constitution, Title VI, and §1981. Yet Geffen wants this Court to decide whether certain plaintiffs and defendants should be dismissed (before any discovery), whether this case can be a class action (before any class-certification motion), and whether Plaintiffs can get certain remedies (before any ruling on liability). Not a good use of time or resources—let alone something that can be done at the pleading stage, based solely on the face of the complaint.

Like Geffen's overall strategy, its arguments for partial dismissal are flawed:

1. Plaintiffs plausibly allege standing. Geffen doesn't dispute the individual plaintiff's standing, which is sufficient for all claims and relief. Even for the associational plaintiffs, Geffen doesn't dispute their standing for nominal damages. And their standing for forward-looking relief is well-pleaded based on their members' ability and readiness to (re)apply once a court exercises its broad authority to redress Geffen's discrimination.

2. Geffen gives no basis to dismiss specific remedies or class allegations at this early stage. Plaintiffs' concededly plausible allegations that Geffen, even after *Harvard*, engaged in a clandestine scheme of intentional racial discrimination supports broad damages and injunctive relief. Cases like this one are also well-suited for class treatment, as the Supreme Court held in *Gratz*.

3. Geffen provides no basis to dismiss any individual defendant. Chancellor Frenk is a proper *Ex parte Young* defendant, as Geffen has stipulated and the Ninth Circuit has held in a similar case. Former chancellor Block is also liable for his own role in introducing race in admissions and for his role as a supervisor of Dean Lucero, whose misconduct Geffen agrees is well pleaded.

4. Plaintiffs plausibly allege a violation of California's Unruh Act. Geffen cannot prove discretionary-act immunity at this stage, where the complaint rightly alleges that denying someone admission based on race is not an act

of "discretion," let alone one that state law "vested" in anyone at Geffen. Geffen's argument that public schools are not *generally* a "business establishment" under Unruh, moreover, ignores that schools are still covered when they discriminate while acting in a business-like capacity. The complaint plausibly alleges that Geffen acts just that way in admissions.

Geffen's motion to dismiss in part should be denied in full.

# Argument

Though the standards for dismissal under Rule 12(b)(1) and (6) can differ, they are the same when the defendant brings only a "facial" challenge to standing, *Bowen v. Energizer Holdings*, 118 F.4th 1134, 1149-50 (9th Cir. 2024)—as Geffen does here, *see* MTD 10 n.3. So for Geffen's motion to dismiss, this Court accepts the complaint's facts as true, reads generic allegations to include all necessary specifics, draws all reasonable inferences, and construes everything in favor of Plaintiffs. *See Anderson v. Edward D. Jones & Co.*, 990 F.3d 692, 699 (9th Cir. 2021); *Syed v. M-I*, 853 F.3d 492, 499 n.4 (9th Cir. 2017). After all that, the question is whether Plaintiffs' standing and claims are "plausible." *Nayab v. Cap. One Bank*, 942 F.3d 480, 495-96 (9th Cir. 2019). Plausible means a "'reasonable inference.'" *Gene Pool Techs. v. Coastal Harvest*, 2021 WL 9181588, at *3 (C.D. Cal. Dec. 27) (Holcomb, J.). It does not mean "'probab[le].'" *Somaysoy v. Ow*, 536 F. Supp. 3d 634, 636 (C.D. Cal. 2021) (Holcomb, J.).

As Geffen likes to stress, Plaintiffs rendered most of Geffen's first motion to dismiss irrelevant by amending their complaint. *E.g.*, MTD 11. What remains are four buckets of arguments. Geffen tries to dismiss specific plaintiffs for lack of standing. MTD 12-14. It tries to dismiss the class allegations and certain remedies. MTD 26-30. It tries to dismiss certain defendants because they were insufficiently involved with the discrimination. MTD 15-23. And it tries to dismiss the state-law claim based on state-law defenses. MTD 23-26. These residual arguments misapply the pleading standard, misstate the law, or both.

## I.    Plaintiffs plausibly alleged standing.

Though Geffen challenges the standing of the associational plaintiffs (Do No Harm and SFFA), it never disputes the standing of the individual plaintiff (Mahoney). Nor could it. Mahoney has standing to seek forward-looking relief because she applied to Geffen before, was rejected, and is not just "able and ready" to reapply once a court orders Geffen to stop discriminating—she is reapplying right now. *SFFA v. USNA*, 2024 WL 4057002, at *5 (D. Md. Sept. 5); *see* Am.-Compl. ¶¶113-14. Mahoney also has standing to seek damages because she was rejected in the past under a racially discriminatory process. *Stewart v. Tex. Tech Univ. Health Scis. Ctr.*, 741 F. Supp. 3d 528, 550-51 (N.D. Tex. 2024); *Fisher v. Univ. of Tex. at Austin*, 758 F.3d 633, 662-63 (5th Cir. 2014) (Garza, J., dissenting); *see* Am.-Compl. ¶¶110-12. While Geffen thinks this Court should independently assess the standing of Do No Harm and SFFA and dismiss them at this early stage, its arguments fail.

### A.    Do No Harm

While Do No Harm pleaded its own standing, this Court doesn't have to decide that question. To satisfy Article III, "one party with standing is sufficient." *Rumsfeld v. FAIR*, 547 U.S. 47, 53 n.2 (2006). As explained, Mahoney has standing. She brings all the same claims as Do No Harm, and Do No Harm seeks no declaratory or injunctive relief that Mahoney doesn't also seek. Am.-Compl. 43(A)-(C). Geffen hints at—but doesn't develop—an argument that Do No Harm needs its own standing because its injunction would be broader than Mahoney's. *Cf.* MTD 12. Not true: They both seek the same injunction ensuring that Geffen fully stops using race in admissions. Am.-Compl. 43(B)-(C). And Mahoney can get that relief on her own. "To afford [Mahoney] complete relief, the court has only one feasible option: order [Geffen] to [stop using race in admissions]" for everyone, even though that relief "incidentally" helps nonparties. *Trump v. CASA*, 145 S.Ct. 2540, 2557 (2025). Ordering Geffen to stop using race *for Mahoney alone* would not provide her complete relief, since admissions are zero sum

and Mahoney could not compete on equal footing if Geffen could use race for everyone else. *Chicago v. Barr*, 961 F.3d 882, 928 (7th Cir. 2020). At a minimum, Mahoney's entitlement to this injunctive relief is not frivolous; so whether she ultimately gets it is irrelevant to standing, *Bell v. Hood*, 327 U.S. 678, 683-85 (1946); *Bromfield v. McBurney*, 2008 WL 163663, at *3 n.5 (W.D. Wash. Jan. 14), and is premature at the pleading stage, *infra* II.A. Her independent standing means this Court "need not address" Do No Harm's standing. *Melendres v. Arpaio*, 695 F.3d 990, 999 (9th Cir. 2012).

In all events, the complaint plausibly alleges Do No Harm's standing. As Geffen concedes, Do No Harm has standing if its Member A is "able and ready" to apply to Geffen once a court orders Geffen to stop discriminating. MTD 12-13. The complaint alleges just that. ¶¶88-95. Geffen's only argument is that, because Member A is now attending another medical school and Geffen chooses not to accept transfers, Member A "cannot" reapply. MTD 14. But Member A could "reapply" as a first year. Am.-Compl. ¶29, ¶95. When this case was filed, he hadn't chosen a medical school; and still today, he has barely started at his less-preferred school. *See* ¶90, ¶94. Member A could also apply as a transfer if, as Plaintiffs request, this Court enjoins Geffen from applying its no-transfers policy to the victims of Geffen's past discrimination. ¶116. Though Geffen thinks Plaintiffs cannot get that relief, Geffen is wrong. *Infra* II.A. And its arguments are irrelevant to *standing* because Plaintiffs' entitlement to that relief is not "frivolous." *Bell*, 327 U.S. at 683-85; *Bromfield*, 2008 WL 163663, at *3 n.5.

Even if Member A did not give Do No Harm standing for forward-looking relief, Member A would still give the association standing to recover nominal damages for Geffen's past discrimination. Though Geffen appreciates that the amended complaint broadly seeks "nominal damages," MTD 16 n.7, it never argues that Do No Harm cannot recover those damages for Member A. In a footnote, Geffen cites cases holding that associations usually cannot seek *compensatory* damages because they require individual members to participate in the litigation. MTD 12 n.4. But that principle does

not govern nominal damages, which are awarded automatically based on the mere vi-
olation of the law and do not require the association's members to participate. *AAER
v. Sw. Airlines*, 2024 WL 5012055, at *3-4 (N.D. Tex. Dec. 6) (collecting cases). The no-
individual-participation rule is not jurisdictional anyway. *United Food v. Brown Grp.*, 517
U.S. 544, 557 (1996). So by making no developed argument in the body of its motion
about associations seeking nominal damages, Geffen forfeits the point. *BNR of Wash.
v. Brown*, 992 F.2d 937, 946 (9th Cir. 1993); *Donadio v. Hyundai Motor Am.*, 751 F. Supp.
3d 1013, 1022 (C.D. Cal. 2024) (Holcomb, J.).

Even if Member A were somehow insufficient, Do No Harm could allege stand-
ing based on another member. Associations need only "one" member with standing,
and that member can change over time. *Cleveland Branch, NAACP v. Parma*, 263 F.3d
513, 524 (6th Cir. 2001). The complaint alleges that Do No Harm has "members,"
plural, who are "ready and able to apply to Geffen"—a factual allegation that must be
accepted as true. Am.-Compl. ¶88, ¶15; *see Hall v. San Francisco*, 2017 WL 5569829, at
*6 (N.D. Cal. Nov. 20); *Hassan v. Iowa*, 2012 WL 12974068, at *3 n.4 (S.D. Iowa Apr.
26). While only Member A is specifically named, associations need not identify specific
members in their complaints *at all* because standing can be pleaded generally. *Garcia v.
L.A.*, 611 F. Supp. 3d 941, 951 (C.D. Cal. 2020) (collecting cases). So Geffen's myopic
focus on Member A is irrelevant. *Retail Indus. Leaders v. Fielder*, 435 F. Supp. 2d 481,
486 (D. Md. 2006). At a minimum, this Court should not dismiss Do No Harm without
first granting Plaintiffs "leave to amend" to name another member. *Nat'l Council of La
Raza v. Cegavske*, 800 F.3d 1032, 1041 (9th Cir. 2015); *e.g.*, *Safari v. Whole Foods Mkt.*,
2023 WL 5506014, at *8 (C.D. Cal. July 24) (Holcomb, J.).

**B.    SFFA**

Because Mahoney and Do No Harm have standing, this Court need not decide
whether SFFA has standing. All Plaintiffs raise the same claims; all Plaintiffs seek the
same declaratory relief; and the injunctive relief that SFFA currently seeks is also

sought by Mahoney and Do No Harm. *See* Am.-Compl. 32-44. Because "only one plaintiff need have standing for the suit to proceed …. beyond the pleading stage," this Court need "not address" Geffen's attempt to single out SFFA. *Mecinas v. Hobbs*, 30 F.4th 890, 897 (9th Cir. 2022).

In case it matters, the complaint plausibly alleges SFFA's standing. Geffen concedes that SFFA has standing if Member 1 is "able and ready" to apply to Geffen. MTD 12-13. More than ready, Member 1 *will* apply. Attending Geffen is her "dream." Am.-Compl. ¶101. Once she graduates college in "May 2026" and takes the MCAT in "June 2026," Member 1 "will apply to Geffen" in the "next admissions cycle," which opens in "May 2026." ¶¶96-97, ¶¶101-02. Far from "someday" intentions, MTD 13, the complaint specifies when these steps will occur and pinpoints a specific admissions cycle. *See AAER v. Fearless Fund Mgmt.*, 103 F.4th 765, 774 (11th Cir. 2024); *Bras v. Calif. Pub. Utilities Comm'n*, 59 F.3d 869, 873-74 (9th Cir. 1995). Geffen's illegal use of race threatens to imminently harm Member 1 in less than a year. *See Bras*, 59 F.3d at 873-74 (finding standing to challenge a discriminatory barrier even though plaintiff couldn't apply until a three-year term expired); *Roman Cath. Archdiocese of N.Y. v. Sebelius*, 907 F. Supp. 2d 310, 325 (E.D.N.Y. 2012) ("injuries occurring three, six, or even thirteen years in the future can be sufficiently imminent for standing purposes").

Geffen's only response is that Member 1 has not yet graduated college or taken the MCAT. *See* MTD 13. But most students haven't graduated college when they apply to medical school. And Member 1, who has a strong GPA and has already finished her required courses, will graduate in "May 2026." Am.-Compl. ¶¶97-100. Member 1 also "will take the MCAT in June 2026" and "will apply" to Geffen in 2026 "no matter" her score. ¶102. Geffen cannot fight these factual allegations on a facial challenge to standing. *Leite v. Crane Co.*, 749 F.3d 1117, 1121 (9th Cir. 2014). Nor can Geffen dismiss them as "speculative" by itself speculating that Member 1 "might not" graduate, take the MCAT, or apply. MTD 13; *see Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S.

252, 261-62 (1977); *Parents Involved v. Seattle Sch. Dist.*, 551 U.S. 701, 718-19 (2007); *Doe 1 v. Trump*, 275 F. Supp. 3d 167, 200 (D.D.C. 2017), *vacated on other grounds*, 755 F. App'x 19 (D.C. Cir. 2019); *Mead v. Holder*, 766 F. Supp. 2d 16, 24-25 (D.D.C. 2011). Contra Geffen, an applicant can be "able and ready" to apply before she "take[s] every step necessary." *Koons v. Platkin*, 673 F. Supp. 3d 515, 559 (D.N.J. 2023); *Larsen v. U.S. Navy*, 486 F. Supp. 2d 11, 20-21 (D.D.C. 2007). It's enough that Member 1 has taken "some steps" toward applying—like taking the necessary courses, Am.-Compl. ¶98; scheduling her MCAT, ¶102; touring Geffen's campus, ¶101, getting relevant work experience, ¶99; and boosting her grades, ¶100. *Koons*, 673 F. Supp. 3d at 559.

*    *    *

Consider what UCLA's standing arguments mean together. All agree that Plaintiffs plausibly allege a years-long scheme of clandestine, illegal discrimination by Geffen based on applicants' skin color. But according to Geffen, no person could get an injunction to stop this scheme unless they are currently applying for *this* admissions cycle. And once their application is denied and they enroll elsewhere, their right to an injunction becomes immediately and forever moot because Geffen accepts no transfers. This view of the law would make it virtually impossible for the victims of racial discrimination by medical schools to get lasting relief. *Cf. Doran v. 7-Eleven*, 524 F.3d 1034, 1039 (9th Cir. 2008) ("The Supreme Court has instructed us to take a broad view of constitutional standing in civil rights cases."). Thankfully, neither Article III nor the federal courts' powers to remedy discrimination turn on arbitrary factors like Geffen's admissions calendar or transfer preferences.

## II. Plaintiffs can seek their remedies and class certification.

Though this case has barely begun, Geffen wants this Court to dictate what remedies Plaintiffs can get and whether this case can be a class action. This Court should decline, especially based on arguments as weak as Geffen's.

## A.    Injunctions and declarations

Plaintiffs seek various kinds of forward-looking relief, as well as "[a]ll other relief." Am.-Compl. 44(M). Geffen does not challenge Plaintiffs' request for declaratory relief, 43(A); their requests for strong injunctions ensuring that Geffen truly stops using race, 43(B)-(C); or their request that Geffen admit Mahoney, 43(D). Geffen challenges only whether Plaintiffs can get an injunction that "undoes the effects of Geffen's prior discrimination" by, for example, requiring Geffen to allow past victims to apply as transfers or for a fourth time. *E.g.*, Am.-Compl. ¶95, ¶114. Geffen offers no basis to dismiss this one aspect of Plaintiffs' requested relief at the pleading stage.

If Geffen thinks courts cannot remedy discrimination by enjoining practices that do not themselves consider race, *cf.* MTD 14, 28, Geffen is wrong. "'Once liability for racial discrimination has been established, a district court has the duty to render a decree that will eliminate the … effects of past discrimination and prevent like discrimination in the future.'" *Howe v. Akron*, 801 F.3d 718, 753 (6th Cir. 2015). This remedial power is "broad." *Swann v. Charlotte-Mecklenburg Bd. of Ed.*, 402 U.S. 1, 15 (1971); *e.g.*, *id.* at 28-29 (courts can redraw maps); *Griffin v. Cnty. Sch. Bd. of Prince Edward Cnty.*, 377 U.S. 218, 232-33 (1964) (courts can make defendants levy taxes). Courts can enjoin not just the discrimination, but also practices that are "related to" the discrimination, even though those practices "'standing alone, would have been unassailable.'" *Howe*, 801 F.3d at 753. Courts can order defendants to "eliminat[e] a variety of obstacles," *Brown v. Board*, 349 U.S. 294, 300 (1955), and to "return" the plaintiffs to "the pre-[discrimination] status quo," *Bacon v. Woodward*, 104 F.4th 744, 750 (9th Cir. 2024); *accord Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 372 (1977). Here, Geffen's policies against transfers and fourth-time applicants are related to its illegal use of race: Those policies bar some past applicants because Geffen denied them a fair chance to apply before. This Court can remedy Geffen's discrimination by removing those obstacles. *See, e.g.*, *Swann*, 402 U.S. at 26 (courts can make schools let students "transfer" in); *Jones v. Lee*

*Way Motor Freight*, 431 F.2d 245, 250 (10th Cir. 1970) (plaintiffs could challenge "no-transfers policy" that locked in prior discrimination).

Contra Geffen, Plaintiffs have "standing" to seek this relief. MTD 28. For standing, the question is whether an applicant is able and ready to apply *after* the Court grants the requested relief. *See Gratz v. Bollinger*, 539 U.S. 244, 260-62 (2003). Do No Harm has standing because, like Geffen's use of race, Geffen's no-transfers policy currently blocks DNH-Member A from competing for admission, and Plaintiffs seek an injunction undoing both barriers. Though Do No Harm's standing is sufficient, Mahoney could also get this relief. She just submitted her third application to Geffen and, if denied again, will need relief from the ban on transfers, the ban on fourth applications, or both. Am.-Compl. ¶¶113-14. Nothing prevents her from seeking that relief now, which she likely and imminently needs. In fact, this Court's "final judgment" must grant "the relief to which each party is entitled," regardless of the "pleadings." FRCP 54(c). So Geffen's attempt to limit how this Court can craft a permanent injunction now, though phrased in terms of "standing," is fatally "premature." *Perez v. Bath & Body Works*, 2023 WL 3467207, at *6 (N.D. Cal. May 15); *accord Raya v. Barka*, 2022 WL 901557, at *11 n.6 (S.D. Cal. Mar. 28); *Rothman v. Equinox Holdings*, 2021 WL 1627490, at *12 (C.D. Cal. Apr. 27).

This Court should also reject Geffen's suggestion that "this relief" be dismissed as a "'mandatory'" injunction. MTD 28. As another court said when a defendant made the same throwaway objection, this "unsupported and poorly briefed argument" is forfeited. *Lucero v. Pennella*, 2019 WL 3387094, at *11 (E.D. Cal. July 26). It's also wrong. Whether Plaintiffs are entitled to a mandatory injunction cannot be decided at summary judgment, *Cobell v. Babbitt*, 52 F. Supp. 2d 11, 31-32 & n.20 (D.D.C. 1999), let alone on the pleadings, *Byrne v. Terrill*, 2005 WL 2043011, at *8 (D. Vt. Aug. 1). Even if it could, an injunction that restores the status quo ante for the victims of past discrimination by *stopping* Geffen from enforcing its policies against transfers or fourth

21

applications is prohibitory, not mandatory. *Hernandez v. Sessions*, 872 F.3d 976, 998 (9th Cir. 2017); *Ariz. Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1061 (9th Cir. 2014). Regardless, Plaintiffs are entitled even to mandatory relief because the complaint plausibly alleges that Geffen is a known cheater that's "'clearly'" violating the law. MTD 28; *see infra* II.B.2. Requiring Geffen to consider transfer applications is hardly drastic: Several medical schools already allow transfers, Am.-Compl. ¶29; *Application Transfer Policies* (2026), AAMC, tinyurl.com/57aa75bk, and Geffen already allows fourth-years from other schools to spend their last year at Geffen, *Visiting Student Learning Opportunities*, Geffen, perma.cc/M6TU-M47T (archived Sept. 8, 2025).

## B.    Damages

The complaint seeks punitive, compensatory, and nominal damages. Am.-Compl. 43(F)-(J). Geffen never denies that Plaintiffs can get compensatory and nominal damages from the Regents. And Plaintiffs seek no damages from Frenk. *Cf.* MTD 16 n.7 (speculating otherwise). With respect to Lucero and Block, Geffen says the complaint fails to plausibly allege punitive damages under federal law, MTD 27-28, and that all damages are defeated by qualified immunity, MTD 21-23. Not so.

**1.** *Punitive damages*: As Geffen concedes, punitives are available under §1983 and §1981. MTD 27. One way to get them is by proving "intentional violations" of federal law. *Smith v. Wade*, 461 U.S. 30, 51 (1983). The conduct needn't be "egregious or outrageous," only intentional. *Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 535 (1999). And the intent needn't be "malicious," meaning "'ill will, spite, or intent to injure.'" *Smith*, 461 U.S. at 37, 51, 56. The defendant need only have acted "'in the face of a perceived risk that its actions will violate federal law.'" *Zhang v. Am. Gem Seafoods*, 339 F.3d 1020, 1041 (9th Cir. 2003). This standard is applied by the factfinder after trial. On a motion to dismiss, Plaintiffs' right to punitives is either irrelevant, *Shahroz v. State Farm Gen. Ins.*, 2024 WL 5410447, at *8 (C.D. Cal. July 30), or judged under the liberal plausibility standard, *J.E.L. v. S.F. Unified Sch. Dist.*, 185 F. Supp. 3d 1196, 1202 (N.D.

Cal. 2016); *cf. Gutzalenko v. Richmond*, 723 F. Supp. 3d 748, 762 (N.D. Cal. 2024) (incorrectly asking whether the complaint was "likely" to support punitives, even though plausibility doesn't require a likelihood).

Plaintiffs allege a plausible case for punitives. As Geffen never denies, the complaint plausibly alleges that Geffen used race as an explicit factor in admissions—a form of "intentional" racial discrimination. *Stewart*, 741 F. Supp. 3d at 555; *see SFFA v. Harvard*, 600 U.S. 181, 220 (2023). Intentional discrimination *alone* justifies punitives. *Passantino v. Johnson & Johnson Consumer Prods.*, 212 F.3d 493, 515 (9th Cir. 2000). Racial discrimination "is invidious in all contexts," including this one. *Harvard*, 600 U.S. at 214. Though "[n]o additional evidence is required" for punitives, *Barbour v. Merrill*, 48 F.3d 1270, 1277 (D.C. Cir. 1995), the complaint also alleges that Geffen concealed its discrimination and repeatedly lied about it, ¶4, ¶8, ¶11, ¶¶50-51, ¶83, ¶86, ¶147, ¶151; *see Passantino*, 212 F.3d at 516 (concealment and falsehoods support punitives). Plus Geffen knew its use of race violated federal law after *Harvard*, ¶2, ¶151, ¶45, ¶¶136-37, ¶141-45, ¶167; and either knew or was recklessly indifferent before *Harvard*, ¶¶146-49, ¶2, ¶¶7-10, ¶133, ¶167. Geffen's knowledge that race-based admissions were banned by Prop 209 and Regents policy, ¶3, ¶¶45-46, also makes it implausible that anyone acted under the subjective belief that their actions were lawful, *see Hemmings v. Tidyman's*, 285 F.3d 1174, 1198-99 (9th Cir. 2002). These allegations, which make up most of the complaint, are a far cry from a "'bare'" recitation of the legal standard for punitives. *Cf.* MTD 27.

Though Geffen pretends that these fulsome allegations do not indict Lucero and Block in particular, *see* MTD 27-28, Geffen is mistaken. Geffen doesn't dispute that the complaint states a claim for intentional discrimination against Lucero, which alone is sufficient for punitives. *Zhang*, 339 F.3d at 1041. And the complaint doesn't stop there: It explains how Lucero used intimidation and shaming to coerce admissions staff to consider race, shut down internal investigations, and concealed Geffen's illegal

conduct. ¶151, ¶¶57-66, ¶¶84-86, ¶8. The complaint also states a claim for intentional discrimination against Block, *infra* III.B, which again is sufficient for punitives. The complaint further alleges facts that plausibly make Block vicariously liable for Lucero's conduct, *infra* III.B; and those same allegations make Block plausibly liable for punitives, *see Kolstad*, 527 U.S. at 542-43; *e.g.*, *Swinton v. Potomac Corp.*, 270 F.3d 794, 810 (9th Cir. 2001); *Phiffer v. Proud Parrot Motor Hotel*, 648 F.2d 548, 552-53 (9th Cir. 1980). As explained, the complaint refutes any suggestion that Lucero acted "contrary to [Block's] good faith efforts to comply" with federal law. *Swinton*, 270 F.3d at 810 (cleaned up). Plus Lucero and Block were *in charge* of Geffen's admissions and UCLA's legal compliance, *infra* III.B, so every allegation in the complaint lets this Court "reasonably infe[r]" their liability too, *Stewart*, 741 F. Supp. 3d at 551.

**2. *Qualified immunity***[*]: Like many of Geffen's arguments, its invocation of qualified immunity is premature. Geffen claims that Lucero and Block have qualified immunity "to the extent" Plaintiffs seek damages, under §1983 or §1981, for conduct predating the *Harvard* decision in June 2023. MTD 22. But Geffen never explains why that's not a null set. The complaint currently seeks damages for Geffen's denial of admission to the individual plaintiff and the associations' members—all post-*Harvard* conduct. ¶¶109-10, ¶90, ¶93, ¶102. While Mahoney also seeks to represent a class, no class members' claims or remedies can be "dismiss[ed] … on the merits before any class ha[s] been certified." *Martin v. FBI*, 145 F.4th 1345, 1351 (D.C. Cir. 2025). And the proposed damages class might contain no one who was denied admission "before June 29, 2023," MTD 23—since this case was filed in May 2025, the statute of

---

[*] Ninth Circuit precedent suggests that qualified immunity is a defense not just to compensatory and punitive damages, but also to nominal damages. *Ruvalcaba v. L.A.*, 167 F.3d 514, 524 (9th Cir. 1999). Plaintiffs reserve the right to argue that this precedent should be overruled on rehearing or certiorari. *See Camreta v. Greene*, 563 U.S. 692, 728 (2011) (Kennedy, J., dissenting).

limitations for §1981 and §1983 is two years, and Geffen releases admissions decisions in October. *See* Am-Compl. 44; *Medical School Application Timeline*, Geffen, perma.cc/F8DH-3Q2T (archived Sept. 8, 2025) (offers of admission start on October 15). Even if class members exist who are both "within the statute of limitations" and were denied admission before June 2023, Am.-Compl. ¶116, any complication presented by qualified immunity should be solved at the class-certification stage—by, for example, amending the class definition to exclude applicants who were denied admission before *Harvard. See Nevarez v. Forty Niners Football,* 326 F.R.D. 562, 575 (N.D. Cal. 2018); *Hawkins v. Kroger*, 337 F.R.D. 518, 526 (S.D. Cal. 2020); *Kamar v. Radio Shack*, 254 F.R.D. 387, 391 n.2 (C.D. Cal. 2008).

Geffen has no viable qualified-immunity defense anyway. Geffen claims that, "[p]rior to" *Harvard*, universities could consider race as a "'plus' factor" to pursue the "compelling interest" in the educational benefits of overall diversity. MTD 22 (citing *Grutter v. Bollinger*, 539 U.S. 306, 334 (2003)). But the complaint alleges that, under Block and Lucero, Geffen used race as more than a plus factor, ¶135, ¶149, ¶8, ¶50, ¶¶62-64, ¶¶68-82, which violates even *Grutter*, 539 U.S. at 336-37. The complaint alleges that Geffen's goal was racial diversity for its own sake, ¶133, ¶141, ¶10, ¶¶47-49, ¶51, ¶54, ¶60, which was always illegal "racial balancing," *Parents Involved*, 551 U.S. at 723, 726-32. The complaint alleges that Geffen's use of race had no end date, ¶145, ¶151, ¶¶2-3, which independently violates *Grutter*, 539 U.S. at 342-43. And far from "irrelevant," MTD 23 n.10, Prop 209 meant that Geffen's use of race was done *in secret*—meaning it could not possibly survive strict scrutiny under *Fisher I & II*, which require a "good faith" adoption of race, based on a "reasoned, principled … academic decision," after a formal study and reasonable rejection of race-neutral alternatives. 570 U.S. 297, 310 (2013); 579 U.S. 365, 383 (2016); *see* Am.-Compl. ¶147, ¶4, ¶46, ¶151. If Geffen happened to be using race just like the "Harvard Plan"—but in the shadows—then Geffen will have to prove that far-fetched defense in "discovery." *Smith v. Univ. of Wash. L.*

*Sch.*, 2 F. Supp. 2d 1324, 1335 (W.D. Wash. 1998). Even then, the defense wouldn't help. The Supreme Court didn't purport to change the law in *Harvard*; it held that "'many universities'" in the years leading up to that decision, including Harvard itself, were violating strict scrutiny under the *existing* precedent. 600 U.S. at 230-31.

## C.    Class action

Geffen's attempt to strike or dismiss the class allegations is "'premature.'" *Painters & Allied Trades Dist. v. Takeda Pharm.*, 520 F. Supp. 3d 1258, 1273 (C.D. Cal. 2021) (Holcomb, J.). "The Ninth Circuit has said that 'compliance with Rule 23 is not to be tested by a motion to dismiss.'" *Butcher v. Marysville*, 398 F. Supp. 3d 715, 727-28 (E.D. Cal. 2019); *accord Hodes v. Van's Int'l Foods*, 2009 WL 10674102, at *2 (C.D. Cal. June 23) (same for motion to strike). And before "a motion for class certification," this Court consistently denies attempts to litigate class certification as "premature," *Myers v. Starbucks Corp.*, 536 F. Supp. 3d 657, 667 (C.D. Cal. 2021) (Holcomb, J.), *aff'd*, 2024 WL 3102800 (9th Cir. June 24)—even when this Court sees "substantial hurdles to class certification," *Takeda*, 520 F. Supp. 3d at 1273. Whether a case should be a class action "is a nuanced issue better decided after full briefing and with the benefit of a certain amount of class discovery." *Myers*, 536 F. Supp. 3d at 667; *accord, e.g.*, *Wiesenbach v. Old Dominion Freight Line*, 2025 WL 2369244, at *5 n.4 (C.D. Cal. Feb. 19).

Even if this Court entertained an exception to this rule for cases where it's "'obvious'" that classwide relief is improper, MTD 29, Geffen's sparse arguments don't come close to meeting an obviousness standard. Its undeveloped attacks on commonality, predominance, and typicality are not the "rare" ones that justify the "extraordinary" relief of resolving class allegations on the pleadings. *Cholakyan v. Mercedes-Benz*, 796 F. Supp. 2d 1220, 1245 (C.D. Cal. 2011); *Butcher*, 398 F. Supp. 3d at 727.

**1. *Commonality***: The complaint plausibly alleges "questions of law or fact common to the class." FRCP 23(a)(2). To satisfy commonality, "even a single common question will do." *Wal-Mart v. Dukes*, 564 U.S. 338, 359 (2011) (cleaned up). The

common questions here include "whether defendants intentionally discriminated against [nonblack] applicants on the basis of race," *Smith*, 2 F. Supp. 2d at 1342, 1344, and whether Geffen has "a compelling state interest" for that discrimination, *Gratz*, 539 U.S. at 267. Indeed, "[c]ivil rights cases against parties charged with unlawful, class-based discrimination are prime examples" of cases that satisfy Rule 23. *Amchem Prods. v. Windsor*, 521 U.S. 591, 614 (1997).

Geffen quibbles that the proposed class includes Native Americans and Hispanics, even though Geffen might give racial preferences to them too. MTD 29. But the complaint alleges that Geffen gives the *largest* racial preferences to blacks, ¶135, ¶¶62-63, ¶¶77-82, ¶143, which is typical of competitive schools that use race, *e.g.*, *SFFA v. Harvard*, 397 F. Supp. 3d 126, 178 (D. Mass. 2019). Like the Asian-American members of SFFA who sued Harvard, racial minorities whose odds of admission would improve if they were black still suffer discrimination and competitive harm. *See L.A. v. Barr*, 929 F.3d 1163, 1174 (9th Cir. 2019) (requiring only a "slight competitive disadvantage"). Even if discovery showed that Geffen's admissions policy imposes no race-based penalty on Hispanics and Native Americans vis-à-vis blacks, that fact would not defeat commonality, since the question could still be *answered* on a classwide basis. *Richie v. Blue Shield of Calif.*, 2014 WL 6982943, at *16 (N.D. Cal. Dec. 9). And any effect on the class could be addressed later by amending the class definition to instead cover "members of those racial or ethnic groups … that defendants treated less favorably on the basis of race." *Gratz*, 539 U.S. at 253 (cleaned up); *see Krueger v. Wyeth*, 310 F.R.D. 468, 473-74 (S.D. Cal. 2015) (stressing courts' ongoing power to amend the class definition as the litigation develops).

**2. *Typicality***: The complaint plausibly alleges that Mahoney's claims are "typical" of the class's. FRCP 23(a)(3). Like the proposed class, Mahoney is an applicant to Geffen who is injured by having to compete in a process that awards illegal race-based preferences to blacks. Geffen does not deny that her claims are typical of the damages

class. It says her claims are not typical of the "injunctive subclass" because, unlike some members, she does not need an injunction requiring Geffen to accept applications from transfers or fourth-time applicants. MTD 30. But she does need that relief. *Supra* II.A. Even if she didn't, there is "'no authority for the argument that typicality is defeated because the *remedies* may be different for class members.'" *Wolin v. Jaguar Land Rover*, 617 F.3d 1168, 1175 (9th Cir. 2010) (emphasis added). The "'permissive'" typicality standard is satisfied because Mahoney's "'claims'" and "'injuries'" are "'reasonably coextensive'" with the class, even if they are not "'identical.'" *Parsons v. Ryan*, 754 F.3d 657, 685 (9th Cir. 2014); *accord Smith*, 2 F. Supp. 2d at 1342.

**3. *Predominance***: Though relevant only to a damages class, the complaint plausibly alleges that the common questions "predominate over any questions affecting only individual members." FRCP 23(b)(3). Geffen says the lack of predominance is "clear," but makes no developed argument why, MTD 29—thus forfeiting the point at this stage, *Frasco v. Flo Health*, 349 F.R.D. 557, 575 (N.D. Cal. 2025). If Geffen thinks predominance is lacking because the class members must prove they would have been "'admitted'" had they been black, MTD 29, Geffen misstates the caselaw and the complaint. Every class member suffered racial discrimination when they were forced to compete in Geffen's race-based process, regardless whether they would have been admitted. *Gratz*, 539 U.S. at 262; *accord Botosan v. Paul McNally Realty*, 216 F.3d 827, 835 (9th Cir. 2000) (similar under Unruh); *Jones v. Wells Fargo Bank*, 2015 WL 661757, at *12-13 (Cal. Ct. App. Feb. 17) (same). That discrimination can be litigated and compensated on a classwide basis by ordering Geffen to pay the class members' lost application fees, $4,000 per denial under Unruh, and punitive damages. Am.-Compl. ¶127; *see Rilley v. MoneyMutual*, 329 F.R.D. 211, 220 (D. Minn. 2019); *Gregory v. Preferred Fin. Sols.*, 2013 WL 6632322, at *12 (M.D. Ga. Dec. 17); *Davis v. Lab'y Corp. of Am. Holdings*, 2022 WL 22855520, at *8-11 & n.10 (C.D. Cal. June 13), *aff'd*, 2024 WL 489288, at *2 (9th Cir. Feb. 8); *Ellis v. Costco Wholesale*, 285 F.R.D. 492, 543 (N.D. Cal. 2012);

28

*Chakejian v. Equifax Info. Servs.*, 256 F.R.D. 492, 500-01 (E.D. Pa. 2009). Even for tra-ditional compensatory damages, any predominance issues could be solved by "bifur-cat[ing] the proceedings into a liability and damages phase," as the court did in *Gratz*. 539 U.S. at 253 & n.5; *see id.* at 267-68 ("agree[ing] with the District Court's carefully considered decision to certify this class-action"); *Davis*, 2022 WL 22855520, at *9 (bi-furcation option solved any predominance concerns with individualized relief).

## III.    Plaintiffs did not sue improper defendants.

Plaintiffs originally sued the Regents, Frenk, Lucero, and other defendants. Doc.1 at 1-2. The parties stipulated that those other defendants would be voluntarily dismissed in exchange for Geffen's promise that the remaining defendants were suffi-cient. Doc.27. After Geffen's first motion to dismiss claimed that now-chancellor Frenk was not personally liable for past discrimination because he was not hired until "January 2025," Doc.46-1 at 21, Plaintiffs dropped their personal-capacity claim against Frenk and added a personal-capacity claim against then-chancellor Block. Ge-ffen now argues that neither chancellor can be sued in any capacity. Geffen is mistaken.

### A.    Chancellor Frenk

Plaintiffs can sue Frenk, UCLA's current chancellor, in his official capacity for forward-looking relief. As Geffen concedes, Frenk lacks sovereign immunity under *Ex parte Young* if he has "'some connection'" to the enforcement of Geffen's admissions policies. MTD 17. This test is a "low bar," satisfied by "'a mere scintilla of enforce-ment.'" *Matsumoto v. Labrador*, 122 F.4th 787, 803 (9th Cir. 2024); *accord R.W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1228 (9th Cir. 2023) ("minimal"). Frenk easily clears it. The chancellor "'would be responsible for implementing any injunctive relief,'" which alone is sufficient under *Ex parte Young. R.W.*, 77 F.4th at 1223; *see* Am.-Compl. ¶21. And as the "head" of UCLA, Frenk "is duty-bound to ensure that his employees … refrain from using race as a criterion in admission decisions." *CDAA v. Brown*, 674 F.3d 1128, 1134 (9th Cir. 2012); *see* Am.-Compl. ¶21. If Frenk's power over *all* policies, personnel,

and operations somehow excludes "admissions," *cf.* MTD 17, Geffen will have to prove that implausible defense at "summary judgment," *Christian Legal Soc'y Ch. v. Kane*, 2005 WL 850864, at *9 (N.D. Cal. Apr. 12). Plaintiffs' allegations about Block—Frenk's predecessor—show that UCLA's chancellor takes an active role regarding the specific issue of race in admissions. *E.g.*, Am.-Compl. ¶22, ¶46, ¶¶50-52. And the chancellor's "duty" to "obey the laws relating to racial discrimination" is "non-delegable" as a matter of law anyway. *Phiffer*, 648 F.2d at 552.

Though Geffen thinks Frenk is too high on the org chart to be sued, MTD 17-18, Geffen never mentions *Coalition to Defend Affirmative Action*, where the Ninth Circuit held that the president of the whole UC system—who is much higher—is a proper *Ex parte Young* defendant regarding "admission criteria." 674 F.3d at 1134. Similar leaders have been *Ex parte Young* defendants for constitutional claims against state universities in every major admissions case. *E.g.*, *Fisher*, 2d-Am.-Compl., 2008 WL 7318510 (W.D. Tex. Aug. 13) (president of UT-Austin and chancellor of UT system); *SFFA v. UNC*, 567 F. Supp. 3d 580, 586-87 (M.D.N.C. 2021) (chancellor of UNC–Chapel Hill and president of UNC system). Plaintiffs sued the system president here too, Doc.1 at 2, but voluntarily dismissed him after Geffen stipulated that any forward-looking relief against Frenk in his "official capacit[y] will apply to and be binding on UCLA and … Geffen," Am.-Compl. ¶21 (quoting Doc.27 at 3). That stipulation waives Frenk's sovereign-immunity defense. *Hanson v. Oregon*, 2024 WL 1328408, at *3 (D. Or. Mar. 28). At the very least, it means Plaintiffs should get leave to substitute the UC president for Frenk. *E.g.*, *Woods v. Mo. Dep't of Mental Health*, 581 F. Supp. 437, 439 (W.D. Mo. 1984).

## B.    Former chancellor Block

Plaintiffs can also sue Block, the chancellor of UCLA from 2007 to 2024, in his personal capacity for damages. Citing several cases, Geffen says Block is liable only if he was "personally" involved in denying people admission based on race at Geffen. MTD 18-19. But as Geffen's federal cases go on to say (often in the very next

sentence), a "supervisor" is liable under §1983 based on "*either* (1) his or her personal involvement in the constitutional deprivation, *or* (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (emphases added). That "sufficient causal connection" exists when the plaintiff sues the supervisor for "his own culpable action or inaction in the training, supervision, or control of his subordinates"; for "his acquiescence in the constitutional deprivation"; or for "conduct that showed a reckless or callous indifference to the rights of others." *Id.* at 1207-08; *accord Amin v. Quad/Graphics*, 929 F. Supp. 73, 78 (N.D.N.Y. 1996) (similar under §1981). As for state law, Geffen's case does not address vicarious liability at all. *See* MTD 19 (citing *Hunter v. Chapman*, 2018 WL 10076846, at *9 (C.D. Cal. Nov. 20)). California law broadly allows vicarious liability for violations of Unruh, meaning Block can be held liable for the discrimination of Lucero and other Geffen employees. *See Gurrola v. Jervis*, 2009 WL 9548218, at *9 (C.D. Cal. Apr. 2); *Chew v. Hybl*, 1997 WL 33644581, at *14-15 (N.D. Cal. Dec. 9).

The complaint plausibly alleges that Block is liable for Geffen's intentional discrimination, both directly and as a supervisor. He created UCLA's policies designed to increase black admissions, Am.-Compl. ¶22, ¶¶51-52, and oversaw the implementation of the similar System policies, ¶¶46-48, ¶22. He had "knowledge" that UCLA's "holistic" admissions process (which Geffen also uses) considered race and "failed to remedy or prevent" that conduct. *Amin*, 929 F. Supp. at 78; *see* Am.-Compl. ¶50, ¶22. He also knew that Geffen in particular was racial balancing, considering race, and using racial proxies, and yet failed to use his power to remedy it. *E.g.*, ¶39, ¶36, ¶¶53-55, ¶22. He hired Lucero knowing she supported the use of race; and he failed to train, supervise, or discipline her after her use of race was reported. *Starr*, 652 F.3d at 1207-08; *see* Am.-Compl. ¶¶8-9, ¶22, ¶¶56-86. At all relevant times, he either led, "acquiesce[d]," or was culpably "indifferen[t]" to Geffen's apparent use of race in admissions—evidence

recounted throughout the complaint, which Geffen concedes states a claim for illegal, intentional racial discrimination. *Starr*, 652 F.3d at 1208; *e.g.*, Am.-Compl. ¶51, ¶49, ¶46.

## IV.    Plaintiffs stated a claim under Unruh.

Plaintiffs seek damages against Lucero and Block in their personal capacities under state law—namely, California's Unruh Civil Rights Act. As relevant here, Unruh bans racial discrimination by "all business establishments of every kind whatsoever." Cal. Civ. Code §51(b). "[E]ach and every" violation makes the defendant liable for damages of at least "$4,000." §52(a)-(b). Geffen responds to this claim by invoking California's statutory immunity for discretionary acts. MTD 23-25. (This state-law immunity is not a defense to Plaintiffs' *federal* claims. *Guillory v. Orange Cnty.*, 731 F.2d 1379, 1382 (9th Cir. 1984)). Geffen also contends that it's not a "business establishment" covered by Unruh. MTD 25-26. Though Geffen can try to develop these defenses in discovery, neither is a reason to dismiss now.

### A.    Discretionary-acts immunity

California's discretionary-acts immunity protects a public employee who is sued for an "exercise of the discretion vested in him." Cal. Gov't Code §820.2. Its "scope" must be construed "as narrowly as possible." *AE ex rel. Hernandez v. Tulare*, 666 F.3d 631, 639 (9th Cir. 2012). The burden of proving immunity is on Geffen. *Bakos v. Roach*, 108 Cal. App. 5th 390, 400-02 (2025); *AE*, 666 F.3d at 639. So "[a]t this stage," Geffen must prove that this affirmative defense is "'clear from the face of the complaint.'" *Women's Recovery Ctr. v. Anthem Blue Cross Life & Health Ins.*, 2022 WL 757315, at *5 (C.D. Cal. Feb. 2) (Holcomb, J.).

Geffen's immunity defense cannot be resolved "at the pleadings stage." *Barbour v. State*, 2023 WL 6369787, at *18 (C.D. Cal. Aug. 1). To have immunity, Geffen must prove "(1) the policy discretion was vested in each of the individual Defendants; and (2) each of the challenged actions resulted from exercise of that policy discretion." *Lema v. Bd. of Trs. of Calif. State Univ. Sys.*, 2023 WL 3572882, at *7 (S.D. Cal. May 17).

As explained below, Geffen cannot prove either one on the complaint alone, at least without "inappropriate[ly]" asking the Court to "make inferences and assume facts in Defendants' favor." *Id.* Because discretionary-acts immunity requires this Court to conduct a "nuanced examination" into "the nature of the particular action at issue," it "cannot" be resolved "on the bare pleadings." *Harmston v. San Francisco*, 2007 WL 2814596, at *5 (N.D. Cal. Sept. 25).

Geffen cannot prove that using race in admissions was within "the discretion vested in" anyone at Geffen. Cal. Gov't Code §820.2. The complaint alleges the opposite. After Prop 209, the California Constitution instructs the "University of California" that it "shall not discriminate against, or grant preferential treatment to, any individual or group on the basis of race." Cal. Const. art. I, § 31(f), (a); *see* Am.-Compl. ¶3, ¶174. Regents Policy 4401 adopts Prop 209 as official university policy and requires no "'regard'" to a student's "'race'" in "'admissions.'" Am.-Compl. ¶3, ¶174. And Geffen publicly denies that it has or used any "discretion" to consider race in admissions. *E.g.*, Am.-Compl. ¶22, ¶46. This case is like *Massey v. Banning Unified School District*, where no immunity applied because school officials could "not claim that their discrimination against Plaintiff was mandated by statutory guidelines or otherwise constituted the implementation of internal school rules mandating discrimination." 256 F. Supp. 2d 1090, 1097 (C.D. Cal. 2003). This case is also like *Ramos v. Madera*, where a county announced that welfare recipients would have to work before they could get benefits, contrary to the work requirements in the state statute. 4 Cal. 3d 685, 688, 693-94 (1971). Because the "standards of eligibility" were "established by the Legislature," the county defendants could not claim immunity. *Id.* at 694. The "basic policy decision" to exclude work as an eligibility criterion had already "been made by the Legislature," so the county had "no discretion" to make a different decision. *Id.*

These arguments do not "conflate unlawfulness with lack of discretion." *Cf.* MTD 25 n.12. Some courts have held that the Unruh Act is a "statute" that "otherwise

provide[s]" for liability, Cal. Gov't Code §820.2, and so violations of Unruh are never entitled to discretionary-acts immunity, *e.g.*, *Michelle M. v. Dunsmuir Joint Union Sch. Dist.*, 2005 WL 8176750, at \*6 (E.D. Cal. Apr. 12). But this Court needn't go that far to know that Geffen has no immunity with respect to race-based admissions. Discretionary-act immunity is "'reserved for those basic policy decisions which have been expressly committed to coordinate branches of government.'" *Liberal v. Estrada*, 632 F.3d 1064, 1084 (9th Cir. 2011) (cleaned up). The basic policy decision to use race in admissions was expressly *un*-committed to Geffen when the people of California amended the state constitution to ban it. Cal. Const. art. I, § 31(f), (a); *see Tiano v. Santa Clara*, 1994 WL 618467, at \*5 (N.D. Cal. Oct. 19) (no immunity for "unconstitutional acts"); *Garcia*, 611 F. Supp. 3d at 936 (no immunity that contradicts "'public policy'"). This "basic policy decision" by the people "removed" any discretion from the universities. *Caldwell v. Montoya*, 10 Cal. 4th 972, 987 n.8 (1995). As did Regents Policy 4401, an internal policy denying Lucero or Block any "discretion" to use race in admissions. *Id.*; *see Jamgotchian v. Slender*, 170 Cal. App. 4th 1384, 1399-400 (2009).

Independently, Geffen cannot prove that "each" of the actions challenged in the complaint was an exercise of discretion. *Lema*, 2023 WL 3572882, at \*7. Even when immunity protects a "basic policy decision," it does not protect "'subsequent operational actions in the implementation of that basic decision.'" *Barbour*, 2023 WL 6369787, at \*18. Those "'case-by-case'" applications of a "policy that is already formulated" are "'ministerial decisions that are not immune.'" *Id.* Plaintiffs are suing Lucero and Block under Unruh in their personal capacity, for damages, based on the denial of admission to individual applicants, Am.-Compl. ¶175, 43(H)—*i.e.*, ministerial conduct, *see Taylor v. L.A. Dep't of Water & Power*, 144 Cal. App. 4th 1216, 1239 (2006); *Mizutani v. Calif. State Univ. Long Beach*, 2002 WL 31117258, at \*6 (Cal. Ct. App. Sept. 25); *Fenton v. Groveland Cmty. Servs. Dist.*, 135 Cal. App. 3d 797, 806-07 (Ct. App. 1982). So even if the decision to use race in admissions were immune, Plaintiffs' Unruh claim cannot be

dismissed "at the pleading stage" because it focuses on the ministerial applications of that decision to Mahoney and thousands of other applicants. *Barbour*, 2023 WL 6369787, at *18; *Lema*, 2023 WL 3572882, at *7.

### B.    "Business establishment"

At least with respect to admissions, Geffen operates as a "business establishmen[t] of every kind whatsoever." Cal. Civ. Code §51(b). That "very broad" language is given "the broadest sense reasonably possible." *Warfield v. Peninsula Golf & Country Club*, 10 Cal. 4th 594, 599, 610 (1995) (cleaned up). Unruh thus applies to "nonprofit organizations," including "hospitals," *O'Connor v. Vill. Green Owners Assn.*, 33 Cal. 3d 790, 796 (1983), and a "secular private school," *Brennon B. v. Super. Ct.*, 57 Cal. App. 5th 367, 391 (2020), *aff'd*, 13 Cal. 5th 662 (2022). Unruh also can "be applied against a government body." *Kohn v. State Bar of Calif.*, 2024 WL 4533446, at *2 (9th Cir. Oct. 21); *see, e.g.*, *Frazier v. Fresno*, 2023 WL 4108322, at *63-64 (E.D. Cal. June 21). The test is conduct-specific: Even if an entity isn't usually a "business establishment," it's still "subject to the Unruh Act if it discriminates in its capacity as a business or commercial enterprise." *Nartey v. Regents of Univ. of Calif.*, 2024 WL 566882, at *5-6 (Cal. Ct. App. Feb. 13); *see Curran v. Mt. Diablo Council of Boy Scouts*, 17 Cal. 4th 670, 700 & n.19 (1998). So while the California Supreme Court held that "public school districts" are not covered by Unruh "[w]hen acting in their core educational capacity," *Brennon B.*, 13 Cal. 5th at 681, the question is what "capacity" Geffen acted in here, *see, e.g.*, *Nartey*, 2024 WL 566882, at *6 (applying this conduct-specific approach to UCLA); *Brinkley v. Calif. State Univ.*, 2022 WL 16627781, at *10 (Cal. Ct. App. Nov. 2) (finding no Unruh liability because "[w]e are not faced with a situation where [the state university] is acting in a commercial or quasi-commercial capacity towards a member of the general public").

The complaint plausibly alleges that Geffen, "when it discriminates" by denying admission to applicants based on race, is "'engag[ing] in behavior involving sufficient businesslike attributes.'" *Brennon B.*, 13 Cal. 5th at 679, 681; *Kohn*, 2024 WL 4533446,

at *2. In admissions, Geffen is acting to "protect and enhance the [school's] economic value." *O'Connor*, 33 Cal. 3d at 796; *see* Am.-Compl. ¶172, ¶26. It conducts the same marketing and "advertising" as a commercial entity. *Burks v. Poppy Const. Co.*, 57 Cal. 2d 463, 468 (1962); *see* Am.-Compl. ¶172. And it broadly solicits applications from the "public," receiving over 11,000 per year. *Stevens v. Optimum Health Inst.*, 810 F. Supp. 2d 1074, 1088 (S.D. Cal. 2011); *Isbister v. Boys' Club of Santa Cruz*, 40 Cal. 3d 72, 81 (1985); *Warfield*, 10 Cal. 4th at 622; *see* Am.-Compl. ¶26, ¶¶172-73. It also collects substantial "revenue" by charging applicants many "fees." *Warfield*, 10 Cal. 4th at 621; *see* Am.-Compl. ¶33, ¶37, ¶40. Some fees are collected first through AAMC, a private organization that Geffen has joined. Am.-Compl. ¶¶32-33, ¶¶36-37. Just recently, AAMC was sued for running an illegal monopoly where it "collects more than $50 million" in primary-application fees, "untethered to AAMC's actual costs," and sends the "kickback money to member medical schools" like Geffen. *Durbal v. AAMC*, Doc. 1 ¶4, ¶8, No. 1:25-cv-2537 (D.D.C. Aug. 4, 2025). The core decision Geffen makes during admissions, moreover, is commercial: whether to offer a "contract" for "services" that requires individuals to pay hundreds of thousands of dollars in tuition. *Gratz*, 539 U.S. at 276 n.23; Am.-Compl. ¶172; *see Sherman v. Regents of Univ. of Calif.*, 2022 WL 1137090, at *15 (N.D. Cal. Apr. 18) ("that the University charges tuition for its educational services distinguishes it from the public school district in *Brennon B*").

Nothing in the complaint supports the notion that Geffen's race-based denials of admission are exercises of its "core educational capacity." *Brennon B.*, 13 Cal. 5th at 681; *cf.* MTD 26. The complaint alleges the opposite. In admissions, Geffen is not "engaged in the provision of a free and public education to students," *Brennon B.*, 13 Cal. 5th at 681, or dealing with students at all. Applicants are strangers with no affiliation to Geffen; and rejected applicants are, by definition, not students at Geffen. Am.-Compl. ¶173. While Geffen's motion argues that the medical school is not a business establishment writ large, it makes no argument why *admissions* in particular is conduct

in its "'core educational capacity" rather than "'behavior involving sufficient business-like attributes.'" *Brennon B.*, 13 Cal. 5th at 681; *Kohn*, 2024 WL 4533446, at *2. Geffen should not get to make new arguments in its reply; and any arguments will not be supported by the four corners of the complaint. For similar reasons, federal courts often refuse to hold that a defendant is not a "business establishment" covered by Unruh at "the motion to dismiss stage," without the benefit of detailed briefing and a "factual record." *Stevens v. Optimum Health Inst.*, 2010 WL 1838252, at *5 (S.D. Cal. May 5); *accord Randall v. UNOS*, 720 F. Supp. 3d 864, 882 & n.12 (C.D. Cal. 2024).

## Conclusion

The motion to dismiss the amended complaint should be denied.

Dated: September 26, 2025                    Respectfully submitted,

                                             */s/ Cameron T. Norris*
**LAWFAIR LLC**                              **CONSOVOY MCCARTHY PLLC**
Adam K. Mortara (PHV)                        Thomas R. McCarthy (PHV)
40 Burton Hills Blvd., Suite 200             Cameron T. Norris (PHV)
Nashville, TN 37215                          cam@consovoymccarthy.com
(773) 750-7154                               Frank H. Chang (PHV)
                                             1600 Wilson Blvd., Suite 700
*Attorney for Students for Fair*             Arlington, VA 22209
*Admissions*                                 (703) 243-9423

**ALTVIEW LAW GROUP LLP**                    Patrick Strawbridge (PHV)
John M. Begakis (SBN 278681)                 Ten Post Office Square
john@altviewlawgroup.com                     8th Floor South PMB #706
9454 Wilshire Blvd., Suite 825               Boston, MA 02109
Beverly Hills, CA 90212                       (617) 227-0548
(310) 230-5580
                                             *Attorneys for Do No Harm, Students for Fair*
*Local Counsel*                              *Admissions, and Kelly Mahoney*

## Certificate of Compliance with L.R. 11-6.1 and
## Standing Order of Hon. John W. Holcomb

The undersigned, counsel of record for Plaintiffs, certifies that this brief contains 25 pages or fewer, which complies with the page limit set by the Court's Standing Order revised February 24, 2023.

*/s/ Cameron T. Norris*