**CONSOVOY MCCARTHY PLLC**
Thomas R. McCarthy (PHV)
Cameron T. Norris (PHV)
cam@consovoymccarthy.com
Frank H. Chang (PHV)
Marie Sayer (PHV)
1600 Wilson Blvd., Suite 700
Arlington, VA 22209
(703) 243-9423

Patrick Strawbridge (PHV)
Ten Post Office Square
8th Floor South PMB #706
Boston, MA 02109

**LAWFAIR LLC**
Adam K. Mortara (PHV)
40 Burton Hills Blvd., Suite 200
Nashville, TN 37215
(773) 750-7154

**ALTVIEW LAW GROUP LLP**
John M. Begakis (SBN 278681)
john@altviewlawgroup.com
9454 Wilshire Blvd., Suite 825
Beverly Hills, CA 90212
(310) 230-5580

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DO NO HARM et al.<br>*Plaintiffs*,<br>v.<br>REGENTS OF THE UNIVERSITY OF CALIFORNIA et al.,<br>*Defendants*. | Case No. 2:25-cv-4131-JWH-JDE<br><br>**Joint Rule 26(f) Report**<br><br>**Scheduling Conference: October 17, 2025** |

1

Per this Court's August 28 order (ECF No. 58), and following the conference of counsel required by Fed R. Civ. P. 16(b) and 26(f), the parties jointly submit this Rule 26(f) report. The following represent the parties' preliminary statements and positions, which the parties reserve the right to update as the case develops, including after Defendants' pending motion to dismiss (ECF No. 57) is resolved.

### 1. Statement of the Case:

<u>Plaintiffs' statement</u>: Plaintiffs allege that the David Geffen School of Medicine is considering race in admissions. They are suing various institutional and individual defendants for declaratory relief, injunctive relief, and damages under the Fourteenth Amendment (U.S. Const. amend. XIV, §1); Title VI (42 U.S.C. §2000d); the Civil Rights Act of 1866 (42 U.S.C. §1981); and the Unruh Civil Rights Act (Cal. Civ. Code §52). They also seek class certification.

<u>Defendants' statement</u>: As explained in Defendants' pending motion to dismiss (ECF No. 57), applications to the David Geffen School of Medicine at UCLA ("DGSOM") are—and always have been—reviewed on a holistic and race-neutral basis. Defendants therefore generally deny Plaintiff's allegations, deny any wrongdoing or that they are liable to Plaintiffs in any way, and deny that Plaintiffs (or the putative class they purport to represent) are entitled to any damages or injunctive relief.

### 2. Subject Matter Jurisdiction:

This Court has statutory jurisdiction under 28 U.S.C. §1331, §1343 & §1367(a). Defendants contend that neither associational plaintiff has standing to sue. Defendants also dispute Plaintiffs' standing with respect to certain remedies.

3. **Legal Issues:**

- Whether Plaintiffs have standing to sue.

- Whether Plaintiffs meet the requirements for class certification under the applicable Federal Rules of Civil Procedure.

- Whether Plaintiffs can establish a claim against Defendants Frenk, Block, and Lucero for violation of the Fourteenth Amendment's Equal Protection Clause.

- Whether Plaintiffs can establish a claim against Defendant the Regents for violation of Title VI.

- Whether Plaintiffs can establish a claim against Defendants Frenk, Block, and Lucero for violation of Section 1981.

- Whether Plaintiffs can establish a claim against Defendants Block and Lucero for violation of the Unruh Act.

- Whether Defendants are entitled to qualified immunity.

- Whether Plaintiffs are entitled to injunctive relief.

- Whether Plaintiffs are entitled to damages and, if so, what kinds and how much.

- Whether any party is entitled to recover attorneys' fees and/or costs.

4. **Parties, Evidence, etc.:** Plaintiffs are Do No Harm; Students for Fair Admissions; and Kelly Mahoney, individually and on behalf of others similarly situated. Defendants are Regents of the University of California, Julio Frenk, Gene Block, and Jennifer Lucero.

Plaintiffs' statement: Based on currently available information, Plaintiffs anticipate that the following individuals will be witnesses in this case:

    a. Regents of the University of California, Defendant.

3

    b. Gene Block, Defendant & former UCLA chancellor.

    c. Julio Frenk, Defendant & UCLA chancellor.

    d. Steven Dubinett, Dean, David Geffen School of Medicine at UCLA.

    e. Jennifer Lucero, Defendant & Associate Dean for Admissions, David Geffen School of Medicine at UCLA.

    f. Alisa Lopez, Executive Director of Admissions, David Geffen School of Medicine at UCLA.

    g. Travis McAllister, Admissions Operations & Data Manager, David Geffen School of Medicine at UCLA.

    h. Geovani Ibarra, Admissions Coordinator, David Geffen School of Medicine at UCLA.

    i. Cindy Chan, Admissions Engagement Coordinator, David Geffen School of Medicine at UCLA.

    j. Kathya Iraheta, Admissions and Outreach Assistant, David Geffen School of Medicine at UCLA.

    k. Past and present faculty members of the Admissions Committee, David Geffen School of Medicine at UCLA. Their identities are currently unknown to Plaintiffs.

    l. Past and present members of the Admissions Policy and Oversight Committee, David Geffen School of Medicine at UCLA. The current members include Alice Kuo, Russell Buhr, Manuel Celedon, Gary Holland, Carolyn Houser, Christine Myo Bui, Faysal Saab, and Gregory Payne.

    m. Association of American Medical Colleges.

    n. Kelly Mahoney, Plaintiff.

Plaintiffs anticipate that Defendants' documents, databases, notes, communications, and all other records relating to DGSOM's admissions policies, practices, and decisions will be relevant to the issues in this case. Plaintiffs contend that Defendants'

4

planned discovery into "the organizational structure and governance of Plaintiffs Do No Harm and SFFA" goes to a defense that the Supreme Court unanimously rejected in *SFFA v. Harvard*, 600 U.S. 181, 198-201 (2023); Plaintiffs thus reserve the right to seek all appropriate relief, including sanctions, if it receives any such requests.

<u>Defendants' statement</u>: Defendants contend that Plaintiffs' list of potentially relevant witnesses is premature, overbroad, and cumulative. Defendants may call the following witnesses: (i) representatives from DGSOM with knowledge about the claims and defenses at issue, if any; (ii) Plaintiff Kelly Mahoney and (iii) if Plaintiffs Do No Harm and SFFA are not dismissed from the case for lack of standing, the individual members of each organization as identified in Plaintiffs' First Amended Complaint as well as any representatives from Plaintiffs Do No Harm and SFFA with knowledge about the claims and defenses at issue. Defendants anticipate that the following categories of documents may be relevant: (i) documents describing the mission and goals of DGSOM; (ii) documents describing DGSOM's recruitment and outreach policies and procedures; (iii) documents describing DGSOM's admissions policies and procedures; (iv) data relating to applicants to and matriculated students at DGSOM; (v) documents sufficient to refute the allegations in the Complaint; (vi) documents sufficient to demonstrate that DGSOM's admissions policies, procedures, and practices comply with Title VI of the Civil Rights Act, 42 U.S.C. §§ 1981, 1983, and California's Unruh Civil Rights Act; (vii) documents relating to Plaintiff Mahoney's prior application(s) to DGSOM and her qualifications to apply for admission to DGSOM; and (viii) documents relating to the organizational structure and governance of Plaintiffs Do No Harm and SFFA; and (ix) documents relating to the members of Plaintiffs Do No Harm and

SFFA described in Plaintiffs First Amended Complaint, and the qualifications of those individuals to apply for admission to DGSOM.

**5.** **Damages:** Do No Harm and SFFA seek nominal damages and attorney's fees, costs, and expenses. Mahoney seeks compensatory, punitive, statutory, and nominal damages and attorney's fees, costs, and expenses—both individually and on behalf of others similarly situated. The following computations are provided based on information currently available to Plaintiffs.

- **Application fees**. Mahoney seeks, on behalf of herself and the proposed class, damages equivalent to a refund of the costs incurred while applying to DGSOM—including at least the fee paid to the Association of American Medical Colleges to submit a primary application to DGSOM ($175 for the first designated school and $46 subsequently designated schools); the fee paid to take the PREview Exam required by DGSOM ($100); and the fee paid to submit a secondary application to DGSOM ($95).

- **Compensatory damages**. Mahoney seeks, on her own behalf only, compensatory damages based on her inability to attend DGSOM based on race in an amount to be proven at trial.

- **Statutory damages**. Mahoney seeks, on behalf of herself and the proposed class, statutory damages under the Unruh Act of not less than $4,000 for "each and every offense." Cal. Civ. Code 52(a).

- **Punitive damages**. Mahoney seeks, on behalf of herself and the proposed class, punitive damages in an amount to be proven at trial.

Defendants state that they are not liable for any of Plaintiffs' claims, and therefore Plaintiffs will not be entitled to any measure of damages. Even if Defendants are found to be liable on any of Plaintiffs' claims, Plaintiffs are not entitled to any damages because they have not suffered any compensable monetary losses as a result of Defendants' conduct. For the reasons explained in Defendants' pending motion to dismiss (ECF

6

No. 57), punitive damages are unavailable as a matter of law. Defendants do not claim any monetary damages in this case apart from the recovery of their reasonable attorneys' fees and costs.

**6.  Insurance:**

Plaintiffs state that there are no insurance agreements under which an insurance business may be liable to satisfy all or part of a possible judgment against Plaintiffs in this action. Defendants are investigating whether an insurance business may be liable to satisfy all or part of the possible judgment in this action or to indemnify or reimburse for payments made to satisfy any such judgment and will make available for inspection the relevant parts of any insurance agreement meeting such conditions, as appropriate, following the entry of a mutually agreeable protective order.

**7.  Motions:**

<u>Plaintiffs' statement</u>: Mahoney plans to move for class certification after the close of expert discovery. Plaintiffs reserve the right to file amended or supplemental complaints to add other class representatives, as well as other appropriate amendments.

<u>Defendants' statement</u>: Defendants do not currently anticipate filing motions seeking to add parties or claims. As explained in Defendants' pending motion to dismiss (ECF No. 57), the class allegations are facially deficient and should be stricken. If such allegations survive the pleading stage at all, Defendants believe the deadline for Plaintiff Mahoney to move for class certification should be well in advance of the close of discovery. Defendants also may file a motion to decertify any class that is certified in this case.

**8.  Manual for Complex Litigation:** Plaintiff believes that, depending on the case's progression, the relevant portions of the Manual concerning class actions (Section 21) could become useful.  Defendants do not believe that the procedures of the Manual for Complex Litigation should be used in this case.

**9.  Status of Discovery:** The parties plan to submit a stipulated protective order and ESI protocol for this Court's approval. Plaintiffs believe that at least some discovery should begin before the Court rules on Defendants' partial motion to dismiss because, even in the unlikely event that the motion were granted in full, the remainder of the case (Mahoney's claims and requests for declaratory, injunctive, and monetary relief) would require substantial discovery into DGSOM's admissions practices and policies. Defendants believe that discovery—including the exchange of initial disclosures—should not commence until Defendants' pending motion to dismiss (ECF No. 57) is resolved, since the resolution of such motion will necessarily affect (and may narrow substantially) the scope of discovery.  This dispute notwithstanding, the parties will exchange initial disclosures no later than October 6, 2025, recognizing, however, that the Court's resolution of the motion to dismiss could require the parties to amend those disclosures.

**10.  Discovery Plan:**

<u>Plaintiffs' statement</u>: Plaintiffs will seek discovery into DGSOM's admissions practices and policies; information regarding its applicants, admits, and matriculants; and any related communications by Defendants and DGSOM's admissions personnel.

Plaintiffs plan to depose Defendants and DGSOM's admissions personnel regarding DGSOM's admissions policies and practices. Plaintiffs also plan to seek

8

discovery to support class certification. Plaintiffs also plan to seek third-party discovery from the Association of American Medical Colleges.

Plaintiffs do not believe that a phased discovery that bifurcates class discovery and merits discovery would be appropriate or efficient. Class discovery will necessarily and substantially overlap with merits discovery as both will seek evidence regarding DGSOM's admissions practices and policies.

Plaintiffs believe that the nature of this case requires altering the presumptive limitations to discovery contemplated by the Federal Rules of Civil Procedure. Each year, DGSOM accepts between 11,000 and 14,000 applications. DGSOM's admissions office has at least six employees. *See* Geffen, *MD Admissions Staff*, perma.cc/MLT9-J3H7. DGSOM's admissions committee—which reviews applicants, conducts interviews, deliberates on applicants, and makes admissions decisions—has approximately 20-30 faculty members in a given year. Am. Comp. ¶30. And DGSOM's admissions policy and oversight committee has seven voting members. *See* Geffen, *Admissions Policy and Oversight Committee*, perma.cc/SYZ7-LL47. Plaintiffs currently estimate that they will need at least 30 depositions to uncover relevant evidence about DGSOM's admissions process, practices, and personnel. Plaintiffs reserve the right to seek additional depositions and other discovery.

Defendants' statement: As noted above, Defendants' position is that no discovery should commence until after the decision on the motion to dismiss. Otherwise, Defendants state that Plaintiffs' proposed discovery plan is premature, substantially overbroad, and cumulative, including and in particular Plaintiffs' position that 30 depositions are needed, three times the default limitation set by the federal rules.

9

Defendants believe the default limitations on discovery defined by the Federal Rules of Civil Procedure should apply here—including and in particular the 10-deposition limit provided for by Rule 30(a)(2)(A)(i). Defendants are willing to meet and confer with Plaintiffs in good faith once the motion to dismiss is resolved, the parties have revised their initial disclosures as appropriate, and the parties are in a position to evaluate the contours of discovery and whether adjustments to the default limitations are appropriate. But it is premature to do so at this early stage of the litigation, in particular to the degree Plaintiffs are suggesting.

While Defendants do not believe discovery needs to be formally phased or bifurcated, Defendants' position is that class certification should be resolved early in the case, as whether the case will proceed as a class action will necessarily impact, among other things, the scope of merits discovery and the availability of monetary damages.

**11.** **Discovery Cut-Off:** The parties propose a discovery cut-off date of January 15, 2027, including expert discovery and the resolution of all discovery motions.

**12.** **Expert Discovery:** The parties propose an initial expert disclosure deadline of October 16, 2026, and a rebuttal expert disclosure deadline of December 18, 2026.

**13.** **Dispositive Motions:**

Plaintiffs' statement: Plaintiffs believe the issue of standing could be decided before trial on a motion for partial summary judgment. *See, e.g.*, *SFFA v. U.S. Naval Acad.*, 2024 WL 4057002 (D. Md. Sept. 5) (granting partial summary judgment on associational standing prior to bench trial). Plaintiffs also reserve the right to move for summary

10

judgment on Defendants' liability under the Equal Protection Clause, Title VI, §1981, and the Unruh Civil Rights Act.

Defendants' statement: For the reasons stated in their pending motion to dismiss (ECF No. 57), Defendants contend that Plaintiffs Do No Harm and SFFA have not sufficiently alleged associational standing and their claims should therefore be dismissed. Defendants reserve the right to move for summary judgment after discovery on any claims that survive the pleading stage.

**14. Settlement/Alternative Dispute Resolution (ADR):** The parties have not discussed settlement. To the extent the parties engage in settlement discussions, they propose mediation by a private mediator.

**15. Trial Estimate:**

Plaintiffs' statement: Plaintiffs have demanded a jury trial on all issues so triable. Based on current information, Plaintiffs estimate the jury trial to take approximately 15 days, plus one day for jury selection. By way of comparison, the trials in other cases involving race-based admissions—which were bench trials, were not class actions, and sought only injunctive relief—took 8 to 15 days. *See SFFA v. Harvard*, No. 14-cv-14176 (D. Mass) (15 days); *SFFA v. U.S. Naval Acad.*, No. 23-cv-2699 (D. Md.) (9 days); *SFFA v. UNC*, No. 14-cv-954 (M.D.N.C.) (8 days). The liability-phase of the class-action trial in *Grutter v. Bollinger* was 15 days. *See* 137 F. Supp. 2d 821, 823-24 (E.D. Mich. 2001). Plaintiffs currently do not have an estimate as to the number of witnesses they might call. By way of comparison, SFFA's witness list in *Harvard* included 22 fact witnesses and 3 experts. *See SFFA v. Harvard*, No. 14-cv-14176 (D. Mass) (Doc. 570-1).

Defendants' statement: As noted above, Defendants contend that Plaintiffs' list of potentially relevant witnesses is overbroad and cumulative. Defendants reserve an estimate on the number of necessary trial days until the resolution of the motion to dismiss, which, as noted, may substantially narrow the scope of the case. If the motion to dismiss is denied in its entirety, Defendants presently estimate the trial to require no more than 10 court days.

**16.    Trial Counsel:**

For Plaintiffs, Patrick Strawbridge and Adam Mortara will be co-lead trial counsel. For Defendants, Felicia Ellsworth and Debo Adegbile will be co-lead trial counsel.

**17.    Independent Expert or Master:** The parties do not currently believe that the Court should or would need to appoint an independent master or scientific expert.

**18.    Timetable:** The parties attach the schedule of pretrial and trial dates worksheet to this joint Rule 26(f) report as Exhibit A. In addition to the dates listed in Exhibit A, the parties agree that the deadline for Plaintiffs to submit their motion for class certification should be set 90 days before the close of discovery.

**19.    Amending Pleadings and Adding Parties:**

Plaintiffs' statement: Plaintiffs anticipate that amended or supplemental complaint(s) may become necessary to add allegations about other class representatives or otherwise. Plaintiffs will either seek Defendants' stipulation or this Court's leave if such amendments become appropriate. Plaintiffs also reserve the right to add additional defendants.

Defendants' statement: Defendants have not yet filed an answer and will do so when and if they are required to under the Federal Rules of Civil Procedure. Defendants do not anticipate adding parties at this time. Defendants disagree that there is a basis for Plaintiffs to amend or supplement the First Amended Complaint.

**20.     Other Issues:** The parties in this action agree to coordinate with the plaintiffs in *Students Against Racial Discrimination v. Regents of the University of California*, Case No. 25-cv-00192 (C.D. Cal.), to avoid duplicative discovery into DGSOM.

**21.     Consent to Proceed Before Magistrate Judge:** The parties do not consent to proceed before a magistrate judge.

| | | |
|---|---|---|
|1| Dated: September 30, 2025 | Respectfully submitted, |

/s/ *Felicia H. Ellsworth*  
**WILMER CUTLER PICKERING HALE AND DORR LLP**  
Felicia H. Ellsworth (*pro hac vice*)  
felicia.ellsworth@wilmerhale.com  
60 State Street  
Boston, MA 02109  
(617) 526-6000  

Debo Adegbile (*pro hac vice*)  
debo.adegbile@wilmerhale.com  
7 World Trade Center  
250 Greenwich Street  
New York, NY 10007  
(212) 295-8800  

Joshua A. Vittor (SBN 326221)  
joshua.vittor@wilmerhale.com  
350 South Grand Avenue  
Suite 2400  
Los Angeles, CA 90071  
(213) 443-5300  

*Attorneys for Defendants the Regents of the University of California, Julio Frenk, Gene Block, and Jennifer Lucero*

/s/ *Cameron T. Norris*  
**CONSOVOY MCCARTHY PLLC**  
Thomas R. McCarthy (PHV)  
Cameron T. Norris (PHV)  
cam@consovoymccarthy.com  
Frank H. Chang (PHV)  
Marie Sayer (PHV)  
1600 Wilson Blvd., Suite 700  
Arlington, VA 22209  
(703) 243-9423  

Patrick Strawbridge (PHV)  
Ten Post Office Square  
8th Floor South PMB #706  
Boston, MA 02109  
(6170 227-0548  

*Attorneys for Do No Harm, Students for Fair Admissions, and Kelly Mahoney*

**LAWFAIR LLC**  
Adam K. Mortara (PHV)  
40 Burton Hills Blvd., Suite 200  
Nashville, TN 37215  
(773) 750-7154  

*Attorney for Students for Fair Admissions*

**ALTVIEW LAW GROUP LLP**  
John M. Begakis (SBN 278681)  
john@altviewlawgroup.com  
9454 Wilshire Blvd., Suite 825  
Beverly Hills, CA 90212  
(310) 230-5580  

*Local Counsel for Plaintiffs*

14

**ATTESTATION**

Per Local Rule 5-4.3.4(a)(2)(i), I certify that all other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

                                          */s/ Cameron T. Norris*
                                          **CONSOVOY MCCARTHY PLLC**
                                          Cameron T. Norris (PHV)
                                          cam@consovoymccarthy.com
                                          1600 Wilson Blvd., Suite 700
                                          Arlington, VA 22209
                                          (703) 243-9423

# EXHIBIT A: SCHEDULE OF PRETRIAL AND TRIAL DATES WORKSHEET

| | | | |
|---|---|---|---|
| **Case No.:** | 2:25-CV-04131-JWH-JDE | | |
| **Case Name:** | Do No Harm et al. v. Regents of the Univ. of Cal. et al. | | |
| Event | Plaintiff's Request month/day/year | Defendant's Request month/day/year | Court's Order |
| ☑ Jury Trial *or* ☐ Bench Trial **(Monday at 9:00 a.m.)** Length: ___ days | 06/28/2027  15 days | 06/28/2027  10 days | |
| Final Pretrial Conference [L.R. 16] **(Friday–17 days before trial date)** | 06/11/2027 | 06/11/2027 | |
| Hearing on Motions *in Limine* **(Friday–7 days before Final PTC)** | 06/04/2027 | 06/04/2027 | |
| Last Date to Hear Non-Discovery Motions | 04/16/2027 | 04/16/2027 | |
| Last Date to Conduct Settlement Conference | 06/04/2027 | 06/04/2027 | |
| All Discovery Cut-Off (including hearing all discovery motions) | 01/15/2027 | 01/15/2027 | |
| Expert Disclosure (Rebuttal) | 12/18/2026 | 12/18/2026 | |
| Expert Disclosure (Initial) | 10/16/2026 | 10/16/2026 | |

ADR [L.R. 16-15] Settlement Choice:

☐   Attorney Settlement Officer Panel

☑   Private Mediation

☐   Magistrate Judge