WILMER CUTLER PICKERING
HALE AND DORR LLP
Debo Adegbile (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800
debo.adegbile@wilmerhale.com

Felicia H. Ellsworth (admitted *pro hac vice*)
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
felicia.ellsworth@wilmerhale.com

Joshua A. Vittor (CA Bar No. 326221)
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300
joshua.vittor@wilmerhale.com

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DO NO HARM, et al.,<br><br>*Plaintiffs*,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,<br><br>*Defendants*. | Case No. 2:25-cv-04131-JWH-JDE<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS [ECF NO. 57]**<br><br>Date: October 28, 2025<br>Time: 9:00 a.m.<br>Place: Courtroom 9D<br>Judge: Hon. John W. Holcomb |

# TABLE OF CONTENTS

Page


ARGUMENT ........ 6

I. THE ASSOCIATIONAL PLAINTIFFS CANNOT DEMONSTRATE STANDING ........ 6

A. Do No Harm's And SFFA's Members Cannot Sue In Their Own Right ........ 6

B. Mahoney's Standing Does Not Supply Standing To The Organizational Plaintiffs ........ 8

II. THE INDIVIDUAL DEFENDANTS ENJOY IMMUNITY ........ 8

A. Sovereign Immunity Bars All Claims Against Chancellor Frenk ........ 9

B. The Claims Against Chancellor Block Must Be Dismissed Because They Fail To Allege Personal Or Intentional Discrimination ........ 10

C. Former Chancellor Block And Associate Dean Lucero Are Entitled To Qualified Immunity ........ 11

III. FORMER CHANCELLOR BLOCK AND ASSOCIATE DEAN LUCERO ARE NOT LIABLE UNDER THE UNRUH ACT ........ 12

A. No Defendant Is A "Business Establishment" ........ 12

B. Section 820.2 Provides Immunity From Suit ........ 14

IV. CERTAIN OF PLAINTIFFS' REQUESTED RELIEF MUST BE DISMISSED ........ 15

A. Plaintiffs Cannot Obtain An Injunction Broadly Lifting The School's Limitations On Transfers And Multiple Applications ........ 15

B. Plaintiffs Have Not Plausibly Alleged Conduct Sufficient To Warrant Punitive Damages ........ 16

V. PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN BECAUSE IT IS OBVIOUS THAT CLASSWIDE RELIEF IS NOT AVAILABLE ........ 17

CONCLUSION ........ 17

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Am. W. Door & Trim v. Arch Specialty Ins. Co.*, 2015 WL 1266787 (C.D. Cal. Mar. 18, 2015)....17

*Amin v. Quad/Graphics, Inc.*, 929 F. Supp. 73 (N.D.N.Y. 1996)....10

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009)....7

*Ass'n for Information Media and Equipment v. Regents of the Univ. of Cal.*, 2012 WL 7683452 (C.D. Cal. Nov. 20, 2012)....9

*Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869 (9th Cir. 1995)....7

*Brust v. Regents of Univ. of Cal.*, 2007 WL 4365521 (E.D. Cal. Dec. 12, 2007)....14

*C.N. v. Wolf*, 2006 WL 8434249 (C.D. Cal. Nov. 1, 2006)....14

*Christian Legal Soc'y Chapter of Univ. of Cal. v. Kane*, 2005 WL 850864 (N.D. Cal. Apr. 12, 2005)....9

*Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128 (9th Cir. 2012)....9

*Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156 (N.D. Cal. 2021)....15

*Do No Harm v. Gianforte*, 2025 WL 756742 (D. Mont. Jan. 10, 2025)....6

*Frazier v. City of Fresno*, 2023 WL 4108322 (E.D. Cal. June 21, 2023)....13

*Grimberg v. United Airlines, Inc.*, 2023 WL 2628708 (C.D. Cal. Jan. 10, 2023)....16, 17

*Grutter v. Bollinger*,
539 U.S. 306 (2003)....................12

*Gurrola v. Jervis*,
2009 WL 9548218 (C.D. Cal. Apr. 2, 2009)....................10

*Haltigan v. Drake*,
2024 WL 150729 (N.D. Cal. Jan. 12, 2024)....................7

*Hunt v. Wash. State Apple Advert. Comm'n*,
432 U.S. 333 (1977)....................6

*Kolstad v. Am. Dental Ass'n*,
527 U.S. 526 (1999)....................16

*Koons v. Platkin*,
673 F. Supp. 3d 515 (D.N.J. 2023)....................7

*Loffman v. Cal. Dep't of Educ.*,
119 F.4th 1147 (9th Cir. 2024)....................6, 16

*Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*,
567 F.3d 521 (9th Cir. 2009)....................8

*NetChoice, LLC v. Bonta*,
2025 WL 2600007 (9th Cir. Sept. 9, 2025)....................8

*Pearson v. Callahan*,
555 U.S. 223 (2009)....................12

*R. W. v. Columbia Basin Coll.*,
77 F.4th 1214 (9th Cir. 2023)....................9

*Radke v. Univ. Of Illinois at Urbana-Champaign*,
263 F.R.D. 498 (N.D. Ill. 2009)....................17

*Sherman v. Regents of Univ. of California*,
2022 WL 1137090 (N.D. Cal, Apr. 18, 2022)....................13, 14

*Silverbrand v. Woodford*,
2010 WL 3635780 (C.D. Cal. Aug. 18, 2010)....................10

*Smith v. Wade*,
461 U.S. 30 (1983)....................16

*Spokeo v. Robins*,
578 U.S. 330 (2016) ........ 6

*Starr v. Baca*,
652 F.3d 1202 (9th Cir. 2011) ........ 10, 11

*Stormans, Inc. v. Selecky*,
586 F.3d 1109 (9th Cir. 2009) ........ 16

*Trump v. CASA, Inc.*,
606 U.S. 831 (2025) ........ 16

*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*,
429 U.S. 252 (1977) ........ 7

*We Are Am./Somos Am., Coal. of Arizona v. Maricopa Cnty. Bd. of Supervisors*,
809 F. Supp. 2d 1084 (D. Ariz. 2011) ........ 8

*District of Columbia v. Wesby*,
583 U.S. 48 (2018) ........ 12

**State Cases**

*Brennon B. v. Superior Ct.*,
513 P.3d 971 (Cal. 2022) ........ 13

*Caldwell v. Montoya*,
897 P.2d 1320 (1995) ........ 14, 15

*Curran v. Mount Diablo Council of the Boy Scouts*,
952 P.2d 218 (Cal. 1998) ........ 13

**State Statutes**

Unruh Act ........ 12, 13, 14

Cal. Gov't Code § 820.2 ........ 14, 15

Plaintiffs ask the Court to allow this case to proceed to discovery without evaluating whether plaintiffs with standing have plausibly alleged that suable defendants have violated the law. Their request is not grounded in the pleading rules. Accordingly, as Plaintiffs' Amended Complaint suffers from many of the same defects as the original one, the motion to dismiss should be granted.

## ARGUMENT

### I. THE ASSOCIATIONAL PLAINTIFFS CANNOT DEMONSTRATE STANDING

Neither Do No Harm nor SFFA has shown its members have standing to sue in their own right, *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333 (1977), because neither of the organization's identified members is "able and ready" to apply for admissions at UCLA's David Geffen School of Medicine ("the School of Medicine" or "the School"), *Loffman v. Cal. Dep't of Educ.*, 119 F.4th 1147, 1159, 1160-1162 (9th Cir. 2024). Plaintiffs cannot salvage this lack of associational standing by relying on Mahoney's standing, which is irrelevant to the organizations' standing.

#### A. Do No Harm's And SFFA's Members Cannot Sue In Their Own Right

The Amended Complaint does not sufficiently plead that any member is "able and ready" to seek admission at the School of Medicine. Indeed, the only allegations about individual members in the Amended Complaint reveal those individuals are presently unable to apply.[1] *See Do No Harm v. Gianforte*, 2025 WL 756742, at *7 (D. Mont. Jan. 10, 2025), *report & recommendation adopted*, 2025 WL 399753 (D. Mont. Feb. 5, 2025). Member A—the only Do No Harm member identified in the Amended Complaint—is unable to apply to the School

[1] Do No Harm's suggestion that it may have other members who are able and ready to apply besides DNH Member A (*see* Opp. 17) cannot supply standing, as the Amended Complaint contains no such allegations. *See Spokeo v. Robins*, 578 U.S. 330, 338 (2016) ("[A]t the pleading stage, the plaintiff must 'clearly ... allege facts demonstrating' each element of standing.").

because he is currently attending another medical school, and the School does not accept transfer students. Am. Compl. ¶¶ 29, 94. Plaintiffs argue that "Member A could 'reapply' as a first year," Opp. 16—but they did not allege he was able and ready to do so in their Amended Complaint. Even if they had done so, an allegation that a student would abandon his current medical school studies, reapply to the School, and re-do his whole first year of studies is implausible.[2] *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Only a complaint that states a plausible claim for relief survives a motion to dismiss.").

As for SFFA, Plaintiffs point to the allegations that Member 1 is "[m]ore than ready," that she "*will* apply," and that "[a]ttending Geffen is her 'dream'" to support standing. Opp. 18 (citing Am. Compl. ¶ 101). But these are conclusory and speculative allegations that provide no indication that Member 1 has anything more than a hypothetical interest in applying. *See Haltigan v. Drake*, 2024 WL 150729, *4-5 (N.D. Cal. Jan. 12, 2024) (allegation that plaintiff "desire[d]" a position at defendant university was insufficient to demonstrate ability and readiness). The cases Plaintiffs cite for a relaxed imminence standard are inapposite—the plaintiffs in those cases had the full set of qualifications needed to apply (*Bras v. California Pub. Utilities Comm'n*, 59 F.3d 869, 874 (9th Cir. 1995)), had "detailed and specific" plans so redressability was not too speculative (*Vill. of Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 261-262 (1977)), or had demonstrated "real interest" by enrolling in the last qualification course needed to apply (*Koons v. Platkin*, 673 F. Supp. 3d 515, 559 (D.N.J. 2023)).

---

[2] Plaintiffs' argument that Member A could apply as a transfer if "this Court enjoin[ed] Geffen from applying its no-transfers policy" is equally unavailing because Plaintiffs are not entitled to that relief. *See* Mem. 28; *infra* 15-16.

### B. Mahoney's Standing Does Not Supply Standing To The Organizational Plaintiffs

Plaintiffs overstate the law in pronouncing that one party with standing is sufficient for a lawsuit to proceed as to *all* parties. First, the general proposition that a court need not address each plaintiff's standing has been applied in cases seeking injunctive relief—but not in cases involving damages that require more individualized inquiry, such as the compensatory and punitive damages that Plaintiffs purport to seek here.[3] *See Nat'l Ass'n of Optometrists & Opticians LensCrafters, Inc. v. Brown*, 567 F.3d 521, 523 (9th Cir. 2009) (describing rule as applicable to "injunctive case[s]"); *see generally NetChoice, LLC v. Bonta*, 2025 WL 2600007, at *6-7 (9th Cir. Sept. 9, 2025) (affirming finding of no associational standing where the "claim asserted" and the "relief requested" depended on individualized analyses for each member). Second, courts have discretion to evaluate standing as to each plaintiff if such analysis is warranted. *See, e.g.*, *We Are Am./Somos Am., Coal. of Arizona v. Maricopa Cnty. Bd. of Supervisors*, 809 F. Supp. 2d 1084, 1091-1092 (D. Ariz. 2011) (assessing standing for each associational plaintiff and dismissing one). Do No Harm and SFFA should not be permitted to "piggyback" off the lone individual plaintiff's standing.

## II. THE INDIVIDUAL DEFENDANTS ENJOY IMMUNITY

Plaintiffs initially named 40 defendants. Dkt. 1. Plaintiffs then voluntarily dismissed 37 defendants by stipulation. Dkt. 27. That stipulation nowhere "promise[s] that the remaining defendants were sufficient," or that Defendants agreed to "waive[] [Chancellor] Frenk's sovereign-immunity defense." Opp. 29-30. Just the opposite—the stipulation explicitly provides that "Defendants ***do not***

---

[3] Plaintiffs insinuate that Do No Harm should be allowed to proceed because at least nominal damages are available to associations or their members, including DNH-Member A. Opp. 16. But Plaintiffs do not and cannot argue that either Do No Harm or SFFA are able to seek *other* types of damages on behalf of their members, including compensatory and punitive damages. *See* Mem. 12 n.4.

***waive*** any defenses or objections in this action by agreeing to this stipulation." Dkt. 27 at 3 (emphasis added). Plaintiffs cannot parlay the stipulated dismissal of defendants they improperly named into an exemption from the pleading requirements as to the remaining defendants.

**A. Sovereign Immunity Bars All Claims Against Chancellor Frenk**

Plaintiffs' Opposition appears to concede that Chancellor Frenk can only be sued in his official capacity and that claims for damages against him are barred by sovereign immunity under the Eleventh Amendment. Plaintiffs argue, rather, that he can be sued for forward-looking relief pursuant to the *Ex parte Young* exception to sovereign immunity. Opp. 29-30. But *Ex parte Young* does not apply. The Amended Complaint contains no allegations, let alone plausible ones, averring an "essential causal connection" between him and the alleged conduct, which is "necessary to invoke the *Ex parte Young* exception to sovereign immunity." *Ass'n for Information Media and Equipment v. Regents of the Univ. of Cal.*, 2012 WL 7683452, at *4 (C.D. Cal. Nov. 20, 2012) (dismissing claims against the UC President and UCLA Chancellor because "[s]imply overseeing or supervising the infringing activity is not enough").[4]

Plaintiffs' cited cases are inapposite. In those cases, the facts showed direct involvement in enforcing the relevant policy. *See, e.g.*, *R. W. v. Columbia Basin Coll.*, 77 F.4th 1214, 1227-1228 (9th Cir. 2023) (no immunity where dean was "directly involved with the alleged constitutional violation" because he issued the relevant no-trespass order against plaintiff and led the investigation into student's conduct); *Christian Legal Soc'y Chapter of Univ. of Cal. v. Kane*, 2005 WL 850864, at *9 (N.D. Cal. Apr. 12, 2005) (finding no immunity where Board of Directors had direct authority to amend the relevant policy). Plaintiffs' reliance on *Coalition to Defend Affirmative Action v. Brown*, 674 F.3d 1128, 1135-1136 (9th

[4] Whether the required causal connection exists is the question and not, as Plaintiffs suggest, the Chancellor's relative position in the "org chart." Opp. 30.

Cir. 2012), is similarly misplaced. There the Court found the "buck stop[ped]" with the UC President in enforcing state law. Here, Plaintiffs do not challenge the enforcement of state law, but rather the School's admissions policies and processes. And yet, they do not allege Chancellor Frenk had any involvement with those policies and processes, let alone the required causal connection. *Ex parte Young* therefore does not apply, and Chancellor Frenk enjoys immunity from this suit.

### B. The Claims Against Chancellor Block Must Be Dismissed Because They Fail To Allege Personal Or Intentional Discrimination

Plaintiffs have also failed to plead sufficient facts about Chancellor Block's personal participation in the alleged discriminatory conduct—let alone that he engaged in *intentional* discrimination—which is required for each of Plaintiffs' claims against a defendant in their individual capacity. *See* Mem. 18-19 (citing cases). Plaintiffs argue that Chancellor Block was a "supervisor" who can be held liable for Section 1983 claims arising from a "sufficient causal connection" to a subordinate's discriminatory conduct. Opp. 30-31. But Plaintiffs gravely misconstrue the law. The very cases Plaintiffs cite make plain that a supervisor can only be held vicariously liable under Section 1983 if they "breached a *duty* to plaintiff which was the proximate cause of the injury." *Starr v. Baca*, 652 F.3d 1202, 1207 (9th Cir. 2011) (emphasis added); *see also Silverbrand v. Woodford*, 2010 WL 3635780, at *6 (C.D. Cal. Aug. 18, 2010) ("Under § 1983, a supervisor is not liable on a theory of *respondeat superior*.").[5] The Amended Complaint falls woefully short of this threshold.

The bare allegation that former Chancellor Block "had the power" to fire or

---

[5] As Plaintiffs' cited authorities state, a similarly heightened standard for vicarious liability applies under Section 1981, *see Amin v. Quad/Graphics, Inc.*, 929 F. Supp. 73, 78 (N.D.N.Y. 1996), and the Unruh Act, *see Gurrola v. Jervis*, 2009 WL 9548218, at *8-9 (C.D. Cal. Apr. 2, 2009).

discipline Associate Dean Lucero (Am. Compl. ¶ 9) establishes neither that he had knowledge of nor supervisory responsibility over admissions.[6] That former Chancellor Block allegedly "announced no action or reform in response to the whistleblowers' revelations," *id.*, similarly fails to allege that he had a duty to investigate the whistleblowers' claims or that he was even aware of them. Plaintiffs therefore fail to plausibly allege that former Chancellor Block should be held vicariously liable for others' conduct.

Nor does the Amended Complaint sufficiently allege former Chancellor Block should be liable based on his own conduct. Plaintiffs' Opposition, like the Amended Complaint, rattles off a list of conclusory allegations containing Plaintiffs' suppositions that former Chancellor Block must have had knowledge about alleged consideration of race in admissions at the School of Medicine, that he must have "failed to use his power to remedy it," or that he must have been "culpably indifferent" to its use—all on account of his position as head of UCLA. Opp. 31-32. But such conclusory allegations are not enough. They fall far short of the personal conduct alleged in *Starr*, for example, where the plaintiff alleged that the sheriff defendant had personal knowledge about unconstitutional conditions and failed to act despite that knowledge. 652 F.3d at 1208.

### C. Former Chancellor Block And Associate Dean Lucero Are Entitled To Qualified Immunity

Plaintiffs suggest that the Court need not address qualified immunity because none of the damages claims in this case predate the June 2023 *Harvard* decision. Opp. 24. But the Amended Complaint is replete with allegations predating June 2023. *See, e.g.*, Am. Compl. ¶¶ 53-55; *id. at* ¶¶ 69-71, 73-75, 77-80. Defendants appreciate Plaintiff's concession that these allegations are

[6] Plaintiffs also state in their Opposition that Chancellor Block "hired Lucero knowing she supported the use of race," but no such allegation appears in the Amended Complaint. *Cf.* Am. Compl. ¶¶ 8-9, 22, 56-86.

irrelevant to their claims. In any event, Plaintiffs are wrong: qualified immunity is an immunity from *suit*, *Pearson v. Callahan*, 555 U.S. 223, 231 (2009), and former Chancellor Block and Associate Dean Lucero are immune from damages claims that arise from any alleged conduct before *Harvard*.

Plaintiffs also are wrong that qualified immunity does not bar damages for alleged pre-*Harvard* conduct. Opp. 25-26. They ignore the standard for defeating qualified immunity, which requires that "every reasonable official" would have understood the alleged conduct to be unlawful—*i.e.*, that the constitutionality of the conduct was "beyond debate." *District of Columbia v. Wesby*, 583 U.S. 48, 62-63 (2018) (citations omitted) (qualified immunity applies unless the alleged unlawfulness "was ***clearly*** established at the time") (emphasis added). The Amended Complaint does not plausibly allege former Chancellor Block engaged in any discriminatory conduct whatsoever, *see supra* 10-11, and its allegations regarding Associate Dean Lucero, even accepted as true, do not reflect conduct that "every reasonable official" would have agreed was unconstitutional pre-*Harvard*. Indeed, the Amended Complaint contains no non-conclusory allegations that Associate Dean Lucero used race as more than a "plus factor" to maintain a diverse student body. *Grutter v. Bollinger*, 539 U.S. 306, 334 (2003).[7]

## III. FORMER CHANCELLOR BLOCK AND ASSOCIATE DEAN LUCERO ARE NOT LIABLE UNDER THE UNRUH ACT

### A. No Defendant Is A "Business Establishment"

As a threshold matter, Plaintiffs' Unruh Act claims must be dismissed because the School of Medicine is not a "business establishment," and the alleged conduct in this case does not relate to any actions taken by former Chancellor

---

[7] By accepting the allegations of the Complaint as true for purposes of this motion, Defendants do not concede that race was considered in admissions at the School of Medicine in any way that would have been permissible under federal law prior to *Harvard*, but not permissible under California law.

Block or Associate Dean Lucero in the School's alleged "capacity as a business or commercial enterprise." Opp. 35. The cases relied upon by Plaintiffs only further underscore this point. Both *Nartey v. Regents of University of California*, and *Brinkley v. California State University, Northridge*, *rejected* Unruh Act claims against California public universities, citing the California Supreme Court's decision in *Brennon B. v. Superior Ct.*, 513 P.3d 971 (Cal. 2022). *See Nartey*, 2024 WL 566882, at *5-6 (Cal. Ct. App. Feb. 13, 2024) (dismissing Unruh Act claims against the Regents where claims arose from "UCLA's activity as an institution of public education"); *Brinkley*, 2022 WL 16627781, at *9-10 (Cal. Ct. App. Nov. 2, 2022) (rejecting Unruh Act claims where school tuition and incidental charges did not render state university a "business establishment"). Indeed, as the Court explained in *Brennon*, "the focus of the [Unruh] Act is the conduct of *private business establishments*," 513 P.3d at 978 (emphasis original), and a public school "engaged in the work of educating students" is not a private business establishment, nor the "functional equivalent" of one. *Id.* at 982.

Even if, despite the Unruh Act's "presumption against finding a government entity is acting in commerce," *Frazier v. City of Fresno*, 2023 WL 4108322, at *59 (E.D. Cal. June 21, 2023), the University of California or its employees could theoretically be liable under the Act for acts in the University's alleged "capacity as a business or commercial enterprise," Opp. 35, this is not that case. Plaintiffs' Unruh Act claims relate to medical school admissions, a "core educational capacity" closely related to the University's "work of educating students." *Brennon*, 513 P.3d at 982. The mere fact that the School charges an "application fee" or tuition, Am. Compl. ¶ 172, does not render the admissions process "commercial." *See Curran v. Mount Diablo Council of the Boy Scouts*, 952 P.2d 218, 223, 239 (Cal. 1998) (Unruh Act did not apply to Boy Scout's membership policies despite the fact that applicants paid a "fee" and members paid "annual dues"). And the unpublished decision in *Sherman v. Regents of Univ. of*

*California*, 2022 WL 1137090, at *15 n.6 (N.D. Cal, Apr. 18, 2022), decided before the California Supreme Court's decision in *Brennon*, is not a basis to hold otherwise, particularly in light of subsequent California Court of Appeals cases like *Nartey* and *Brinkley* that come to the opposite conclusion. Nor do any of Plaintiffs' other allegations—*e.g.*, that the School advertises to "compete against other elite medical schools," Am. Compl. ¶ 172—plausibly show that the "overall function" of the School's admissions process is "to protect and enhance ... economic value," *Brennon.*, 513 P.3d at 982, rather than to attract and admit the best students to contribute to a vibrant and enriching educational community.

**B. Section 820.2 Provides Immunity From Suit**

Contrary to Plaintiffs' assertions, Opp. 32-34, Section 820.2 immunity applies to "a discretionary act which otherwise violates the Unruh Act," *C.N. v. Wolf*, 2006 WL 8434249, at *11 (C.D. Cal. Nov. 1, 2006), and claims of Section 820.2 immunity may be resolved at the pleading stage, *see, e.g.*, *Brust v. Regents of Univ. of Cal.*, 2007 WL 4365521, at *2, *9 (E.D. Cal. Dec. 12, 2007); *Caldwell v. Montoya*, 897 P.2d 1320, 1331-1332 (1995). *Brust*, which Plaintiffs elected not to address in their Opposition, is dispositive. There, the court dismissed Unruh Act claims against individual University of California employees for alleged sex discrimination against female athletes after finding that a "fair reading" of the allegations revealed considered, discretionary policy decisions for which defendants were entitled to Section 820.2 immunity. 2007 WL 4365521, at *8-9. As in *Brust*, the allegations here are that Associate Dean Lucero and former Chancellor Block violated the Unruh Act by "causing Geffen to favor certain applicants and disfavor others because of their race," and by "wield[ing] significant influence over [the School's] admissions policies and practices." Am. Compl. ¶¶ 175, 7. The Amended Complaint thus accuses them of discrimination

stemming from "those basic policy and personnel decisions" for which they are squarely entitled to immunity under Section 820.2. *Caldwell*, 897 P.2d at 1331.[8]

## IV. Certain Of Plaintiffs' Requested Relief Must Be Dismissed

### A. Plaintiffs Cannot Obtain An Injunction Broadly Lifting The School's Limitations On Transfers And Multiple Applications

Plaintiffs request an order enjoining the School of Medicine's limitations on transfers and multiple applications on behalf of their proposed "injunctive subclass," Am. Compl. ¶ 116, but their opposition makes clear that Mahoney, the sole representative of that class, is not entitled to such relief. Indeed, Plaintiffs' argument in briefing that Mahoney "likely and imminently needs" this injunction, Opp. 21, flatly contradicts their Amended Complaint, which alleges Mahoney applied to the School once in 2023, plans to apply again "this year," and would possibly apply a third time in the future if she is rejected again. Am. Compl. ¶¶ 109, 113, 114. None of these hypothetical applications would be barred by the School's prohibition on more than three applications. *Id.* at ¶ 29. But rather than conceding the point, Plaintiffs argue different facts in their brief, claiming that Mahoney "just submitted her *third* application to Geffen." Opp. 21 (emphasis added). "It is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss." *Cork v. CC-Palo Alto, Inc.*, 534 F. Supp. 3d 1156, 1183 n.8 (N.D. Cal. 2021) (cleaned up and citation omitted).[9]

---

[8] The fact that the alleged use of race in admissions was otherwise prohibited under Proposition 209 does not alter that immunity. *See Caldwell*, 897 P.2d at 1331 (under Section 820.2, "such personal immunity applies even against liabilities imposed by prohibitory state statutes of general application" unless there is "a clear indication of legislative intent that immunity be withdrawn"); Mem. 25 n.12.

[9] Contrary to Plaintiffs' assertion, Opp. 21, the allegations regarding DNH Member A are not sufficient to save this requested relief from dismissal because Do No Harm lacks standing altogether, *see supra* 6-8, and the Amended Complaint does not put forth DNH Member A as a representative of the injunctive subclass seeking this relief. *See* Am. Compl. ¶ 114.

Additionally, Defendants do not challenge this Court's authority to craft an injunction offering "complete relief to the *plaintiffs before the court*," *Trump v. CASA, Inc.*, 606 U.S. 831, 852 (2025) (emphasis in original), but that is not the issue. Defendants seek dismissal of Plaintiffs' request for an order enjoining the School's limitations on transfers and multiple applications *generally*, Am. Compl. ¶ 116, untethered to their claims. "Injunctive relief must be tailored to remedy the specific harm alleged," and an "overbroad injunction is an abuse of discretion." *Stormans, Inc. v. Selecky*, 586 F.3d 1109, 1140 (9th Cir. 2009) (cleaned up and citation omitted). An injunction requiring the School to lift its transfer and reapplication restrictions would extend far "beyond the parties" in this case and would thus exceed the Court's equitable power. *CASA*, 606 U.S. at 843. It would also be improper, as the Amended Complaint does not allege that this policy is in any way "related to" any alleged consideration of race, and it is not a "discriminatory barrier" preventing Plaintiffs from applying to the School "on an equal basis." *Loffman*, 119 F.4th at 1159 n.6.

### B. Plaintiffs Have Not Plausibly Alleged Conduct Sufficient To Warrant Punitive Damages

Punitive damages are only available "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56 (1983). Plaintiffs acknowledge as much in their Amended Complaint (¶ 150). Yet in opposing this motion, Plaintiffs argue that "intentional discrimination *alone* justifies punitive[] [damages]," pointing primarily to inapposite employment discrimination cases. Opp. 23. This is not the law. *See Kolstad v. Am. Dental Ass'n*, 527 U.S. 526, 536 (1999) ("There will be circumstances where intentional discrimination does not give rise to punitive damages liability."). And in any event, the Amended Complaint does not plausibly allege former Chancellor Block engaged in intentional discrimination of any kind,

nor that he is vicariously liable for alleged discrimination by Associate Dean Lucero. *Supra* Sec. 10-11. Nor does it allege "specific facts," *Grimberg v. United Airlines, Inc.*, 2023 WL 2628708, at *3 (C.D. Cal. Jan. 10, 2023), showing evil motive or reckless or callous indifference, as would be required to maintain a claim for punitive damages against Associate Dean Lucero.

### V. PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN BECAUSE IT IS OBVIOUS THAT CLASSWIDE RELIEF IS NOT AVAILABLE

As Plaintiffs concede, Opp. 26, it is well-settled that courts have "the authority to strike class allegations that 'cannot possibly move forward on a classwide basis.'" *Am. W. Door & Trim v. Arch Specialty Ins. Co.*, 2015 WL 1266787, at *3, *7 (C.D. Cal. Mar. 18, 2015) (collecting cases) (citations omitted). Yet they overstate the law in claiming that motions to strike class allegations are "premature" before class certification has been briefed. Opp. 26. Plaintiffs' class allegations cannot move forward because individual issues predominate over allegedly common claims. Mem. 29. In cases involving university admissions, courts agree that any commonality shared by the putative class is predominated by individualized assessments in each applicant's case, since admissions decisions by their very nature "always legitimately involve[] subjective criteria." *Radke v. Univ. Of Illinois at Urbana-Champaign*, 263 F.R.D. 498, 499 (N.D. Ill. 2009). With respect to commonality and typicality, Plaintiffs' arguments fare no better given the breadth of the class alleged in the Amended Complaint—it is implausible on its face that all non-Black applicants denied admission to the School inherently share commonality and typicality.

## CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court grant Defendants' motion to dismiss.

DATED: October 3, 2025

Respectfully submitted,

/s/ *Felicia H. Ellsworth*
Felicia H. Ellsworth
(admitted *pro hac vice*)

**WILMER CUTLER PICKERING HALE AND DORR LLP**
Felicia H. Ellsworth (admitted *pro hac vice*)
60 State Street
Boston, MA 02109
Telephone: 617-526-6000
felicia.ellsworth@wilmerhale.com

Debo Adegbile (admitted *pro hac vice*)
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800
debo.adegbile@wilmerhale.com

Joshua A. Vittor (CA Bar No. 326221)
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300
joshua.vittor@wilmerhale.com

*Attorneys for Defendants the Regents of the University of California, Julio Frenk, Gene Block, and Jennifer Lucero*

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1 AND STANDING ORDER OF HON. JOHN W. HOLCOMB**

The undersigned, counsel of record for Defendants, certifies that this brief contains 12 pages or fewer, which complies with the page limit set by the Court's Standing Order revised February 24, 2023.

Dated: October 3, 2025

/s/ *Felicia H. Ellsworth*
Felicia H. Ellsworth