Alexander Haberbush, Esq.
Lex Rex Institute
444 West Ocean Boulevard, Suite 1403
Long Beach, CA 90802
Tel: (562) 200-2837
ahaberbush@lexrex.org

Jewel M. Lightfoot*
Public Interest Legal Foundation
107 S. West Street
Alexandria, VA 22314
Telephone: (703) 745-5870

**Pro hac vice application forthcoming*

Attorneys for *Amici Curiae*

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DO NO HARM, et al.,<br>*Plaintiffs*,<br>v.<br>DAVID GEFFEN SCHOOL OF MEDICINE AT UCLA, et al.,<br>*Defendants*. | Case No.: 2:25-cv-04131-JWH-JDE<br>Hon. John W. Holcomb<br>***AMICI CURIAE* BRIEF OF UNITED STATES COMMISSION ON CIVIL RIGHTS COMMISSIONERS J. CHRISTIAN ADAMS, PETER KIRSANOW, AND STEPHEN GILCHRIST IN SUPPORT OF PLAINTIFF-INTERVENOR'S MOTION TO INTERVENE** |

# TABLE OF CONTENTS

INTERESTS OF AMICI CURIAE....................1

SUMMARY OF ARGUMENT....................1

ARGUMENT....................2

I. "Holistic Review" allows UCLA to discriminate against individuals based on race, in violation of the Fourteenth Amendment....................2

II. Defendants have fostered a culture of discrimination....................3

III. UCLA's commitment to DEI ideology is an outgrowth of this culture of discrimination....................4

CONCLUSION....................5

# TABLE OF AUTHORITIES

***Cases***

*Frankel v. Regents of the Univ. of Cal.*, 744 F. Supp. 3d 1015 (C.D. Cal. 2024)........3

*Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181 (2023)........1, 5

***Other Authorities***

William Bradford Reynolds, *IN HONOR OF BROWN V. BOARD OF EDUCATION: Individualism vs. Group Rights: The Legacy of Brown*, 93 Yale L.J. 995 (1984)........1

U.S. House of Representatives, *Staff Report on Antisemitism*, U.S. Speaker of the House (Dec. 18, 2024), https://www.speaker.gov/wp-content/uploads/2024/12/House-Antisemitism-Report.pdf........3

The Task Force to Combat Antisemitism and Anti-Israeli Bias at UCLA, *Antisemitism and Anti-Israeli Bias at UCLA*, UCLA (Oct. 16, 2024), https://antisemitismreport.org/........4

## INTERESTS OF *AMICI CURIAE*

J. Christian Adams, Peter Kirsanow, and Stephen Gilchrist are Commissioners to the United States Commission on Civil Rights ("Commissioners"). They submit this *amici curiae* brief on their own behalf in support of the Proposed Intervenor's United States of America's motion to intervene.[1] The Commissioners are interested in fair and equal enforcement of civil rights laws and that no institution impermissibly discriminates in violation of federal civil rights laws.

In submitting this *amici curiae* brief, Commissioners support the United States government's intervention in this case and promote its interest in preventing racial discrimination by state governments, especially where indications of campus antisemitism abound. Because *amici* serve as Commissioners of the United States Commission on Civil Rights, with statutory responsibilities to investigate and report on civil rights compliance nationwide, they offer the Court an institutional perspective on the federal interest in ensuring that state actors do not evade constitutional and statutory prohibitions on discrimination.

## SUMMARY OF ARGUMENT

Civil rights under the Fourteenth Amendment are properly understood as protection of *individuals* against discrimination. William Bradford Reynolds, *IN HONOR OF BROWN V. BOARD OF EDUCATION: Individualism vs. Group Rights: The Legacy of Brown*, 93 Yale L.J. 995, 996 (1984). In *Students for Fair Admissions*, the Supreme Court held that current and prospective postsecondary education students must be treated based on their experiences as individuals, rather than their race or ethnicity. *See Students for Fair Admissions, Inc. v. President & Fellows of Harv. Coll.*, 600 U.S. 181, 231 (2023). In pursuing their radical Diversity, Equity, and Inclusion ("DEI") ideology, the Defendants have unfairly adjusted admissions standards based on race and ethnicity to the detriment of the individual applicant and

[1] *Amici* do not speak for the Commission and do not represent the Commission. They submit this brief in their personal capacity.

his or her qualifications. Instead of directly inquiring about an applicant's race, the David Geffen School of Medicine at UCLA ("Geffen") has adopted a "holistic review" approach which allows admissions officials to glean an applicant's race surreptitiously. This "holistic review" at Geffen is designed to advance a culture of discrimination at UCLA, which has only gotten worse in recent years. For example, UCLA was one of many universities which failed to address its campus' rampant antisemitism following Hamas' October 7, 2023 terrorist attack on Israel. In recent years, DEI programs such as those in place at UCLA have gone beyond helping historically disadvantaged groups and moved toward openly harming others, such as Jewish-Americans. UCLA's recent history of on-campus antisemitism evinces this shameful culture of discrimination, which is fundamentally opposed to American constitutional rights. Plaintiff-Intervenor's motion should be granted, as it has a vested interest in putting a stop to UCLA's role in maintaining this culture of discrimination.

## ARGUMENT

### I. "Holistic Review" allows UCLA to discriminate against individuals based on race, in violation of the Fourteenth Amendment.

Defendants have gotten around the modern prohibition on express affirmative action by implementing a "holistic review" program. Instead of simply asking for racial data from applicants, UCLA proffers carefully constructed questions during its application process which allows its admissions committee to glean the applicant's race. These educated guesses can later be confirmed in admissions interviews if necessary.

This process implicates the Fourteenth Amendment's prohibition against state agencies (such as the University of California) denying any person within their jurisdiction equal protection of the laws. Although Defendants do not employ an express racial classification, the Equal Protection Clause equally forbids admissions systems that use race as a motivating factor through proxies or individualized

inference, thereby triggering strict scrutiny where race meaningfully affects decision making.

Moreover, recent whistleblowers have revealed this program is an express policy implemented by Jennifer Lucero, in her capacity as Dean of Admissions. For all intents and purposes, "holistic review" is an official policy of discrimination. Even after these revelations, as outlined in Plaintiff Do No Harm's second amended complaint, UCLA refuses to end holistic review or fire Lucero.

Defendants' discriminatory admissions process against White and Asian applicants is a product of a broader culture of discrimination at UCLA. Fueled by political radicalism, UCLA has fostered an environment where discrimination is either ignored or institutionalized. The rise of antisemitism on UCLA's campus and the administration's failure to address it helps illustrate this culture.

**II. Defendants have fostered a culture of discrimination.**

Following the October 7th terrorist attacks on Israel and Israel's subsequent military response, pro-Palestinian protestors seized a sizable part of campus to establish a protest encampment. *Frankel v. Regents of the Univ. of Cal.*, 744 F. Supp. 3d 1015, 1021 (C.D. Cal. 2024). The protestors established Jewish exclusion checkpoints, required "passersby to wear a specific wristband to cross" and blocked people "who supported the existence of the state of Israel." *Id.* UCLA was aware of this mob takeover of the quad and discrimination against Jewish students, but it claimed it had "no responsibility to protect the religious freedom of its Jewish students" because it did not create the exclusion. *Id.* at 1020.

UCLA also ignored the university police's recommendation to at least identify and remove non-students from the encampment. U.S. House of Representatives, *Staff Report on Antisemitism* (Dec. 18, 2024), https://www.speaker.gov/wp-content/uploads/2024/12/House-Antisemitism-Report.pdf. UCLA only intervened "after an outbreak of mob violence" occurred in the encampment. Additionally, ninety-two of the ninety-six students arrested by

campus police were given resolution agreements allowing them to avoid discipline for the antisemitic checkpoints and harassment that occurred on campus.

"[Antisemitism] is becoming normalized at UCLA." The Task Force to Combat Antisemitism and Anti-Israeli Bias at UCLA, *Antisemitism and Anti-Israeli Bias at UCLA* 30, UCLA (Oct. 16, 2024), https://antisemitismreport.org/. UCLA's own Task Force to Combat Antisemitism and Anti-Israel Bias released a report documenting student and faculty concerns like this and the dire state of antisemitism on its campus. *Id.* The task force's survey of Jewish and Israeli community members at UCLA revealed that "three-quarters of respondents felt that antisemitism is taken less seriously than other forms of hate and discrimination at UCLA." *Id.* at 1. It also found that in the 2023-2024 academic year alone, 40% of respondents had faced antisemitic discrimination and there were over 100 reports of Jewish or Israeli individuals experiencing a physical attack or physical threat at UCLA. *Id.*

During this time, UCLA ranked in the top quartile of the "antisemitic hostility index" of college campuses. *Id.* at 10. UCLA's medical school was plagued by antisemitism and anti-Zionism as well. Professors failed to intervene when an invited speaker repeatedly instructed students to shout "Free, Free Palestine!" in their required "Structural Racism and Health Equity" class. *Id.* at 61. A UCLA staff member allegedly singled out students who refrained from this exercise. *Id.*

The same institutional tolerance for identity-based exclusion reflected in UCLA's response to antisemitic discrimination on campus corroborates Plaintiffs' allegation that UCLA's admissions regime likewise operates as an unlawful system of race-conscious preference rather than constitutionally neutral evaluation.

## III. UCLA's commitment to DEI ideology is an outgrowth of this culture of discrimination.

Considering UCLA's antisemitic campus culture, it should come as no surprise that the administration engages in discrimination of other forms. UCLA has embraced a radical DEI ideology. DEI is an amorphous concept that frequently

involves awarding preferences to certain "marginalized" identity groups (e.g. race, ethnicity) and penalizing "privileged" identity groups based on stereotypes and historic discrimination attributed to the groups rather than the individual.

The DEI ideology promotes racial discrimination in the name of correcting historic wrongs, discarding meritocracy in the process. Racial distinctions imposed by government actors like Defendants requires a showing that a "compelling governmental interest" exists and the use of race is "narrowly tailored" to achieve the interest. *Students for Fair Admissions, Inc.*, 600 U.S. at 206-07. Only the "most extraordinary case" can satisfy this standard. *Id.* at 208. Defendants' DEI admissions crusade fails, as it does not present a compelling governmental interest. It is not a remedy for specific instances of past unlawful discrimination, but instead an unlawful effort to award racial and ethnic preferences to remedy the effects of societal discrimination. *Id.* at 207, 226.

**CONCLUSION**

For the reasons given above, *Amici* respectfully urge that the Court grant Plaintiff-Intervenor's motion to intervene.

Respectfully submitted,

/s/ *Alexander Haberbush*
Alexander Haberbush, Esq.
Lex Rex Institute
444 West Ocean Boulevard, Suite 1403
Long Beach, CA 90802
Tel: (562) 200-2837
ahaberbush@gmail.com

Jewel M. Lightfoot*
Public Interest Legal Foundation
107 S. West Street
Alexandria, VA 22314
Telephone: (703) 745-5870

**Pro hac vice application forthcoming*

Attorneys for *Amici Curiae*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was served this day on all counsel via the court's electronic service system.

Respectfully submitted,

/s/ *Alexander Haberbush*