WILMER CUTLER PICKERING
HALE AND DORR LLP
Debo Adegbile
(admitted *pro hac vice*)
debo.adegbile@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800

Felicia H. Ellsworth
(admitted *pro hac vice*)
felicia.ellsworth@wilmerhale.com
Sharon K. Hogue
(*pro hac vice* pending)
sharon.hogue@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: 617-526-6000

Christopher T. Casamassima
(CA Bar No. 211280)
chris.casamassima@wilmerhale.com
Joshua A. Vittor
(CA Bar No. 326221)
joshua.vittor@wilmerhale.com
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300

*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DO NO HARM et al.<br><br>*Plaintiffs*,<br><br>and<br><br>THE UNITED STATES OF AMERICA<br><br>*Plaintiff-Intervenor*,<br><br>v.<br><br>THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.<br><br>*Defendants*. | Case No. 2:25-cv-04131-JWH-JDE<br><br>**DEFENDANT'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS PLAINTIFF-INTERVENOR'S AMENDED COMPLAINT-IN-INTERVENTION**<br><br>Date:　　　September 4, 2026<br>Time:　　　9:00 am<br>Place:　　　Courtroom 9D<br>Judge:　　　Hon. John W. Holcomb |

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ...................................................................................3

INTRODUCTION ..................................................................................................6

BACKGROUND ....................................................................................................7

    A.    The Government's Title VI Investigations Into DGSOM ...................7

    B.    The Government's Intervention in this Case ......................................8

    C.    The Government's Title VI Findings Letter ......................................8

    D.    The Amended Complaint-In-Intervention.........................................8

LEGAL STANDARD.............................................................................................9

ARGUMENT ........................................................................................................10

I.    The Government's Request For Termination And Clawback Of All DOJ Grants To UCLA Should Be Dismissed ........................................10

    A.    The Requested Relief Defies The Limits On Government Enforcement Of Title VI ...................................................................10

        1.    The Government seeks sweeping grant terminations without identifying any nexus to alleged Title VI violations ...11

        2.    The Government seeks retrospective remedies not available under Title VI ............................................................13

    B.    The Government Cannot Circumvent Title VI By Bringing A Common-Law Contract Claim............................................................14

II.    The Government Fails To State a Breach Of Contract Claim.......................16

    A.    The Government Fails To Plead A Breach Of Contract ....................16

    B.    Rescission And Restitution Are Not Available Here.........................19

CONCLUSION.....................................................................................................20

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Alexander v. Sandoval*,
 532 U.S. 275 (2001)................................................................................11

*American Ass'n of University Professors v. Trump*,
 815 F. Supp. 3d 907 (N.D. Cal. 2025)..................................................12

*Barnes v. Gorman*,
 536 U.S. 181 (2002)................................................................................20

*Bennett v. Kentucky Department of Education*,
 470 U.S. 656 (1985)..........................................................................14, 15

*Board of Pub. Instruction of Taylor County, Florida v. Finch*,
 414 F.2d 1068 (5th Cir. 1969) ....................................................11, 12, 13

*Cannon v. University of Chicago*,
 441 U.S. 677 (1979)................................................................................11

*In re Century Aluminum Co. Securities Litigation*,
 729 F.3d 1104 (9th Cir. 2013) .................................................................9

*Cummings v. Premier Rehab Keller*,
 596 U.S. 212 (2022)................................................................................20

*Eclectic Properties East, LLC v. Marcus & Millichap Co.*,
 751 F.3d 990 (9th Cir. 2014) ...................................................................9

*First Annapolis Bancorp, Inc. v. United States*,
 75 Fed. Cl. 280 (2007)............................................................................18

*Gilbert v. Department of Justice*,
 334 F.3d 1065 (Fed. Cir. 2003) ..............................................................17

*Hansen Bancorp, Inc. v. United States*,
 367 F.3d 1297 (Fed. Cir. 2004) .........................................................17, 18

*Hodgson v. Occidental Petroleum Corp.*,
 875 F.2d 870 (9th Cir. 1989) (unpublished)............................................19

*Hometown Financial, Inc. v. United States*,
  60 Fed. Cl. 513 (2004)......................................................................................18

*Khoja v. Orexigen Therapeutics, Inc.*,
  899 F.3d 988 (9th Cir. 2018) ...........................................................................12

*Landor v. Louisiana Department of Corrections & Public Safety*,
  146 S. Ct. 1931 (2026)......................................................................................20

*Maine v. United States Department of Agriculture*,
  778 F. Supp. 3d 200 (D. Me. 2025)..............................................................12, 13

*Northwest Airlines, Inc. v. Transportation Workers Union of America*,
  451 U.S. 77 (1981)............................................................................................15

*President & Fellows of Harvard College v. U.S. Department of Health & Human Services*,
  798 F. Supp. 3d 77 (D. Mass. 2025).................................................................11

*Roedler v. Department of Energy*,
  255 F.3d 1347 (Fed. Cir. 2001) .......................................................................16

*Stone Forest Industries, Inc. v. United States*,
  973 F.2d 1548 (Fed. Cir. 1992) .......................................................................17

*Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*,
  600 U.S. 181 (2023)..........................................................................................16

*United Launch Services, LLC v. United States*,
  139 Fed. Cl. 664 (Fed. Cl. 2018) .....................................................................17

*Whittlestone, Inc. v. Handi-Craft Co.*,
  618 F.3d 970 (9th Cir. 2010) ...........................................................................10

**DOCKETED CASES**

*American Ass'n of University Professors v. Trump*,
  No. 25-cv-07864 (N.D. Cal. Feb. 13, 2026), Dkt. 113......................................13

**STATUTES AND REGULATIONS**

42 U.S.C.

DEFENDANT'S MEM. ISO MOTION TO DISMISS
CASE NO. 2:25-cv-04131-JWH-JDE

§ 2000d.................................................................................................................10

§ 2000d-1 ..................................................................................................11, 13, 15

2 C.F.R.

§ 200.208............................................................................................................15

§ 200.339......................................................................................................15, 16

28 C.F.R.

§ 42.105..............................................................................................................18

§ 42.108..............................................................................................................14

§ 42.504..............................................................................................................17

§ 42.725..............................................................................................................17

§ 50.3..................................................................................................................14

## OTHER AUTHORITIES

Award No. 15PNIJ-24-GG-01575-RESS, Nat'l Inst. of Just. (Sept. 20, 2024), https://nij.ojp.gov/funding/awards/15pnij-24-gg-01575-ress ................12

Award No. 2019-R2-CX-0014, Nat'l Inst. of Just. (Sept. 13, 2019), https://nij.ojp.gov/funding/awards/2019-r2-cx-0014; .......................................12

Restatement (Second) of Contracts

§ 243...................................................................................................................20

§ 371.............................................................................................................19, 20

Restatement (Third) of Restitution and Unjust Enrichment § 38 ...........................19

Williston on Contracts

§ 63:3 ...........................................................................................................17, 19

§ 68:2 ..................................................................................................................19

**INTRODUCTION**

The Government asks this Court to impose the unprecedented and extraordinary remedy of termination of existing grants to UCLA and clawback of millions of dollars of federal funding that UCLA has already used for its intended purposes, based on its conclusory allegations that the David Geffen School of Medicine at UCLA ("DGSOM") has discriminated on the basis of race in its admissions process.

DGSOM has long complied with California's Prop. 209 and federal antidiscrimination laws. It receives more than ten thousand applications each year, for about 175 medical school seats, and decides whom to admit based on a holistic review that analyzes academic performance, extracurricular achievement, and other race-neutral considerations. But even if the Government *could* prove that DGSOM violates Title VI by considering race in its admissions, any such violation could not support the Government's extraordinary and draconian request for campus-wide grant termination and restitution. The Government does not allege that these grants from DOJ to UCLA have any nexus to the admissions practices the Government is challenging at DGSOM. Nor does the Government assert that any of the grant money UCLA has received from DOJ has been misspent. The Government therefore fails to plead that it can terminate or claw back these grants under Title VI or a common-law contract theory.

*First*, the Court should dismiss the Government's request to terminate all DOJ grants to UCLA and claw back all funds paid to UCLA under those grants. The Government cannot obtain this relief under Title VI because Title VI limits the Government to forward-looking remedies—the return of grant funds already disbursed and spent for their intended purposes is unavailable as a matter of law. Title VI also confines any funding termination to the part of a particular program in which noncompliance has been found, so the Government cannot seek termination

of grants that have no plausible nexus to the Title VI violations it alleges.  The Government also cannot circumvent these limits by disguising its Title VI allegations as a breach of contract claim.

*Second*, the Government in any event fails to state a breach of contract claim. The Government's conclusory allegations provide no basis to infer that DGSOM's compliance with Title VI—a general requirement that all federal grant recipients acknowledge—was a contractual obligation under the specific grants to UCLA that the Government identifies in its pleading (let alone a material term of those grants). Moreover, the rescission and restitution of federal grant awards that the Government seeks are not permitted by either ordinary contract principles or Congress's Spending Clause authority.

**BACKGROUND**

**A.    The Government's Title VI Investigations Into DGSOM**

On March 27, 2025, the Department of Health and Human Services ("HHS") initiated a compliance review of DGSOM's admissions practices to determine whether it engages in racial discrimination in violation of Title VI.  *See* Dkt. 79 at 2. On May 9, DOJ followed suit, opening a compliance review of DGSOM, also under Title VI, also focusing on alleged racial discrimination in medical school admissions.  Dkt. 104 ¶ 69 ("Amended Complaint" or "AC").  DOJ and HHS both sought broad categories of information concerning DGSOM's admissions process and decision-making.  In response to the agencies' requests, DGSOM produced hundreds of pages of admissions-related materials and responded to multiple rounds of requests for information.  *See id.*

Throughout these reviews, DGSOM provided admissions policies, procedural documents, training materials, and other records relevant to the agencies' inquiries. DGSOM dedicated substantial institutional resources to collecting, reviewing, and producing the requested information to facilitate the agencies' review, and remained

in close contact with both agencies throughout their investigations. DGSOM's responses to the Government's investigations demonstrated that its admissions process complies with applicable law.

**B.      The Government's Intervention in this Case**

The Government moved to intervene in this action on January 28, 2026. *See* Dkt. 77. At that time, it had not contacted DGSOM to address any perceived noncompliance and its investigation was still open. Dkt. 79 at 3. The Government's original Complaint-in-Intervention brought a single claim, styled under the Equal Protection Clause, but based on conclusions apparently drawn from its Title VI investigation, *i.e.*, that DGSOM "intentionally engage[s] in a system of racial balancing that provides racial preferences in admissions and thereby treats applicants differently based on their race, all in violation of the equal protection rights of applicants." Dkt. 86 ¶ 71. The Government sought a declaratory judgment, a sweeping permanent injunction, and the appointment of a monitor to "oversee all decisions relating to admissions" at DGSOM. *Id.* at 16. The Government's original Complaint-in-Intervention duplicated the equal-protection claim that had been brought in private plaintiffs' operative complaint. *See* Dkt. 78 ¶¶ 130-152.

**C.      The Government's Title VI Findings Letter**

DOJ concluded its Title VI compliance review of DGSOM on May 6, 2026, and issued a letter reciting its conclusions (the "Findings Letter"). AC ¶ 70 & Ex. A. According to this Findings Letter, DGSOM "discriminated on the basis of race for the incoming classes of 2023 through 2025, in violation of Title VI." AC Ex. A at 6.

**D.      The Amended Complaint-In-Intervention**

On July 14, the Government filed its Amended Complaint, adding two new claims based on the alleged violations identified in the Findings Letter. The Government now brings a Title VI claim against DGSOM, citing to its Findings

Letter and alleging that "DGSOM has been discriminating based upon race in admissions." AC ¶¶ 70, 84. The Government also brings a claim for breach of contract, asserting that UCLA received federal funding under "at least four active DOJ grants from June 2023 to the present," *Id.* ¶ 68, and that DGSOM's alleged racial discrimination breached UCLA's obligations under those grants, *id.* ¶¶ 89-90. The Amended Complaint dramatically expands the Government's requested relief, asking this Court to (1) "[r]escind all previous grants and/or payments made to UCLA by the DOJ from June 29, 2023 (the date of the Supreme Court *SFFA* ruling) to the present" and order "return of all such monies received by UCLA to the United States"; (2) "[t]erminate any existing DOJ grant agreements"; and (3) order "[a] damages award to the United States and injured applicants." AC ¶ 94.

## LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) requires dismissal where a plaintiff has "fail[ed] to state a claim upon which relief can be granted." To survive a motion to dismiss, a complaint must include sufficient factual support to move the allegations from possible to plausible. *See Eclectic Props. E., LLC v. Marcus & Millichap Co.*, 751 F.3d 990, 995 (9th Cir. 2014) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). "[P]laintiffs cannot offer allegations that are 'merely consistent with' their favored explanation but are also consistent with the alternative explanation." *In re Century Aluminum Co. Sec. Litig.*, 729 F.3d 1104, 1108 (9th Cir. 2013) (quoting *Iqbal*, 556 U.S. at 678). Instead, factual allegations make legal claims plausible only when they "tend[] to exclude the possibility" that the defendant's theory "is true." *Id.*

DEFENDANT'S MEM. ISO MOTION TO DISMISS
CASE NO. 2:25-cv-04131-JWH-JDE

## ARGUMENT

**I.    THE GOVERNMENT'S REQUEST FOR TERMINATION AND CLAWBACK OF ALL DOJ GRANTS TO UCLA SHOULD BE DISMISSED**

The Government's authority to seek relief for alleged violations of Title VI is limited by statute and regulation.  Congress included in Title VI a detailed enforcement framework that circumscribes the Government's authority to terminate federal grants for alleged statutory violations.  That enforcement scheme, and the federal regulations that implement it, limit the Government to forward-looking remedies aimed at securing prospective compliance with Title VI.  The Government improperly tries to evade these limits.  It seeks to terminate DOJ grants to UCLA—not just DGSOM—and force UCLA to pay back federal grants without identifying a single grant that has a nexus to DGSOM's allegedly discriminatory admissions process.  While the Government appears to acknowledge that these punitive, backward-looking remedies are not available under Title VI, it nevertheless attempts to obtain the same remedies by invoking common-law contract principles in an attempted end-run around Title VI's limits.[1]

**A.    The Requested Relief Defies The Limits On Government Enforcement Of Title VI**

Under Title VI, Congress has prohibited recipients of federal funding from discriminating on the basis of race, color, or national origin.  *See* 42 U.S.C. § 2000d.  At the same time, Congress structured Title VI to ensure that federal agencies do not abuse their power to terminate federal funding over alleged statutory violations.  As

---

[1] During the parties' Local Rule 7-3 conference of counsel regarding this motion, the Government stated that it sought backward-looking relief only under its contract claim, and not under Title VI.  As explained in this motion, the Government's requested relief violates Title VI both because it is retrospective and because it is not limited to DGSOM.  In any event, the Government cannot seek retrospective relief for alleged Title VI violations under a common-law breach of contract theory.

DEFENDANT'S MEM. ISO MOTION TO DISMISS
CASE NO. 2:25-cv-04131-JWH-JDE

the Supreme Court has recognized, Title VI thus places "elaborate restrictions" on agency enforcement. *Alexander v. Sandoval*, 532 U.S. 275, 290 (2001). For example, Title VI's enforcement provision limits the Government to terminating funding in the particular part of a program where it claims noncompliance has been found. 42 U.S.C. § 2000d-1. And it limits the Government to bringing funding recipients into prospective compliance; it does not allow the Government to impose punitive measures for purported historical violations. *See id.* These restrictions align with Congress's intent that a loss of federal funding be "a last resort." *Cannon v. University of Chi.*, 441 U.S. 677, 705 n.38 (1979); *see also President & Fellows of Harvard Coll. v. U.S. Department of Health & Human Servs.*, 798 F. Supp. 3d 77, 127 (D. Mass. 2025) (the Government should "avoid[] a punitive … application of the termination power") (citation and quotation marks omitted).

These two statutory constraints on the Government's enforcement power require dismissal of the Government's new claims for campus-wide termination and return of payments made under DOJ grants to UCLA.

       *1.    The Government seeks sweeping grant terminations without identifying any nexus to alleged Title VI violations*

While the Government may enforce Title VI through litigation, the statute limits its power to seek termination of federal grants for alleged Title VI violations. The Government may attempt to terminate federal funding only with respect to "the particular program, *or part thereof*" as to which an express finding of noncompliance with Title VI has been made. 42 U.S.C. § 2000d-1 (emphasis added); *see also* 28 C.F.R. § 42.108(c) (DOJ implementing regulations).

Consistent with this limitation, courts have long held that funding terminations under Title VI require "a careful case-by-case application of the principle of nondiscrimination to those *particular activities* which are actually discriminatory." *Board of Pub. Instruction of Taylor Cnty., Fla. v. Finch*, 414 F.2d

1068, 1075 (5th Cir. 1969) (emphasis added) (citation and quotation marks omitted). Because there must be a close nexus between the funding to be terminated and the alleged discrimination, courts have limited termination of funding to the parts of a program where the alleged discrimination occurred. *Id.* at 1078-1079 ("[T]he purpose of the Title VI cutoff is best effectuated by separate consideration of the use or intended use of federal funds under each grant statute."); *American Ass'n of Univ. Professors v. Trump*, 815 F. Supp. 3d 907, 963-964 (N.D. Cal. 2025) ("*AAUP*") (Government failed to comply with Title VI in suspending funding to UCLA when there was "no evidence in the record that [it] limited the scope of the funding suspensions to noncompliant entities, parts, or programs"); *Maine v. United States Dep't of Agric.*, 778 F. Supp. 3d 200, 230 (D. Me. 2025) (enjoining attempted funding cuts to food assistance program based on alleged noncompliance with Title IX in athletics).

Under these authorities, the Government may not terminate grants that were made to parts of UCLA that have no alleged nexus to the only "part" of UCLA in which the Government purports to have found noncompliance, *i.e.*, the admissions process at DGSOM. The Amended Complaint identifies and asks the Court to terminate four grants DOJ awarded to UCLA under which payments have been made since June 2023. AC ¶ 68(a)-(d). These grants have supported research on criminal justice issues including gang violence prevention and access to housing for people leaving prison. *See id.*[2] The Amended Complaint draws no connection (or nexus) between these four DOJ grants and the admissions process at DGSOM. The

---

[2] *See, e.g.*, Award # 2019-R2-CX-0014, Nat'l Inst. of Just. (Sept. 13, 2019), https://nij.ojp.gov/funding/awards/2019-r2-cx-0014; Award # 15PNIJ-24-GG-01575-RESS, Nat'l Inst. of Just. (Sept. 20, 2024), https://nij.ojp.gov/funding/awards/15pnij-24-gg-01575-ress. The Amended Complaint incorporates these grants by reference. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002-1004 (9th Cir. 2018).

Government does not even allege that the grants it seeks to terminate (and claw back) were grants to DGSOM, let alone grants impacted by alleged Title VI violations in medical school admissions.  The Government therefore fails to identify a grant with any nexus to its findings of Title VI violations, and accordingly fails to allege that there is a DOJ grant to UCLA susceptible to termination under Title VI.  *See Finch*, 414 F.2d at 1078-1079; *Maine*, 778 F. Supp. 3d at 230.

The Government has attempted to evade this important limitation of Title VI before.  Recently, another court in this Circuit entered an injunction requiring that "any funding termination" that the Government seeks to impose on UC must be limited "to the particular program, or part thereof, in which such noncompliance has been found." *American Ass'n of Univ. Professors v. Trump*, No. 25-cv-07864 (N.D. Cal. Feb. 13, 2026), Dkt. 113 at 2 (revised injunction).  The Government ignores that directive here by attempting to leverage its allegations concerning one aspect of one professional school within UCLA (DGSOM admissions) into a basis for terminating *all* DOJ grants to UCLA regardless of whether the grants are tied to DGSOM's admissions practices.  Title VI does not permit that.  The Court should dismiss the Government's request to terminate and claw back these federal grants because the Government has failed to allege that there is a DOJ grant to UCLA that can be subject to termination under Title VI.  *See Finch*, 414 F.2d at 1078-1079; *Maine*, 778 F. Supp. 3d at 230.

       2.    *The Government seeks retrospective remedies not available under Title VI*

Title VI also limits the Government's enforcement mechanism to enforcement designed to secure a funding recipient's prospective compliance with the statute; it does not permit the retrospective relief the Government seeks here.  The statutory text authorizes the Government to ensure that "[c]ompliance with" Title VI is "effected."  42 U.S.C. § 2000d-1.  DOJ's own regulations implementing Title VI

further describe enforcement as a mechanism for effecting future compliance: for example, they provide that the Government may use funding terminations and lawsuits "to induce compliance" with Title VI, 28 C.F.R. § 42.108(a); that the Government's "judicial enforcement" of Title VI is "designed to secure compliance," *id.* § 50.3(c)(I)(b)(1); and that Title VI authorizes the Government to bring a "court action" to obtain "[c]ompliance with the nondiscrimination mandate of title VI," *id.* In short, the Government has ignored the legal requirement that it seek to enforce Title VI through prospective compliance, and the Court should dismiss its claim for retrospective remedies unavailable under Title VI's remedial scheme.

> **B.     The Government Cannot Circumvent Title VI By Bringing A Common-Law Contract Claim**

Recognizing that Title VI does not permit the campus-wide grant termination and return of federal grant payments that the Government seeks, the Government tries to evade these limits by inviting the Court to apply a common-law contract theory. This Court should decline to do so. The Government's attempt to obtain sweeping, retrospective relief for alleged Title VI violations is unprecedented. And that is for good reason: using common-law contract theory as an end-run around Title VI is at odds with Supreme Court precedent and the Government's own regulations on federal grantmaking.

The Government's reliance on a breach of contract theory to avoid Title VI's restrictions on remedies ignores that federal grants are not equivalent to common-law contracts. They instead "originate in and remained governed by statutory provisions expressing the judgment of Congress concerning desirable public policy." *Bennett v. Ky. Dep't of Educ.*, 470 U.S. 656, 669 (1985). As detailed above, Congress's judgment about the scope of remedies the Government may obtain for alleged violations of Title VI is reflected in the limitations Congress built into Title

VI's enforcement provision. Under that provision, the Government must limit grant terminations to the particular "part" of a program where noncompliance has purportedly been found and may seek relief only to secure present and future compliance with Title VI. *See* 42 U.S.C. § 2000d-1. Federal statute thus defines the scope of permissible enforcement efforts and available remedies. "The judiciary may not, in the face of such comprehensive legislative schemes, fashion new remedies that might upset carefully considered legislative programs." *Northwest Airlines, Inc. v. Transp. Workers Union of Am.*, 451 U.S. 77, 95-97 (1981). Furthermore, the Supreme Court has described repayment of federal grant funds as a remedy for misusing the particular funds the Government has paid under an award, *Bennett*, 470 U.S. at 670-671, not as a penalty for alleged noncompliance with broadly applicable civil rights law.

The Government's attempt to pursue remedies that Title VI does not authorize by bringing a contract claim also conflicts with the regulatory scheme for federal grantmaking that applies government-wide. This scheme sets forth specific conditions that may be imposed on grant recipients, 2 C.F.R. § 200.208(c), and remedies the Government may pursue, *id.* 200.339, for a grant recipient's alleged noncompliance with federal statute or the terms of a federal award. Like the government enforcement scheme Congress established under Title VI, these grantmaking regulations describe prospective responses to noncompliance aimed at correcting deficiencies *going forward*. These responses include suspending or terminating the grant, withholding or suspending future payments pending corrective action, imposing specific conditions on future awards, or shifting to a different model for disbursing grant funds. *See id.* §§ 200.339(a)-(e), 200.208(c). These regulations do not authorize backward-looking measures untethered from prospective compliance, such as an across-the-board clawback of funds already paid by the Government and expended by the recipient in line with the grant's purpose.

DEFENDANT'S MEM. ISO MOTION TO DISMISS
CASE NO. 2:25-cv-04131-JWH-JDE

Nor do they authorize the Government to seek relief that exceeds statutory limits. *See id.* § 200.339(f) (authorizing the Government to "[p]ursue other *legally available* remedies" (emphasis added)).

The relief the Government requests for alleged violations of Title VI, however, goes well beyond the remedies Title VI makes available in government enforcement actions. The Government asks the Court to "[r]escind all previous grants and/or payments made to UCLA by the [Department]" since the date the Supreme Court decided *Students for Fair Admissions, Inc. v. President and Fellows of Harvard College*, 600 U.S. 181 (2023), for "return of all such monies received by UCLA to the United States," to "[t]erminate any existing DOJ grant agreements," and for "[a] damages award to the United States and injured applicants." AC ¶ 94(D)-(F). Having awarded grants governed by a specific statutory and regulatory framework, the Government is cabined to the relief available under that statutory and regulatory framework. It may not seek relief that conflicts with that remedial scheme.

## II.   THE GOVERNMENT FAILS TO STATE A BREACH OF CONTRACT CLAIM

Even assuming that a breach of contract claim based on alleged violations of Title VI is permissible—it is not—the Government failed to state any such claim. Moreover, the relief the Government seeks here—campus-wide rescission and restitution untethered from any specific alleged contractual breach—is barred by ordinary contract principles and the Spending Clause.

### A. The Government Fails To Plead A Breach Of Contract

The Government's breach of contract claim is governed by federal common law. *See Roedler v. Department of Energy*, 255 F.3d 1347, 1351 (Fed. Cir. 2001). That is, where the Government is permitted to sue for breach of contract it must allege "(1) the existence of a valid contract between the parties; (2) an obligation or duty arising from that contract; (3) a breach of that duty; and (4) damages caused by

that breach." *United Launch Servs., LLC v. United States*, 139 Fed. Cl. 664, 681 (Fed. Cl. 2018) (quotation omitted). "A party breaches a contract when it is in *material* non-compliance with the terms of the contract." *Gilbert v. Department of Just.*, 334 F.3d 1065, 1071 (Fed. Cir. 2003) (emphasis added). And a breach is material only when it "goes to the essence of the contract." *Id.* "In other words, for a breach of contract to be material, it must 'go to the root' or 'essence' of the agreement between the parties or be one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract." 23 Williston on Contracts § 63:3 (4th ed. May 2026 update). Determining whether a breach is material "depends on the nature and effect of the violation in light of how the particular contract was viewed, bargained for, entered into, and performed by the parties." *Stone Forest Indus., Inc. v. United States*, 973 F.2d 1548, 1551 (Fed. Cir. 1992). Courts have found no material breach where the nonbreaching party "receives a 'substantial part' of what [it] bargained for." *See Hansen Bancorp, Inc. v. United States*, 367 F.3d 1297, 1312 (Fed. Cir. 2004).

Here, the Government claims that purported Title VI violations in DGSOM admissions breached the terms of four federal grants from DOJ to UCLA with no alleged nexus to DGSOM, because those grants state that federal law requires grant recipients to provide assurances that they will comply with civil rights laws. AC ¶¶ 66-68. To be sure, federal grant recipients have an independent legal obligation to comply with Title VI, and generally applicable regulations require them to provide assurances they will comply with that independent legal obligation, among others. *See* 28 C.F.R. § 42.105; *see also id.* § 42.504 (assurance of compliance with disability discrimination law); *id.* § 42.725 (assurance of compliance with age discrimination law). But the Government fails to plausibly allege that DGSOM's preexisting obligation to comply with Title VI was a term of any of these individual DOJ grants to UCLA. As noted, these grants funded research on criminal justice

17    DEFENDANT'S MEM. ISO MOTION TO DISMISS
CASE NO. 2:25-cv-04131-JWH-JDE

issues, ranging from housing stability among formerly incarcerated people to strategies for gang-violence prevention. *See supra* p.12. The Government also does not allege that any of the grants has a nexus to DGSOM, or that the parts of UCLA that received these grants would be affected in any way by alleged discrimination in medical school admissions. The Government therefore has not pleaded that DGSOM's compliance with Title VI was an "award requirement," let alone that the Government can require UCLA "to repay award funds" with no alleged nexus to DGSOM in response to DGSOM's purported Title VI violations. AC ¶ 67.

The Government also fails to allege any facts that plausibly show UCLA breached the terms of these federal grants based on DGSOM's supposed noncompliance with Title VI, let alone materially breached them. Nowhere does the Government allege that it failed to "receive[] a 'substantial part' of what [it] bargained for" under the DOJ grants to UCLA. *See Hansen Bancorp*, 367 F.3d at 1312. Indeed, the Government makes no allegation that UCLA has failed to deliver on the projects funded by these grants—the essential purpose of the agreements in question. Because the Government does not plausibly show that alleged Title VI noncompliance in DGSOM admissions "deprive[d] the Government of the expected benefit of its bargain" under DOJ grants to UCLA, the Government does not plead a material breach. *See First Annapolis Bancorp, Inc. v. United States*, 75 Fed. Cl. 280, 293 (2007); *see also Hometown Financial, Inc. v. United States*, 60 Fed. Cl. 513, 521 (2004) (no material breach where the Government "fail[ed] to establish a single dollar of loss" attributable to challenged practices), *aff'd*, 409 F.3d 1360 (Fed. Cir. 2005). Moreover, none of the grants have any alleged nexus to DGSOM admissions—the only unit of UCLA that the Government alleges has violated Title VI. Even if the Government could show some technical breach of the grants—which it cannot—the Amended Complaint contains no allegations explaining how DGSOM's compliance with Title VI (which, as noted, is an independent legal

obligation) was a material term. The Government does not, for example, attempt to show that Title VI compliance in medical school admissions "touche[d] the fundamental purpose" of a grant relating to housing stability for people leaving prison. Williston on Contracts § 63:3.

## B.    Rescission And Restitution Are Not Available Here

The Government's contract claim also fails because the campus-wide rescission and restitution of DOJ grants it seeks are unavailable under ordinary contract law and are not remedies that Congress can authorize under the Spending Clause. Rescission and restitution are not available remedies here under basic contract principles. Rescission is an extraordinary remedy available only for breaches that "defeat the object or purpose of the contract, so that the contract is essentially destroyed." *See* 26 Williston on Contracts § 68:2 (4th ed. May 2026 update); *see Hodgson v. Occidental Petrol. Corp.*, 875 F.2d 870, at \*2 (9th Cir. 1989) (unpublished) (holding that breach of contract plaintiff could not "justify[] the extraordinary remedy of rescission" absent facts from which the court could "infer that untimely performance was a material breach"). Restitution, like rescission, depends on a failure of the fundamental exchange, not merely an alleged violation of a collateral regulatory obligation, and it must be confined to the benefit conferred or unjust enrichment attributable to the breach—not to every dollar paid under every agreement during a period of alleged noncompliance. *See* Restatement (Second) of Contracts § 371; Restatement (Third) of Restitution & Unjust Enrichment § 38(2)(b) (A.L.I Oct. 2024 Update). The Government's effort to transform alleged regulatory noncompliance into a wholesale forfeiture of grants—some of them fully performed—cannot provide a basis for rescission or restitution here.

The campus-wide rescission and restitution the Government seeks here also defies the limits on Congress's authority to authorize remedies under Spending Clause legislation—limits the Supreme Court has just recently reaffirmed. Title VI

was enacted pursuant to the Spending Clause and thus conditions an offer of federal funding on the recipient's agreement to comply with specified obligations. *See Cummings v. Premier Rehab Keller*, 596 U.S. 212, 216 (2022). A remedy for a Title VI violation is therefore available "only if the funding recipient is on notice that, by accepting federal funding, it exposes itself to liability of that nature." *Id.* at 220. The Government provides this notice only when it "clearly and unambiguously alert[s] a grant recipient to any condition on federal funds." *Landor v. Louisiana Dep't of Corrections & Pub. Safety*, 146 S. Ct. 1931, 1941 (2026). That is because "when considering whether to accept federal funds, a prospective recipient would surely wonder not only what rules it must follow, but also what sort of penalties might be on the table." *Cummings*, 596 U.S. at 220. Consistent with these principles, the Supreme Court has tightly constrained the remedies available under Spending Clause statutes: because a funding recipient lacks notice that it will be exposed to "*unusual*, even rare remedies," those remedies are unavailable under Title VI. *Id.* at 221-223 (quotation marks omitted). Atypical contractual remedies such as the rescission and restitution remedies the Government seeks here for alleged Title VI violations are thus unavailable. *See Cummings*, 596 U.S. at 216; *see also Barnes v. Gorman*, 536 U.S. 181, 186-188 (2002); Restatement (Second) of Contracts §§ 243(4), 371.

**CONCLUSION**

The Court should grant Defendant's Motion to Dismiss.

Dated: July 31, 2026

Respectfully submitted,

/s/ Felicia H. Ellsworth
Felicia H. Ellsworth
(admitted *pro hac vice*)

WILMER CUTLER PICKERING HALE AND DORR LLP
Debo Adegbile
(admitted *pro hac vice*)
debo.adegbile@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800

Felicia H. Ellsworth
(admitted *pro hac vice*)
felicia.ellsworth@wilmerhale.com
Sharon K. Hogue
(*pro hac vice* pending)
Sharon.hogue@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: 617-526-6000

Christopher T. Casamassima
(CA Bar No. 211280)
chris.casamassima@wilmerhale.com
Joshua A. Vittor
(CA Bar No. 326221)
joshua.vittor@wilmerhale.com
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300

*Attorneys for Defendants*

## <u>CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1 AND STANDING ORDER OF HON. JOHN W. HOLCOMB</u>

The undersigned, counsel of record for Defendants, certifies that this brief contains 25 pages or fewer, which complies with the page limit set by the Court's Standing Order revised February 24, 2023.

Dated: July 31, 2026

/s/ *Felicia H. Ellsworth*

Felicia H. Ellsworth

Defendant's Mem. ISO Motion to Dismiss
CASE NO. 2:25-cv-04131-JWH-JDE