WILMER CUTLER PICKERING
HALE AND DORR LLP
Debo Adegbile
(admitted *pro hac vice*)
debo.adegbile@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800

Felicia H. Ellsworth
(admitted *pro hac vice*)
felicia.ellsworth@wilmerhale.com
Sharon K. Hogue
(admitted *pro hac vice*)
sharon.hogue@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: 617-526-6000

Christopher T. Casamassima
(CA Bar No. 211280)
chris.casamassima@wilmerhale.com
Joshua A. Vittor
(CA Bar No. 326221)
joshua.vittor@wilmerhale.com
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300

*Attorneys for Defendants*

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

DO NO HARM et al.,
*Plaintiffs*,

and

THE UNITED STATES OF AMERICA,
*Plaintiff-Intervenor*,

v.

THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, et al.,
*Defendants*.

Case No. 2:25-cv-04131-JWH-JDE

**DEFENDANT'S REPLY IN SUPPORT OF MOTION TO DISMISS PLAINTIFF-INTERVENOR'S AMENDED COMPLAINT-IN-INTERVENTION**

Date: October 20, 2026
Time: 10:00 am
Place: Courtroom 9D
Judge: Hon. John W. Holcomb

# TABLE OF CONTENTS


Page

TABLE OF AUTHORITIES ..... 3

INTRODUCTION ..... 6

ARGUMENT ..... 8

I. The Government Requests Remedies It Has No Authority To Seek ..... 8

A. The Government Cannot Impose Campus-Wide Or Backward-Looking Remedies Under Title VI ..... 8

B. The Court Can And Should Use Rule 12(b)(6) To Dismiss Claims For Remedies That Are Unavailable As A Matter Of Law ..... 11

II. The Government's Contract Claim Fails ..... 12

A. The Government Cannot Skirt Title VI's Limitations Through A Breach Of Contract Claim ..... 12

B. The Government Fails To Plead A Breach Of Contract ..... 15

CONCLUSION ..... 17

## TABLE OF AUTHORITIES

**Page(s)**

### CASES

*Amber Resources Co. v. United States*,
538 F.3d 1358 (Fed. Cir. 2008) ....................................................14

*American Ass'n of University Professors v. Trump*,
815 F. Supp. 3d 907 (N.D. Cal. 2025)................................................10

*Barnes v. Gorman*,
536 U.S. 181 (2002)...............................................................14

*Bennett v. Kentucky Department of Education*,
470 U.S. 656 (1985)...........................................................13, 14

*Board of Public Instruction of Taylor County v. Finch*,
414 F.2d 1068 (5th Cir. 1969) .....................................................10

*United States v. California Interscholastic Federation*,
2026 WL 2575930 (C.D. Cal. Aug. 31, 2026) ..........................................15

*County of King v. Turner*,
2026 WL 2489361 (9th Cir. Aug. 25, 2026) ...........................................16

*Cummings v. Premier Rehab Keller, P.L.L.C.*,
596 U.S. 212 (2022)...............................................................15

*Gilbert v. Department of Justice*,
334 F.3d 1065 (Fed. Cir. 2003) ................................................15, 17

*Gradney v. Polar Beverages*,
797 F. Supp. 3d 1016 (N.D. Cal. 2025)...............................................11

*Grove City College v. Bell*,
465 U.S. 555 (1984)................................................................9

*Hansen Bancorp, Inc. v. United States*,
367 F.3d 1297 (Fed. Cir. 2004) ....................................................16

*Keyes v. School District No. 1*,
413 U.S. 189 (1973)...............................................................10

*Kousisis v. United States*, 605 U.S. 114 (2025) ........ 17

*Landor v. Louisiana Department of Corrections & Public Safety*, 609 U.S. 59 (2026) ........ 15

*National Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459 (1999) ........ 9

*United States v. President & Fellows of Harvard College*, 2026 WL 2343193 (D. Mass. Aug. 13, 2026) ........ 13, 15

*Reinhardt v. Gemini Motor Transport*, 869 F. Supp. 2d 1158 (E.D. Cal. 2012) ........ 11

*Smith v. Pacific Properties & Development Corp.*, 358 F.3d 1097 (9th Cir. 2004) ........ 11

*Students for Fair Admissions, Inc. v. President & Fellows of Harvard College*, 600 U.S. 181 (2023) ........ 7, 8

*Sunrez Corp. v. United States*, 157 Fed. Cl. 640 (2022) ........ 17

*Maine v. U.S. Department of Agriculture*, 778 F. Supp. 3d 200 (D. Me. 2025) ........ 10

*Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176 (2016) ........ 16

*Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970 (9th Cir. 2010) ........ 11

**DOCKETED CASES**

*Kousisis v. United States*, No. 23-909 (U.S. Oct. 2, 2024) ........ 16

**STATUTES AND RULES**

42 U.S.C.

§ 2000d-1 ........ 8, 9, 10, 13, 15

§ 2000d-4a ........ 9

Civil Rights Restoration Act of 1987, Pub. L. No. 100-259 ............................6, 9, 10

Elementary and Secondary Education Act of 1965 ................................................13

Federal Rule of Civil Procedure 12(b)(6) ..........................................................7, 11

**OTHER AUTHORITIES**

26 Williston on Contracts § 68:2 ...........................................................................14

Restatement (Second) of Contracts § 371 ................................................................14

Restatement (Third) of Restitution and Unjust Enrichment § 38:2 .........................14

S. Rep. No. 100-64 (1987) ..................................................................................7, 10

U.S. Department of Justice, *Title VI Legal Manual* (Jan. 11, 2001) .......................10

## INTRODUCTION

The Government's Amended Complaint alleges that UCLA's David Geffen School of Medicine ("DGSOM") is violating Title VI. The Regents will show those allegations have no merit. Regardless, the Government seeks relief well beyond the limited scope of Title VI's strictly remedial scheme. Indeed, as the Government now concedes (Opp. 9), Title VI does not permit the remedies the Government seeks. The Government cannot make an end run around the strictures of Title VI's narrow remedial scheme by recasting its claim as a common-law breach of contract claim. And even if that were possible under the law, the breach of contract claim alleged here fails because the Government does not plausibly allege breach, or that rescission or restitution are appropriate, available remedies.

The Government's Opposition attacks strawman arguments and rehashes allegations that The Regents does not challenge at the pleading stage, but this does not salvage its claims from dismissal. Rather, it underscores the Government's attempts to circumvent Title VI's limits and exposes the unprecedented nature of the draconian remedies the Government seeks.

*First*, as The Regents established in its opening memorandum, the Government seeks remedies Congress never authorized. Title VI expressly restricts funding termination to the "part []of" the federally funded program that violates Title VI. And here, the "part of" UCLA at issue with respect to the Government's allegations is DGSOM, and specifically the admissions process at DGSOM. But the Government impermissibly seeks to terminate and claw back federal grant money with no apparent connection to DGSOM. In its Opposition, the Government concedes that it has not attempted to comply with this statutory limitation, and instead argues that the plain language of Title VI is "outdated law." Opp. 12. Not so. The authority the Government relies on—the Civil Rights Restoration Act of 1987, Pub. L. No. 100-259 ("CRRA")—is irrelevant here because it does not expand the scope of remedies available to the Government. In fact, the CRRA embraced the

very principle the Government asks this Court to reject: that "Federal funds earmarked for a specific purpose would not be terminated unless discrimination was found *in the use of those funds*." S. Rep. No. 100-64, at 20 (1987) (emphasis added). Claims for remedies that are unavailable as a matter of law should be dismissed under Rule 12(b)(6), and that is precisely the situation here.

*Second*, The Regents argues that the Government's breach of contract claim, which is based solely on alleged violations of Title VI, also should be dismissed. In its Opposition, the Government concedes that it is pursuing a contract claim because Title VI does not permit the backward-looking remedies it seeks. But the Government cannot so easily evade the statute's restrictions. When it enforces Title VI, it is bound by the limits Congress established in Title VI. In any event, the Government does not plausibly allege that purported noncompliance with Title VI in DGSOM admissions materially breached the terms of federal grants to UCLA. The Government points to no facts from which this Court could infer that Title VI compliance in DGSOM admissions was a material term the Government insisted upon when making the four grants at issue here.

The Government tries to distract from these pleading defects by reiterating its unproven allegations of discrimination. Opp. 3-8, 16-17. It vastly inflates its factual allegations, claiming that a "clear" case of discrimination can be established based on the use of holistic admissions rather than rigid adherence to test scores, and on a university making general statements about the benefits of diversity. Opp. 5 (citing AC ¶¶ 13-57).

The Government also overstates the effect of *Students for Fair Admissions, Inc. v. President & Fellows of Harvard College* ("*SFFA*"), 600 U.S. 181 (2023), suggesting that it rendered unlawful any and all practices reflecting a university's interest in "the diversity of its classes" or its "commitment to enrolling" underrepresented students. Opp. 5. But *SFFA* did not announce that categorical rule—in fact, it confirmed that universities may consider an applicant's lived

experience, so long as they are evaluating "his or her experiences as an individual" or "unique ability to contribute to the university," rather than his or her race. *SFFA*, 600 U.S. at 230-231. The Court should grant The Regents' motion.

## ARGUMENT

### I. THE GOVERNMENT REQUESTS REMEDIES IT HAS NO AUTHORITY TO SEEK

To remedy an alleged Title VI violation by DGSOM, the Government asks the Court: (1) to "[r]escind all previous grants and/or payments made to UCLA by the DOJ" since June 29, 2023 and order "return of all such monies received by UCLA to the United States"; (2) to "[t]erminate any existing DOJ grant agreements;" and (3) for "[a] damages award to the United States." AC ¶ 94. Under the remedial scheme that Congress established in Title VI, these remedies are unavailable.

#### A. The Government Cannot Impose Campus-Wide Or Backward-Looking Remedies Under Title VI

Congress has placed restrictions on the Government's authority to enforce Title VI. 42 U.S.C. § 2000d-1. Under one of those restrictions, when the Government issues a finding of noncompliance with Title VI and seeks to terminate federal funding, "such termination … shall be limited in its effect to the particular program, *or part thereof*, in which such noncompliance has been so found." *Id.* (emphasis added). The Government's requested relief here ignores that limit. It seeks termination and clawback of *all* DOJ grants to *all* of UCLA. *See* AC ¶¶ 68, 94(D)-(E). In its memorandum, The Regents explained that none of the grants identified in the Amended Complaint has any apparent nexus to DGSOM—let alone to DGSOM admissions, which is the only "part" of UCLA where the Government purports to have found a Title VI violation. *See* Mem. 12-13; AC ¶ 70. And the Government concedes that it failed to allege any such nexus, claiming (erroneously) that Title VI allows it to terminate "federal financial assistance at the entire university, not just the school of medicine or the admissions office." Opp. 12.

The Government instead indulges in an extended discussion of legal

developments that have no bearing on its claims. Opp. 13-16. It falsely suggests the "part thereof" limitation is "outdated law." Opp. 12. In reality, Congress not only preserved that restriction, but also embraced The Regents' position that it prevents the Government from seeking the campus-wide clawback of grants it pursues here.

In *Grove City College v. Bell*, 465 U.S. 555 (1984), the Supreme Court held that federal civil rights laws and regulations that prohibited discrimination under a "program or activity" did not "impose institution-wide obligations" on universities that received federal funding, but instead covered only the particular functions of the university that received federal funding, *id.* at 573-575. Congress reacted to this ruling by enacting the CRRA, *see National Collegiate Athletic Ass'n v. Smith*, 525 U.S. 459, 466 n.4 (1999), which redefined "program or activity" to mean all of a university's operations, 42 U.S.C. § 2000d-4a.

The Government touts the CRRA as rendering the "part thereof" limitation "outdated," Opp. 12, but it did no such thing. The CRRA stands for the uncontroversial proposition that every component of a university that receives federal funding must comply with Title VI's nondiscrimination mandate. The CRRA has no bearing on, and says nothing relating to, the Government's authority to *terminate* funding when it finds that a single component of a university has violated Title VI. The Government's authority to seek remedies for alleged Title VI violations is circumscribed by the statutory language of 42 U.S.C. § 2000d-1, which Congress left untouched in enacting the CRRA. Through 42 U.S.C. § 2000d-1, Congress has constrained the Government's termination power to the "part []of" a particular program where noncompliance has been found. *Id.* That limitation is specific to the termination power—it does not, for example, stop the Government from seeking injunctive relief to enforce compliance with Title VI. *See id.*

Contemporary statements from Congress leave no doubt that the CRRA was not intended to amend that statutory limitation on the termination power. The Senate committee responsible for the CRRA explained that Title VI's substantive

protections against discrimination applied broadly, but were enforceable through a "narrow funding termination provision." S. Rep. No. 100-64, at 5 (1987). And the committee explained that, far from "repudiat[ing]" *Board of Public Instruction of Taylor County v. Finch*, 414 F.2d 1068 (5th Cir. 1969), as the Government claims (Opp. 14), the CRRA endorsed the principle from *Finch* that "[f]ederal funds earmarked for a specific purpose would not be terminated unless discrimination was found *in the use of those funds*," S. Rep. No. 100-64, at 20 (emphasis added). DOJ itself recognized that "the CRRA left intact the 'pinpoint' provision that limits any fund termination to the 'program, or part thereof, in which noncompliance has been so found.'" U.S. Dep't of Just., *Title VI Legal Manual* 98 (Jan. 11, 2001) (citing 42 U.S.C. § 2000d-1); *see id.* at 94-98 (relying on *Finch* to interpret Title VI).

Notwithstanding these authorities, the Government characterizes its position to the contrary as "not even a close call." Opp. 13. But the courts disagree, consistently holding that grant terminations must be limited to the "part []of" a recipient in which noncompliance is found. *See American Ass'n of Univ. Professors v. Trump*, 815 F. Supp. 3d 907, 963-964 (N.D. Cal. 2025); *Maine v. U.S. Dep't of Agric.*, 778 F. Supp. 3d 200, 229-230 (D. Me. 2025).

The Government's attempt to rely on the wholly irrelevant line of school-desegregation cases fares no better. Opp. 16-17 (citing *Keyes v. Sch. Dist. No. 1*, 413 U.S. 189, 207-213 (1973)). *Keyes* applied an evidentiary rule to a vile practice the Government does not allege is at issue—*de jure* racial segregation. 413 U.S. at 208. *Keyes* held that if a plaintiff proves there is intentional segregation "in a meaningful portion of a school system," school officials have the burden to show that segregation in other parts of the system was unintentional. *Id.* That burden-shifting framework is irrelevant here. The Government's conclusory assertion that UC leadership has "expressed views supportive of discrimination in the name of diversity" comes nowhere close to explaining how its Amended Complaint alleges intentional racial discrimination in any part of the UC system, let alone

"systemwide" discrimination. Opp. 17. It clearly does not.

The Government also concedes that Title VI's express government enforcement mechanism is "prospective." Opp. 4. Accordingly, the Government now clarifies that it only seeks backward-looking remedies under its contract claim. Opp. 8-9. But that limitation is not clear from the Amended Complaint. This concession thus merits granting The Regents' motion to dismiss the Government's Title VI claim to the extent it seeks termination and clawback of federal grants.

### B. The Court Can And Should Use Rule 12(b)(6) To Dismiss Claims For Remedies That Are Unavailable As A Matter Of Law

This Rule 12(b)(6) motion is the appropriate mechanism for seeking dismissal of the Government's claims for unauthorized relief. *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 974 (9th Cir. 2010) (holding a Rule 12(b)(6) motion is the proper vehicle to seek dismissal of claims where the associated remedy is precluded as a matter of law); *accord Reinhardt v. Gemini Motor Transp.*, 869 F. Supp. 2d 1158, 1174 (E.D. Cal. 2012) ("[W]hen challenging a complaint's request for damages that are unavailable as a matter of law, Rule 12(b)(6) … is the proper mechanism."). Courts in the Ninth Circuit have dismissed claims for remedies that were unavailable as a matter of law at the pleading stage. *Smith v. Pac. Props. & Dev. Corp.*, 358 F.3d 1097, 1106 (9th Cir. 2004) (affirming 12(b)(6) dismissal of disgorgement claim as a matter of law where preconditions to receive that relief were not met); *Gradney v. Polar Beverages*, 797 F. Supp. 3d 1016, 1031 (N.D. Cal. 2025) (granting 12(b)(6) dismissal of claims for equitable relief where plaintiffs failed to sufficiently explain why other legal remedies were inadequate); *Reinhardt*, 869 F. Supp. 2d at 1175 (dismissing claim for disgorgement of profits because those damages "are unavailable as a matter of law"). That result is warranted here.

The Government does not seriously dispute that if it seeks remedies that are unavailable as a matter of law, then its claims for those remedies can be adjudicated at the pleading stage. Instead, the Government argues that it seeks these remedies

only after a determination of liability at trial. Opp. 8. But that argument confuses the question of whether the Government can prove its allegations with the distinct question of whether the relief it seeks would be available if it did. The Regents does not ask the Court to resolve the Government's Title VI allegations at the pleading stage; rather, it asks this Court to determine that, even if the Government could prove its allegations, it could not obtain the relief it seeks.

## II. The Government's Contract Claim Fails

The Government cannot obtain the campus-wide, retrospective remedies it seeks here under Title VI, and it cannot circumvent the statutory limitations on its enforcement authority by bringing a common-law contract claim. The Government's own explanation of its strategy illustrates that it seeks to impermissibly evade Title VI's statutory limits. Conceding that it cannot seek "retrospective relief" for "Title VI violations," the Government argues it may seek "[r]etrospective relief … in the context of a breach of contract claim" for DGSOM's "'failure to comply with Title VI.'" Opp. 9 (quoting AC ¶ 93).

Even if the Government could pursue its contract claim here, it fails to plausibly allege a material breach. The Government puts forth no allegation of nonperformance and makes no attempt to explain how the Title VI violations in DGSOM admissions alleged here were so central to the particular DOJ grants at the time they were made as to defeat their purpose. In fact, another federal agency has conceded that the Government's assertion of materiality is a change in position, adopted for the first time in October 2025. *See* Dep't of Health & Human Servs., Grants Policy Statement § 2.5.4.3 (Oct. 2025). In any event, regardless of the Government's recent insistence to the contrary, compliance with Title VI in DGSOM admissions was not plausibly a material term of every DOJ grant to UCLA.

### A. The Government Cannot Skirt Title VI's Limitations Through A Breach Of Contract Claim

The Regents is not aware of any court that has permitted the Government to

pursue the campus-wide and retrospective relief barred by Title VI through a common-law contract action. *See* Mem. 14. The Government points to none in its Opposition. And another federal district court has already held that the Government could not sustain a breach of contract claim based on alleged Title VI violations where the Government's enforcement efforts were incompatible with its authority under 42 U.S.C. § 2000d-1. *See United States v. President & Fellows of Harv. College* ("*Harvard*"), 2026 WL 2343193, at *1-2 (D. Mass. Aug. 13, 2026).

Contrary to the Government's argument (Opp. 8), *Bennett v. Kentucky Department of Education*, 470 U.S. 656 (1985), does not allow it to disregard express statutory limits on its enforcement power under Title VI by bringing a breach of contract claim. Instead, *Bennett* recognized that "federal grant programs originate in and remain governed by statutory provisions expressing the judgment of Congress concerning desirable public policy." *Id.* at 669. *Bennett* involved Title I of the Elementary and Secondary Education Act of 1965, a grant program to "support compensatory education programs for disadvantaged children" by supplementing (but not replacing) state and local funding. *Id.* at 659-660. The Department of Education claimed Kentucky had misspent these federal funds to defray the costs of certain state education programs. *Id.* at 661. To resolve that claim, the Supreme Court looked to the "structure" of Title I, *id.* at 669, which contained "detailed provisions" expressly outlining the Department's "right to recover misused funds," *id.* at 664-665; *see also id.* at 664 n.2. The Supreme Court held that this right was triggered because the Title I funds granted to Kentucky were used to supplant state and local funds for educationally deprived children, *see id.* at 670-671, and "spent contrary to the terms of the grant agreement," *id.* at 664. Those facts allowed the Government to seek return of the particular funds misused. *Bennett* therefore recognized that the Government could exercise its statutory authority under a particular grant program (Title I) to recover misspent Title I funds. It in no way empowered the Government to *circumvent* the "statutory provisions" governing

federal grants and "expressing the judgment of Congress concerning desirable public policy." *Id.* at 669.

Nor can the Government rely on the availability of restitution in cases of contract repudiation or material breach to support a claim of campus-wide return of federal grant money. Rescission and restitution may be available "where there has been repudiation or a material breach," 26 Williston on Contracts § 68:2, such as the repudiation in the case cited by the Government (Opp. 10 n.30), *Amber Resources Co. v. United States*, 538 F.3d 1358 (Fed. Cir. 2008) (government's conduct "constituted a repudiation or a total breach"). But no restitution is available here, where the Government fails to plausibly allege a material breach—one that "defeat[s] the object or purpose of the contract, so that the contract is essentially destroyed." Williston on Contracts § 68:2; *see infra* pp. 15-17.

The Government also cannot rely on *Barnes v. Gorman*, 536 U.S. 181 (2002), to argue that restitution of all DOJ grants to UCLA is available for Title VI violations. Opp. 9. First, *Barnes* held that because "Title VI mentions no remedies" for private plaintiffs, those plaintiffs can seek the remedies traditionally available for breach of contract. 536 U.S. at 187-188. But while Congress did not specify the relief available to *private plaintiffs* (who have an implied right of action under Title VI), *id.*, it did limit the scope of remedies *the Government* may pursue for alleged Title VI violations, restricting the Government from seeking campus-wide and backward-looking relief under the Government's express right of action, *see supra* pp. 8-11.

Second, the campus-wide clawback of federal funds the Government claims here is not the kind of remedy traditionally available for breach of contract. Ordinary contract principles limit restitution to the amount of the uncompensated benefit conferred. *See* Restatement (Second) of Contracts § 371; Restatement (Third) of Restitution and Unjust Enrichment § 38:2. Restitution of *all* funds paid to *all* of UCLA through a campus-wide clawback of all DOJ grants is therefore unavailable

because it is an "*unusual*" remedy for which funding recipients lack notice when accepting federal funds. *Cummings v. Premier Rehab Keller, P.L.L.C.*, 596 U.S. 212, 223 (2022); *see Landor v. Louisiana Dep't of Corrs. & Pub. Safety*, 609 U.S. 59, 67-69 (2026). In fact, another judge in this district recently affirmed that a breach of contract claim brought by the Government under a Spending Clause statute such as Title VI must be dismissed unless the defendant had "clear notice" of the conditions on federal funding allegedly breached. *See United States v. California Interscholastic Fed'n*, 2026 WL 2575930, at *5 (C.D. Cal. Aug. 31, 2026). In *California Interscholastic*, the court explained that the Government's attempt to enforce "newly announced agency positions" indicated a lack of the clear notice that the Spending Clause required. *See id.* at *10 & n.12. So too here. The Regents did not have clear notice, and the Government does not plausibly allege that it did. The Government cannot use a contract claim to obtain campus-wide restitution based on its new position that Title VI compliance is a material term of all grants.

The Government's claim that it must be able to claw back federal funds under a contract theory to honor "the symmetry in the relationship between government and contractor," Opp. 10, once again ignores that Congress expressly limited the Government's authority to remedy violations of Title VI. As another court recently recognized, "the purpose of an enforcement action under § 2000d-1" is "not to penalize a wayward funding recipient but instead to incentivize it to bring itself into compliance with Title VI." *Harvard*, 2026 WL 2343193, at *2. The Government's attempt to seek return of all DOJ grants to UCLA is an attempt to penalize The Regents, not bring DGSOM admissions into compliance with Title VI.

**B. The Government Fails To Plead A Breach Of Contract**

The Government does not dispute that it must plead a breach of contract under federal common law, and that "[a] party breaches a contract when it is in material non-compliance with [its] terms." *Gilbert v. Dep't of Justice*, 334 F.3d 1065, 1071 (Fed. Cir. 2003). An alleged breach is not material unless it "goes to the essence of

the contract." *Id.* (quoting *Thomas v. Dep't of Hous. & Urb. Dev.*, 124 F.3d 1439, 1442 (Fed. Cir. 1997)). Indeed, just recently, the Government told the Supreme Court that a contractual representation was material only if it "'went to the very essence of the bargain.'" *See* Brief for United States at 17, *Kousisis v. United States*, No. 23-909 (U.S. Oct. 2, 2024) (quoting *Universal Health Services, Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 193 n.5 (2016)). Nor is a breach material if the nonbreaching party "receive[s] a 'substantial part' of what [it] bargained for." *See Hansen Bancorp, Inc. v. United States*, 367 F.3d 1297, 1312 (Fed. Cir. 2004).

The Government fails to state a claim for breach under this standard. Nowhere does the Government allege that UCLA failed to perform under its grants from DOJ or failed to deliver a substantial part of what DOJ bargained for under those grants. The Government also provides no basis for this Court to infer that Title VI compliance in medical school admissions went to the very essence of the bargain of the criminal-justice related DOJ grants at issue here. These pleading failures warrant dismissal of the contract claim. The Government tries to avoid this result by arguing that alleged Title VI violations in DGSOM admissions constituted a material breach of the federal grants because the Government would not have awarded the grants but for the required assurances of Title VI compliance. Opp. 10-11. This argument fails.

To begin, a general assurance that a recipient will comply with its independent legal obligation under Title VI does not equate to a material contractual term. As the Supreme Court recognized when discussing materiality under the False Claims Act, "statutory, regulatory, and contractual requirements are not automatically material, even if they are labeled conditions of payment." *Universal Health Servs.*, 579 U.S. at 191. Materiality requires "an objective inquiry into what has a 'tendency to influence' the government, not what the government 'deem[s]' important." *County of King v. Turner*, 2026 WL 2489361, at *8 (9th Cir. Aug. 25, 2026) (alteration in original) (quoting *Universal Health Servs.*, 579 U.S. at 193-194). The

Ninth Circuit thus blocked the Government's effort to categorically label compliance, in all respects, with all federal antidiscrimination laws as a material condition of any grant payment from two agencies. *Id.* at *7-9. As the Government has recognized elsewhere, its argument that Title VI assurances are "material" to funding decisions "reflects a change in the government's position." Dep't of Health & Hum. Servs., Grants Policy Statement § 2.5.4.3 (Oct. 1, 2025). That further undermines any inference that the civil rights assurances required of all institutions tend to influence the Government's decision to award particular federal grants.

The regulatory requirement to assure compliance with Title VI (as well as other statutes) therefore does not transform every alleged Title VI violation by any part of a university into a material breach of every DOJ grant. Here, the question is whether the Government has plausibly alleged any facts from which this Court can infer that compliance with Title VI in DGSOM admissions "'constitut[ed] an inducement or motive' to enter into" these four DOJ grants to UCLA. *Kousisis v. United States*, 605 U.S. 114, 131 (2025) (alteration in original) (citation omitted). Because it has not, the Government has not alleged a material breach.

Contrary to the Government's claim (Opp. 12), this Court can determine as a matter of law that the Government failed to plead material noncompliance with a contract. *See, e.g.*, *Sunrez Corp. v. United States*, 157 Fed. Cl. 640, 650 (2022). "[T]he determination of whether non-compliance with the terms of a contract is material, so as to constitute a breach, is a mixed question of fact and law." *Gilbert*, 334 F.3d at 1071. Where "the facts are undisputed, the determination of whether there has been material non-compliance with the terms of a contract, and hence breach, necessarily reduces to a question of law." *Id.* Here, the Government fails to allege facts that would plausibly establish material breach.

**CONCLUSION**

The Court should grant The Regents' Motion to Dismiss.

Dated: October 6, 2026

Respectfully submitted,

*/s/ Felicia H. Ellsworth*

Felicia H. Ellsworth
(admitted *pro hac vice*)

WILMER CUTLER PICKERING
HALE AND DORR LLP
Debo Adegbile
(admitted *pro hac vice*)
debo.adegbile@wilmerhale.com
7 World Trade Center
250 Greenwich Street
New York, NY 10007
Telephone: 212-295-8800

Felicia H. Ellsworth
(admitted *pro hac vice*)
felicia.ellsworth@wilmerhale.com
Sharon K. Hogue
(admitted *pro hac vice*)
sharon.hogue@wilmerhale.com
60 State Street
Boston, MA 02109
Telephone: 617-526-6000

Christopher T. Casamassima
(CA Bar No. 211280)
chris.casamassima@wilmerhale.com
Joshua A. Vittor
(CA Bar No. 326221)
joshua.vittor@wilmerhale.com
350 South Grand Avenue
Suite 2400
Los Angeles, CA 90071
Telephone: 213-443-5300

*Attorneys for Defendants*

**CERTIFICATE OF COMPLIANCE WITH L.R. 11-6.1 AND STANDING ORDER OF HON. JOHN W. HOLCOMB**

The undersigned, counsel of record for Defendants, certifies that this brief contains 12 substantive pages or fewer, which complies with the page limit set by the Court's Standing Order revised August 6, 2026.

Dated: October 6, 2026

*/s/ Felicia H. Ellsworth*

Felicia H. Ellsworth